**HARMEET K. DHILLON**
Assistant Attorney General
Civil Rights Division
**MICHAEL E. GATES**
Deputy Assistant Attorney General
Civil Rights Division
**MAUREEN S. RIORDAN**
Acting Chief, Voting Section
Civil Rights Division
N.Y. Bar No. 205880
**TIMOTHY F. MELLETT**
D.C. Bar No. 430968
**DAVID D. VANDENBERG**
Attorneys, Voting Section
Civil Rights Division
Texas Bar No. 24107948
950 Pennsylvania Avenue 4CON
Washington, DC 20530
Maureen.Riordan2@usdoj.gov
Timothy.F.Mellett@usdoj.gov
Tel. (202) 307-2767
Attorneys for the United States

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

THE STATE OF OREGON; and
TOBIAS READ, in his official capacity as the
Oregon Secretary of State,

        Defendants.

Civil Case No. _____

COMPLAINT

## <u>COMPLAINT</u>

As President Trump said earlier this year, "[f]ree, fair, and honest elections unmarred by

fraud, errors, or suspicion are fundamental to maintaining our constitutional Republic." Exec. Order No. 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025). Indeed, "[t]he right of American citizens to have their votes properly counted and tabulated, without illegal dilution, is vital to determining the rightful winner of an election." *Id*. Under our Constitution, States "must safeguard American elections in compliance with Federal laws that protect Americans' voting rights and guard against dilution by illegal voting, discrimination, fraud, and other forms of malfeasance and error." *Id*. Without such safeguards, "[v]oter fraud drives honest citizens out of the democratic process and breeds distrust of our government." Purcell v. Gonzalez, 549 U.S. 1, 4 (2006). And "[v]oters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Id*.

To prevent fraudulent votes from being cast, federal law requires that States conduct routine list maintenance procedures of their statewide voter registration databases. Accurate voter rolls prevent the opportunity for fraud in federal elections. The Civil Rights Division of the Department of Justice is tasked with ensuring that States conduct voter registration list maintenance to prevent the inclusion of ineligible voters on any State's voter registration list. This action seeks to remedy Defendant's violations of federal voting laws. Plaintiff, United States of America ("United States"), brings this action against the State of Oregon and Tobias Read, in his official capacity as Oregon's Secretary of State, and alleges as follows:

## I.   INTRODUCTION

1.   The United States brings this action to enforce provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq.*; the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901, *et seq.*; and Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. § 20701, *et seq.*

2.   Defendants have failed to comply with the important mandates of the NVRA and HAVA

by failing to provide information necessary for the Department of Justice to assess their compliance. Two of the NVRA's four purposes are "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(3)-(4). Consistent with these purposes, the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of "death of a registrant or change in residence of a registrant. *Id.* § 20507(a)(4)(A)-(B).

3. Similarly, HAVA requires the appropriate state or local election official to "perform list maintenance" with respect to the centralized, computerized statewide voter registration list required under HAVA "on a regular basis . . . ." *Id.* § 21083(a)(1)-(2). HAVA also requires that states have "[a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters[,]" with "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." *Id.* § 21083(a)(4)(A)-(B).

4. The United States brings this action pursuant to its authority under the NVRA, HAVA, and CRA to compel the State of Oregon and its chief state election official, the Secretary of State, to provide information regarding the State of Oregon's voter list maintenance procedures and an electronic copy of its statewide voter registration list including all fields, to allow the Attorney General to effectively assess Oregon's compliance with the requirements of the NVRA and HAVA.

**II. JURISDICTION AND VENUE**

5. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 2201(a); 52 U.S.C. §§ 20510(a) and 21111; and 52 U.S.C. § 20705.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the

events or omissions giving rise to the United States' claims occurred in this District, and the Defendants are located in and conduct election administration activities in this District.

### III. PARTIES

7.    Plaintiff United States, through the Attorney General, has authority to enforce the NVRA, 52 U.S.C. § 20510(a), and Sections 21081, 21082, 21083, and 21083a of HAVA, 52 U.S.C. § 21111.  Both the NVRA and HAVA authorize the Attorney General to bring a civil action in an appropriate district court for such declaratory and injunctive relief as are necessary to carry out the relevant requirements under the statute.  *Id.* §§ 20510(a) and 21111.  Pursuant to 52 U.S.C. § 20705, the Attorney General may compel states to produce certain records and papers relating to the administration of federal elections.

8.    Defendant, the State of Oregon ("Oregon" or "the State"), is a State of the United States of America and is subject to the requirements of the NVRA, HAVA, and CRA.  *Id.* §§ 20502(4), 20503, 20701, and 21141.

9.    Defendant, Tobias Read, is the Secretary of State for the State of Oregon ("Secretary Read") and, under Oregon state law, Or. Rev. Stat. § 246.110, the chief elections officer of the State of Oregon.  Secretary Read is sued in his official capacity only.

### IV. STATUTORY BACKGROUND

*A.  National Voter Registration Act*

10.  Section 8 of the NVRA, 52 U.S.C. § 20507, establishes requirements for the administration of voter registration for elections for federal office in covered states, including Oregon.  Section 8(a)(4) requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" the death of the registrant or "a change in the residence of the registrant, in accordance with subsections (b),

(c), and (d)[.]" 52 U.S.C. § 20507(a)(4)(A)-(B).

11. Subsections (b), (c), and (d) set forth procedures and requirements governing the removal of ineligible voters from official lists of voters as part of a state's "program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office[.]" *Id.* § 20507(b).

12. State voter list maintenance programs must be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 (42 U.S.C. 1973 et seq.) . . . ." 52 U.S.C. § 20507(b)(1); *see also* S. Rep. No. 103-6 at 31 (Feb. 25, 1993) ("The term 'uniform' is intended to mean that any purge program or activity must be applied to an entire jurisdiction."); *accord* H.R. Rep. No. 103-9 at 15 (Feb. 2, 1993) (same holding as supra).

13. Section 8(d) of the NVRA provides that a "State shall not remove the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence unless the registrant" i) "confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered" or "has failed to respond to a notice" described in Section 8(d)(2) and ii) "has not voted or appeared to vote . . . in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice." 52 U.S.C. § 20507(d)(1). Section 8(d)(2) sets forth specific requirements for the notice ("Confirmation Notice") to be sent to registrants, and Section 8(d)(3) provides that a "voting registrar shall correct an official list of eligible voters in elections for Federal office in accordance with change of residence information obtained in conformance with [subsection 8(d)]." *Id.* §§ 20507(d)(2)-(3).

14. Section 8 of the NVRA provides an example of a list maintenance program that constitutes

a reasonable effort to remove registrants who have become ineligible due to a change of residence. *Id.* § 20507(c)(1). Under this program, a state uses information from the United States Postal Service National Change of Address ("NCOA") program to identify registrants who may have changed residence. *Id.* § 20507(c)(1)(A). Where it appears from the NCOA information that a registrant has moved to a new address in the same jurisdiction, the registration record is updated to show the new address and the registrant is sent a notice of the change by forwardable mail that includes a postage-prepaid, pre-addressed return form by which the registrant may verify or correct the address information. *Id.* § 20507(c)(1)(B)(i). Where it appears from the NCOA information that a registrant has moved to a new address in a different jurisdiction, the procedure set out in Section 8(d)(2), described above, is used to confirm the address change. *Id.* § 20507(c)(1)(B)(ii).

15. Section 8(i) of the NVRA provides that:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

*Id.* § 20507(i)(1). Section 8(i)(2) further specifies:

> The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

*Id.* § 20507(i)(2).

16. Section 10 of the NVRA requires each state to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities" under the NVRA. *Id.* § 20509.

*B.  Help America Vote Act*

17.  The purpose of HAVA "can be stated very simply—it is to improve our country's election system."  H.R. Rep. 107-329(I) at 31 (2001).  "Historically, elections in this country have been administered at the state and local level[,]" but Congress found that "[w]hile local control must be preserved, it is time to recognize that the federal government can play a valuable [role] by assisting state and local government in modernizing their election systems."  *Id.* at 31-32.

18.  HAVA imposes "minimum requirements" for the conduct of federal elections, which "allow the states to develop their own laws and procedures to fulfill the requirements" to the extent that they are consistent with the standards set by HAVA.  *Id.* at 35.

19.  HAVA required all states to implement "in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State . . . ."  52 U.S.C. § 21083(a)(1)(A).

20.  The computerized list required by HAVA "shall be coordinated with other agency databases within the State."  *Id.* § 21083(a)(1)(A)(iv).

21.  HAVA further established a "[m]inimum standard for accuracy of State voter registration records[.]"  *Id.* § 21083(a)(4).  Section 303 of the statute provides that a state's "election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" and "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters."  *Id.* § 21083(a)(4)(A)-(B).

22.  HAVA mandates that a state may not process a voter registration application without the

applicant's driver's license number, where an applicant has a current and valid driver's license, or, for other applicants, the last four digits of the applicant's social security number. *Id.* § 21083(a)(5)(A)(i). For applicants who have neither a driver's license nor a social security number, a state must assign a unique identifying number for voter registration purposes. *Id.* § 21083(a)(5)(A)(ii). A state must determine the validity of the information provided by the applicant. *Id.* § 21083(a)(5)(A)(iii).

23. HAVA also provides specific rules for voters who register to vote by mail. *Id.* § 21083(b). An individual who registers to vote by mail and has not previously voted in a federal election must comply with certain identification requirements. *Id.*

24. HAVA applies to all fifty states, including Oregon. *Id.* § 21141.

25. Section 303 of HAVA incorporates by reference certain provisions of the NVRA. *See, e.g.*, *id.* § 21083(a)(4)(A). These provisions, unless explicitly noted otherwise, apply to all states covered under HAVA. *See id.*

26. In passing HAVA, Congress invested the Attorney General of the United States with sole authority to "bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief . . . as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, 21083, and 21083a[.]" *Id.* § 21111.

27. HAVA contains no private right of action. *See id.* §§ 20901 to 21145.

*C. Civil Rights Act of 1960*

28. Congress vested the Attorney General with the power to request records pursuant to Title III of the Civil Rights Act of 1960, 52 U.S.C. § 20701, *et seq.*

29. Section 301 of the CRA requires state and local election officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a

period of twenty-two months after any federal general, special, or primary election. *See* 52 U.S.C. § 20701.

30.   Section 303 of the CRA provides: "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative.  This demand shall contain a statement of the basis and the purpose therefor."  52 U.S.C. § 20703.

   D. *Voter List Maintenance and Records Procedures under Oregon State Law*

31.   As relevant to this lawsuit, Oregon's law provides that the clerk of each county fulfills significant responsibilities with respect to ensuring the accuracy and currency of official lists of eligible voters and maintaining records regarding the same.

32.   The county clerk "at any time, may inquire into the validity of the registration of any elector" and "shall mail a written statement to the elector[1] that describes the nature of the inquiry . . . ."  Or. Rev. Stat. § 247.195.  The county clerk is responsible for, among other duties, updating "the registration of an elector in the county upon receiving evidence from" the elector, the U.S. Postal Service, or the state secretary of state, *id.* § 247.292; verifying the accuracy of addresses of electors in the county clerk's records, *id.* § 247.296; sending notices to electors "whenever it appears to the county clerk that an elector needs to update the elector's registration or that the elector has changed residence address to another county," *id.* § 247.563; and canceling the registration of persons upon receiving a report of death from a county registrar if the person was

---

[1] Oregon state law defines an "elector" as "an individual qualified to vote" under the Oregon state constitution.  Or. Rev. Stat. § 247.002.

registered to vote in the county and providing this information from the county registrar to the Oregon Secretary of State, *id.* § 247.570.[2]

33.  As relevant to Section 8(i) of the NVRA, Oregon state law requires that the county clerks retain for two years "[c]opies of all notices and other correspondence issued under" sections 247.195, 247.292, 247.296, 247.563, and 247.570 of Oregon's Revised Statutes. *Id.* § 247.580(1); *see also* Or. Admin. Code § 166-150-0035(15) (specifying minimum retention requirement for voter registration records).[3]  Oregon state law also specifies that "[i]f the elector registration records of a county are mechanically maintained, the county clerk may satisfy" the record retention requirements of § 247.580(1) by maintaining for two years "[c]omputer listings of electors to whom the clerk issued notices or any other correspondence under [§§ 247.195, 247.292, 247.296, 247.563, and 247.570] and facsimile copies of notices and correspondence" or "[m]icrofilm records of the listings and copies."  Or. Rev. Stat. § 247.580(2)(a)-(b).

## V.    FACTUAL ALLEGATIONS

34.  On July 16, 2025, the United States Department of Justice, Civil Rights Division, Voting

---

[2] A county clerk "may cancel the registration of an elector" in certain enumerated circumstances, Or. Rev. Stat. § 247.555(1)(a)-(d), including at the request of the elector, *id.* § 247.555(1)(a); upon the death of the elector, *id.* § 247.555(1)(b); if the county clerk receives written evidence that the elector has registered to vote in another state, *id.* § 247.555(1)(c); and "[i]f the elector has not responded to a notice described in [§ 247.563] and has not voted or updated a registration during the period beginning on the date the notice is sent and ending on the day after the date of the second regular general election that occurs after the date the notice was sent[,]" *id.* § 247.555(1)(d).

[3] In addition, Oregon's Administrative Code provides that county elections officials "shall record" certain information regarding voter registration "in the Oregon Centralized Voter Registration System (OCVR) allowing the Secretary of State to compile the information and report [it] to the Election Assistance Commission . . . ."  Or. Admin. Code § 165-005-0065(3). The specified information includes the "number of confirmation notices mailed out between the two most recent federal general elections and the number of responses to these notices received during that same period[.]"  Or. Admin. Code § 165-005-0065(3)(c).

Section, sent a letter to the Oregon Secretary of State Read requesting information regarding Oregon's procedures for complying with the statewide voter registration list maintenance provisions of the NVRA ("July 16 letter").  The Department's letter requested, among other information and documents, a list of the election officials who are responsible for implementing Oregon's general program of voter registration list maintenance from November 2022 through receipt of the letter and a description of the steps that Oregon has taken, and when those steps were taken, to ensure that the state's list maintenance program has been properly carried out in full compliance with the NVRA, including actions taken by Oregon officials as well as county officials.

35.  The July 16 letter also requested, pursuant to Section 20507(i) of the NVRA, the current electronic copy of Oregon's computerized, statewide voter registration list required by Section 303(a) of HAVA, 52 U.S.C. § 21083(a).  The letter specifically requested: "Please include all fields contained within the list."

36.  The United States Election Assistance Commission (EAC) was established by HAVA to "serve as a national clearinghouse and resource for the compilation of information and review of procedures with respect to the administration of Federal elections."  EAC website, "About the EAC," "Help America Vote Act," https://www.eac.gov/about/help_america_vote_act.aspx.  The EAC "is an independent, bipartisan commission whose mission is to help election officials improve the administration of elections and help Americans participate in the voting process."  *Id.*, "About the EAC," https://www.eac.gov/about.

37.  The EAC conducts a biennial Election Administration and Voting Survey ("EAVS"), "an analysis of state-by-state data that covers various topics related to the administration of federal elections[,]" including voter registration and list maintenance.  *Id.*, "Studies and Reports," https://www.eac.gov/research-and-data/studies-and-reports.    The EAC's most recent report,

"Election Administration and Voting Survey 2024 Comprehensive Report: A Report from the U.S. Election Assistance Commission to the 119th Congress" ("2024 EAVS Report"), explains that as part of the 2024 EAVS, states "reported data on their efforts to keep voter registration lists current and accurate, known as list maintenance[,]" such as the number of confirmation notices states sent "to verify continued eligibility from registered voters[,]" and the number of voter registration records that state removed from its voter lists. EAC, 2024 EAVS Report, https://www.eac.gov/sites/default/files/2025-07/2024_EAVS_Report_508.pdf, at 7.

38.    The July 16 letter also included six detailed inquiries based on the data and answers that the State of Oregon provided in response to the EAC's EAVS questionnaire. The period for the inquiries was the close of registration for the November 2022 general election through the close of registration for the November 2024 general election.

39.    For example, the July 16 letter noted that based on a review of the most recent EAVS report, there are nearly as many registered voters listed as active as the citizen voting age population in Oregon, with a registration rate in 2024 of 95.3 percent of the citizen voting age population. The letter further noted that the EAVS report indicated that the ratio of active registered voters to citizen voting age population has been unusually high for several years, with Oregon reporting a registration rate of 93.3 percent of citizen voting age population in 2022 and 93.1 percent in 2020. The letter requested details regarding Oregon's general program for removing ineligible voters from the official lists of eligible voters.

40.    The July 16 letter also noted that, according to the information provided by Oregon to the EAC, Oregon sent 357,959 confirmation notices to registered voters. In reporting the results of the confirmation notices, Oregon categorized the results as "Other." The letter asked Oregon to explain what "Other" means for the results of these confirmation notices and to describe Oregon's

process for keeping track of the results of Confirmation Notices.

41.    The July 16 letter noted that in the EAVS data for Question A12a, Oregon removed 111,621 voters, or 3.6% of registered voters, from the list of eligible voters, which was well below the national average of 9.1%.    Accordingly, the letter requested that Oregon explain what actions Oregon is taking to ensure that ineligible voters are removed from the official lists of eligible voters and why Oregon's number of removals was so low.

42.    According to the 2024 EAVS Report, the State of Oregon reported that it removed only 4,417 voters out of a total of 3,060,374 registered voters for failure to respond to a confirmation notice and not voting in the two consecutive federal elections following the notice.    The July 16 letter noted that the State of Oregon had the lowest number of removals in this category as compared to the total number of registered voters, of all NVRA-covered states reporting data to the EAC's survey.    Accordingly, the letter asked Oregon to explain how Oregon uses the confirmation notice process to remove voters and why the number of removals was so low.

43.    The July 16 letter also noted that Oregon did not report each county's number of inactive voters and asked Oregon to explain if it has any processes for determining if a voter should be categorized as "inactive" and its process for tracking voters when they fail to respond to a confirmation notice.

44.    The July 16 letter also noted that Oregon reported to the EAC survey that the state determined there were 1,585 total duplicate registrations on the statewide voter registration list. Yet, in response to the EAC's survey question on the number of voters removed for the reason of a duplicate voter registration record, Oregon reported, "Does not apply," for all counties.    However, Oregon reported that 1,256 voter records were merged.    Therefore, the letter asked Oregon to explain what actions Oregon took with respect to the 1,585 duplicate registrations and information

explaining Oregon's process for removing duplicate registrations and merging records. The letter also asked whether Oregon checks the voter rolls for duplicate registrations, and, if so, how often that check is performed.

45.  The July 16 letter also requested a description of the steps that Oregon has taken, and when those steps were taken, to identify registered voters who are ineligible to vote because they are a non-citizen, are adjudicated incompetent, or have a felony conviction, and a description of the procedures Oregon used to remove those ineligible voters from the registration list. The letter asked Oregon to identify the number of registered voters identified as ineligible to vote, for the time period of the close of registration for the November 2022 general election through the present, for each of the three reasons. For each voter identified in one of the three categories, the letter asked that Oregon provide their registration information on the statewide voter registration list, including their vote history.

46.  The July 16 letter provided Oregon with fourteen days to produce the requested information and records by encrypted email or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

47.  On August 14, 2025, the Department of Justice, Civil Rights Division, sent an updated letter to Secretary Read, which provided clarifications regarding his previous request for information and records related to Oregon's statewide voter list maintenance ("August 14 letter").

48.  Specifically, the August 14 letter stated that the Department of Justice "requested Oregon's [statewide voter registration list ("VRL")] to assess [the] state's compliance with the statewide VRL maintenance provisions of the [NVRA]" and that the request was "pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions."

49.  The August 14 letter stated that the Attorney General's sole authority under Section 401 of

HAVA to enforce HAVA's list maintenance requirements "also provides authority for the Justice Department to seek the State's VRL[.]"

50. The August 14 letter further advised that: "In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq.* Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701."

51. The August 14 letter stated: "Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Oregon's complete and current VRL. The purpose of the request is to ascertain Oregon's compliance with the list maintenance requirements of the NVRA and HAVA." The letter specified: "When providing the electronic copy of the statewide VRL, Oregon must ensure that it contains *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA") to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i)." (footnote omitted).

52. By letter dated August 21, 2025, Secretary Read responded to the Department of Justice, Civil Rights Division, stating that he was in receipt of the Department's letters requesting information regarding Oregon's compliance with the list maintenance provisions of the NVRA and HAVA ("Secretary Read's August 21 letter").

53. Secretary Read's August 21 letter stated: "Each of Oregon's 36 counties administers its own voter-registration program and maintains its own voter list. Historically, this created

15

challenges for statewide data reporting and analysis, including in connection with the [EAC's] [EAVS]." The letter further stated: "Since taking office in January, my administration has been working to improve our statewide data-collection practices by developing uniform data-entry standards and reporting procedures across all counties. These changes will improve the quality, consistency, and transparency of the data, allowing Oregon to produce more detailed statewide reports moving forward."

54. Secretary Read's August 21 letter acknowledged "challenges for statewide data reporting and analysis" in connection with county-by-county administration of voter registration and stating his administration was working on improvements in data-related practices. However, Secretary Read did not explain what the current data-collection, data-entry, and reporting procedures were across Oregon's counties and what changes were being implemented, how, or when.

55. Secretary Read's August 21 letter also refused to produce the current electronic copy of Oregon's computerized statewide voter registration list with all fields, including each voter's name, date of birth, residential address, and state driver's license number or partial Social Security number, as requested by the Department, asserting, "no federal law compels the production of state voter rolls."

56. Secretary Read's August 21 letter stated, "I see no federal authority for your request[,]" but "[n]onetheless, if the DOJ complies with the applicable provisions of the Privacy Act of 1974 ("Privacy Act"), 5 U.S.C. § 552a, then my office will produce the voter-registration data required by state law." The letter added that: "Oregon allows for public access to certain voter-registration data, including a voter's residence address and birth year, for a fee. . . . If the DOJ intends to follow the process outlined in OAR 165-002-0020, and pay the fee mandated by ORS 247.945, then my agency will arrange to securely produce the publicly available portions of its statewide voter-

registration list.  Please note that ORS 247.948 prohibits the disclosure of, among other things, a voter's birth month, birth day, Social Security number, and driver's license number."

57.  Oregon is a member of the Electronic Registration Information Center (ERIC), an organization comprised of states whose stated mission "is to assist states in improving the accuracy of America's voter rolls and increasing access to voter registration for all eligible citizens."[4]  ERIC is funded by its members, who pay a one-time membership fee and annual dues.  Id.  ERIC's website explains that "[a]t least every 60 days, each member submits their voter registration data and licensing and identification data from motor vehicle departments (MVD) to ERIC."  Id.  ERIC's website states: "Members submit dates of birth, driver's license/ID card numbers, and Social Security numbers to ERIC after applying a cryptographic one-way hash to these data points."

58.  Oregon provides the identical information that the Attorney General has requested to ERIC, a private organization which lacks any enforcement authority, yet refuses to adhere to federal law and provide that same information to the Attorney General of the United States.

59.  With respect to the Privacy Act, Secretary of State Read stated in his August 21, 2025 letter: "While I appreciate your assurances that Oregonians' sensitive personal information will be protected by the Privacy Act, I cannot release the data unless and until the DOJ publishes a System of Records Notice in the Federal Register that explains what data your agency is collecting, why you need it, and how you intend to use and store it."

60.  With respect to a list of the voters to whom county election offices sent confirmation notices under Ore. Rev. Stat. chapter 247, Secretary Read's August 21 letter stated: "Again, if the DOJ intends to comply with the applicable provisions of the Privacy Act and also follow the

---

[4] *FAQ's*, ERIC, (Sept. 15, 2025) https://ericstates.org/faq/; *see id.*, "Which States Are Members of ERIC?" https://ericstates.org/about/.

process outlined in, and pay the fee mandated by, OAR 165-002-0020, then my agency will arrange to securely produce the publicly available portions of this less-than-statewide voter list for the previous two years."

61.  As explained in the August 14 letter from the Department of Justice to Oregon, the Civil Rights Division is required to comply with the Privacy Act, including the provisions of 5 U.S.C. § 552a, and has practices and procedures to ensure compliance with the Privacy Act.

62.  The information that the Department collects pursuant to its request to Oregon and similar requests to other states will be maintained consistent with Privacy Act protections as explained on DOJ's website at https://civilrights.justice.gov/privacy-policy#:~:text=Our%20Statutes-,Privacy%20Act%20Statement,the%20scope%20of%20our%20jurisdiction.. The full list of routine uses for this collection of information can be found in the System of Records Notice (SORN) titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records", 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017).  It should be noted that the statutes cited for routine use include the NVRA, HAVA, and CRA.  The records in the system of records are kept under the authority of 44 U.S.C. § 3101 and in the ordinary course of fulfilling the responsibility assigned to the Civil Rights Division under the provisions of 28 C.F.R. §§ 0.50, 0.51.

63.  Secretary Read's August 21 letter refused to answer any of the Department's highly detailed inquiries about Oregon's voter list maintenance program based on the Department's review of Oregon's EAVS data, *see supra*, paragraphs 38-45.  The letter only referred generally to the relevant chapter and provisions of Oregon state law.

64.  Secretary Read's August 21 letter also refused to disclose the registration information for any ineligible voters, claiming "that would both exceed my obligations under federal law and

almost certainly violate state law."

## CAUSES OF ACTION

## COUNT I: NATIONAL VOTER REGISTRATION ACT, 52 U.S.C. § 20507(i)

65. The United States incorporates the allegations set forth above.

66. Defendants have refused to answer the Department's specific inquiries regarding Oregon's list maintenance procedures, despite the Attorney General's authority to enforce these requirements under both the NVRA and HAVA.

67. Defendants have failed to make available and provide to the United States "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered[,]" in violation of 52 U.S.C. § 20507(i)(1).

68. This information is necessary for the Attorney General to determine if Oregon is conducting "a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" as required by 52 U.S.C. § 20507(a)(4), including to evaluate issues raised by the data and answers provided by the State of Oregon to the Election Assistance Commission's 2024 EAVS and reflected in the EAC's June 30, 2025 report.

## COUNT II: HELP AMERICA VOTE ACT, 52 U.S.C. § 21083

69. The United States incorporates the allegations set forth above.

70. Defendants have failed to take the actions necessary for the State of Oregon to comply with Section 303 of HAVA. Defendants have failed to provide sufficient information in response to the Department of Justice, Civil Rights Division's July 16 and August 14, 2025 letters requesting information and documents to evaluate the State of Oregon's compliance with HAVA pursuant to the Attorney General's statutory enforcement authority under 52 U.S.C. § 21111.

71. Defendants' refusal to provide the requested information prevents the Attorney General from evaluating Oregon's procedures to ensure that duplicate names are eliminated from the computerized list, as required by 52 U.S.C. § 21083(a)(2)(B), and prevents the Attorney General from enforcing the list maintenance procedures required by the NVRA and HAVA.

72. Defendants' refusal to provide to the United States the current electronic copy of Oregon's computerized, statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number or the last four digits of their Social Security number, prevents the Attorney General  from determining Oregon's compliance with the list maintenance requirements of HAVA, 52 U.S.C. § 21083(a)(5)(A).

## COUNT III: CIVIL RIGHTS ACT OF 1960, 52 U.S.C. § 20703

73. On August 14, 2025, the Attorney General of the United States, through the Assistant Attorney General, Civil Rights Division, sent a written demand to Defendants for the production of specific election records, as authorized by 52 U.S.C. § 20703.

74. Secretary of State Read's August 21, 2025, letter refused to provide the records requested.

## PRAYER FOR RELIEF

Wherefore, the United States prays that the Court enter an order that:

A. Declares that Defendants have failed to make available and provide to the United States "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered[,]" in violation of the NVRA, 52 U.S.C. § 20507(i);

B. Declares that Defendants' refusal to provide the requested records concerning the State

of Oregon's voter registration and list maintenance prevents the Attorney General from enforcing its authority under HAVA, 52 U.S.C. § 21111;

C.  Declares that Defendants' refusal to provide voter registration records upon a demand by the Attorney General violates Title III of the Civil Rights Act of 1960, 52 U.S.C. § 20703;

D. Orders Defendants to provide to the United States the current electronic copy of Oregon's computerized, statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number or the last four digits of their Social Security number as required by HAVA, 52 U.S.C. § 21083, and the CRA, 52 U.S.C. § 20703; and

E. Awards such additional relief as the interests of justice may require.

Dated: September 16, 2025

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

MICHAEL E. GATES
Deputy Assistant Attorney General
Civil Rights Division

/s/ David D. Vandenberg

MAUREEN S. RIORDAN
Acting Chief, Voting Section
Civil Rights Division
TIMOTHY F. MELLETT
DAVID D. VANDENBERG
Attorneys, Voting Section
Civil Rights Division
950 Pennsylvania Avenue 4CON
Washington, DC 20530
Maureen.Riordan2@usdoj.gov
Timothy.F.Mellett@usdoj.gov
Tel. (202) 307-2767
Attorneys for the United States