**HARRY WILSON**, OSB No. 077214
harrywilson@markowitzherbold.com
**DALLAS DELUCA**, OSB No. 072992
dallasdeluca@markowitzherbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: 503-295-3085

**CHRISTOPHER D. DODGE**
D.C. Bar. No. 90011587
**BRANDEN LEWISTON**
D.C. Bar No. 252550
ELIAS LAW GROUP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
cdodge@elias.law
blewiston@elias.law

**ABHA KHANNA**
WA Bar No. 42612
**WALKER McKUSICK**
WA Bar No. 63205
ELIAS LAW GROUP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
akhanna@elias.law
wmckusick@elias.law

*Attorneys for Proposed Intervenors*
*Our Oregon, Dan DiIulio, Stephen Gomez,*
*and Emma Craddock*

# IN UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# EUGENE DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

THE STATE OF OREGON; and
TOBIAS READ, in his official capacity as the
Oregon Secretary of State,

       Defendants.

Case No. 6:25-CV-01666-MTK

## <u>PROPOSED DEFENDANT-INTERVENORS' PROPOSED MOTION TO DISMISS AND MEMORANDUM IN SUPPORT</u>

## TABLE OF CONTENTS

LOCAL RULE 7-1(A) CERTIFICATION.................................................................................... 1

MOTION......................................................................................................................................... 1

INTRODUCTION .......................................................................................................................... 1

BACKGROUND ............................................................................................................................ 3

I.   Federal law has long made voter list maintenance a state responsibility, consistent with
     the constitutional separation of powers......................................................................... 3

II.  DOJ embarks on a nationwide campaign to collect voter data held by states. ........................ 4

III. DOJ sues Oregon as part of its effort to create a national voter list. ...................................... 6

LEGAL STANDARD..................................................................................................................... 7

ARGUMENT .................................................................................................................................. 8

I.   DOJ has not stated any claim entitling it to Oregon's statewide voter registration list............ 8

     A.  The NVRA does not entitle DOJ to Oregon's full unredacted voter list. ........................... 8

     B.  HAVA does not entitle DOJ to Oregon's full unredacted voter registration list. .............. 11

     C.  The Civil Rights Act of 1960 does not entitle DOJ to Oregon's voter registration list. .... 13

         1.   Title III was designed to combat the denial of voting rights based on race.......... 13
         2.   By its plain text, Title III does not cover Oregon's internally-created
              statewide voter registration list. ......................................................... 14
         3.   DOJ lacks a proper basis and purpose to demand records under Title III. ........... 18
         4.   Title III does not prohibit redacting sensitive voter information.......................... 21

II.  DOJ has not stated any other claim for relief. ...................................................................... 22

CONCLUSION.............................................................................................................................. 23

# TABLE OF AUTHORITIES

## CASES

*In re Admin. Subpoena* ,
    No. 1:25-MC-91324-MJJ, 2025 WL 2607784 (D. Mass. Sept. 9, 2025) ........................... 20

*Advoc. Health Care Network v. Stapleton*,
    581 U.S. 468 (2017) .................................................................................................... 16

*Ala. ex rel. Gallion v. Rogers*,
    187 F. Supp. 848 (M.D. Ala. 1960) ........................................................................... 13

*Am. Tradition Inst. v. Colorado*,
    No. 11-cv-0085, 2012 WL 555513 (D. Colo. Feb 21, 2012) ................................... 3

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
    570 U.S. 1 (2013) ...................................................................................................... 3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 8

*Bobreski v. U.S. EPA*,
    284 F. Supp. 2d 67 (D.D.C. 2003) ........................................................................ 12

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
    854 F.3d 683 (D.C. Cir. 2017) ............................................................................... 19

*CFPB v. Source for Pub. Data, L.P.*,
    903 F.3d 456 (5th Cir. 2018) ................................................................................. 19

*Donald Trump for President, Inc. v. Benson*,
    No. 1:20-cv-108, 2020 WL 8573863 (W.D. Mich. Nov. 17, 2020) ....................... 3

*Fischer v. United States*,
    603 U.S. 480 (2024) ................................................................................................ 17

*Foster v. Love*,
    522 U.S. 67 (1997) .................................................................................................... 3

*Found. Fitness Prods., LLC v. Free Motion Fitness*,
    121 F. Supp. 3d 1038 (D. Or. 2015) ....................................................................... 6

*Grand Canyon Univ. v. Cardona*,
    121 F.4th 717 (9th Cir. 2024) ................................................................................ 16

*Harkless v. Brunner*,
　　545 F.3d 445 (6th Cir. 2008) ............................................................. 22

*Honeycutt v. United States*,
　　581 U.S. 443 (2017) ......................................................................... 16

*Huddleston v. United States*,
　　415 U.S. 814 (1974) ......................................................................... 16

*Husted v. A. Philip Randolph Inst.*,
　　584 U.S. 756 (2018) ........................................................................... 3

*Kennedy v. Lynd*,
　　306 F.2d 222 (5th Cir. 1962) ..................................................... 19, 21

*Loughrin v. United States*,
　　573 U.S. 351 (2014) ......................................................................... 15

*McCloskey v. Mueller*,
　　446 F.3d 262 (1st Cir. 2006) ...................................................... 12, 23

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
　　526 US 344 (1999) ............................................................................ 18

*Navarro v. Block*,
　　250 F.3d 729 (9th Cir. 2001) .............................................................. 8

*Peters v. United States*,
　　853 F.2d 692 (9th Cir. 1988) ............................................................ 12

*Project Vote, Inc. v. Kemp*,
　　208 F. Supp. 3d 1320 (N.D. Ga. 2016) ............................................. 10

*Project Vote/Voting for Am., Inc. v. Long*,
　　682 F.3d 331 (4th Cir. 2012) ........................................................ 9–10

*Project Vote/Voting For Am., Inc. v. Long*,
　　752 F. Supp. 2d 697 (E.D. Va. 2010) ............................................... 10

*Pub. Int. Legal Found., Inc. v. Bellows*,
　　92 F.4th 36 (1st Cir. 2024) ............................................................. 2, 9

*Pub. Int. Legal Found., Inc. v. Dahlstrom*,
　　673 F. Supp. 3d 1004 (D. Alaska 2023) ........................................... 10

*Pub. Int. Legal Found., Inc. v. Matthews*,
    589 F. Supp. 3d 932 (C.D. Ill. 2022) ................................................................ 10

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*,
    996 F.3d 257 (4th Cir. 2021) .............................................................................. 10

*Rainero v. Archon Corp.*,
    844 F.3d 832 (9th Cir. 2016) .............................................................................. 14

*Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*,
    351 F.3d 1229 (D.C. Cir. 2003) .......................................................................... 18

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
    120 F.4th 390 (4th Cir. 2024) ............................................................................... 3

*True the Vote v. Hosemann*,
    43 F. Supp. 3d 693 (S.D. Miss. 2014) ................................................................ 10

*Union Pac. R.R. Co. v. United States*,
    865 F.3d 1045 (8th Cir. 2017) ....................................................................... 15–16

*United States v. Mohrbacher*,
    182 F.3d 1041 (9th Cir. 1999) ............................................................................ 16

*United States v. Prasad*,
    18 F.4th 313 (9th Cir. 2021) ............................................................................... 16

*Webb v. Trader Joe's Co.*,
    999 F.3d 1196 (9th Cir. 2021) ...................................................................... 12, 23

## US CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 4, cl. 1 ...................................................................................... 2, 3

## FEDERAL STATUTES

5 U.S.C. § 55 ................................................................................................................ 21

6 U.S.C. § 1502 ........................................................................................................... 15

7 U.S.C. § 12 ............................................................................................................... 15

13 U.S.C. § 214 ........................................................................................................... 15

18 U.S.C. § 1703 ......................................................................................................... 15

18 U.S.C. § 1709 ................................................................................................ 15

18 U.S.C. § 1968 ................................................................................................ 15

18 U.S.C. § 2721 ................................................................................................ 21

18 U.S.C. § 3500 ................................................................................................ 15

30 U.S.C. § 1732 ................................................................................................ 15

49 U.S.C. § 47124a ........................................................................................... 15

50 U.S.C. § 217 ................................................................................................. 15

52 U.S.C. § 20501 ............................................................................................... 3

52 U.S.C. § 20507 ...................................................................... 3, 8, 11, 20, 22

52 U.S.C. § 20510 .............................................................................................. 22

52 U.S.C. § 20701 ...................................................................... 2, 13–15, 17

52 U.S.C. § 20703 ...................................................................... 14–15, 18, 20

52 U.S.C. § 21083 ...................................................................... 4, 12, 17–18, 21–22

52 U.S.C. § 21085 ...................................................................... 4, 20

52 U.S.C. § 21111 .............................................................................................. 11, 22

## STATE STATUTES

Or. Rev. Stat. § 247.948 ........................................................................... 1, 9, 21

## OTHER AUTHORITIES

11 C.F.R. § 9428.7 .......................................................................................... 5, 22

Br. for the United States as Amicus Curiae in Support of Plaintiff-Appellee, *Project Vote/Voting for Am. v. Long*, 682 F.3d 311 (4th Cir. 2012) (No. 11-1809), 2011 WL 4947283 ......................................................................................... 10

Br. for the United States as Amicus Curiae in Support of Plaintiff-Appellee, *Pub. Int. Legal Found. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) (No. 23-1361), 2023 WL 4882397 ....................................................................................... 9, 10

*Come into possession,* Cambridge Dictionary, https://dictionary.cambridge.org/us/thesaurus /come-into-possession-of (last visited Nov. 17, 2025) ........................................................ 14

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://perma.cc/8VP4-WRXD ............................. 4

Fed. R. Civ. P. 12 ............................................................................................................... 7

H.R. Rep. No. 86-956 (1959) ........................................................................................ 13–14

H.R. Rep. No. 107-329 (2001) .................................................................................. 2, 4, 12

Jonathan Shorman, *Some Republican States Resist DOJ Demand for Private Voter Data*, Stateline (Sept. 18, 2025), https://stateline.org/2025/09/18/some-republican-states-resist-doj-demand-for-private-voter-data/ ................................................................................. 5

Karen L. Shanton, Cong. Rsch. Serv., IF13056, *The Election Administration and Voting Survey (EAVS): Overview and 2024 Findings* (2025) ............................................................ 5

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, Brennan Ctr. for Just., *Tracker of Justice Department Requests for Voter Information* (Oct. 28, 2025), https://perma.cc/CZ8S-JRRK ........................................................................................ 4

Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html ........................................................................................................ 20

*Receive,* Black's Law Dictionary (12th ed. 2024) ........................................................... 14

## LOCAL RULE 7-1(A) CERTIFICATION

Counsel for Proposed Intervenors Our Oregon, Dan DiIulio, Stephen Gomez, and Emma Craddock reached out to counsel for the United States and Oregon to obtain their positions on the proposed motion to dismiss. The United States opposes this motion; Oregon does not.

## MOTION

Proposed Intervenors move for the Complaint to be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. They file this proposed motion to dismiss according to the schedule the Court set for the existing parties, to preserve their right to intervene and to file a Rule 12(b) motion.

## INTRODUCTION

The United States Department of Justice ("DOJ") seeks to amass a nationwide voter registration list, a scheme not authorized by Congress and contrary to federal laws assigning states the responsibility for maintaining voter registration. To build this unauthorized and unprecedented federal list, DOJ has demanded that dozens of states turn over their full, unredacted voter lists, even though state laws often shield voter information on those lists—most notably driver's license numbers, social security numbers, and full dates of birth—from disclosure. Oregon law is no exception: it dictates that such sensitive voter information "may not be disclosed" by Oregon election officials. Or. Rev. Stat. § 247.948(2).

Oregon—like nearly every other state contacted by DOJ—has so far refused to comply with its demands. Now, DOJ has amplified its pressure campaign by filing suit to forcibly obtain Oregon's voter registration list. Far from granting such relief, this Court should dismiss this action under Rule 12(b)(6) because DOJ has failed to state a claim. DOJ cites three authorities in support of its demand—the National Voter Registration Act ("NVRA"), the Help America Vote Act

("HAVA"), and Title III of the Civil Rights Act of 1960—but none provides DOJ with authority to access Oregon's unredacted voter registration list. Courts have broadly (and recently) recognized that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in [voter files]." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) ("*PILF*"). HAVA does not contain *any* disclosure provision. And the text of Title III of the Civil Rights Act plainly does not apply here: that long-dormant statute extends only to "records and papers *which come into* [*election officials'*] *possession*," 52 U.S.C. § 20701 (emphasis added), not internally-generated databases *created by* election officials. And even if Title III did reach Oregon's state-created voter registration list, DOJ's demand here is not supported by an adequate basis or purpose. In short, nothing in these federal provisions prevents states from redacting the sensitive voter information DOJ seeks.

Tellingly, DOJ's Complaint nowhere identifies past instances where any of the statutes upon which it purports to rely have been used to obtain the sort of sensitive voter information that DOJ now demands. The reasons why are clear: this unprecedented effort runs contrary to the decentralized structure of our federal electoral system, which is state-focused *by design*. *See, e.g.*, U.S. Const. art. I, § 4, cl. 1 (giving the States principal authority over congressional elections). When enacting HAVA after the contested 2000 election, Congress stressed that the "dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome." H.R. Rep. No. 107-329, at 31–32 (2001). DOJ's lawsuit therefore asserts sweeping federal authority over the management of federal elections that is not only unsupported by the statutes that DOJ cites but also antithetical to the carefully designed system of American elections as reflected by the Constitution, federal law, and the states' rightful administration of elections. The Court should

dismiss the Complaint with prejudice under Rule 12(b)(6) for failure to state a claim.[1]

**BACKGROUND**

**I.     Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns states the responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. Congress in 1993 enacted the NVRA to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). Tellingly, that law charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists. *See Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted HAVA "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th

---

[1] Proposed Intervenors request that the Court accept this proposed motion to dismiss in the event the Court grants their motion to intervene. *See Donald Trump for President, Inc. v. Benson*, No. 1:20-cv-1083-JTN-PJG, 2020 WL 8573863, at *3 (W.D. Mich. Nov. 17, 2020) (granting motion to intervene and simultaneously accepting for consideration intervenors' proposed motion to dismiss); *Am. Tradition Inst. v. Colorado*, No. 11-cv-00859-WJM-BNB, 2012 WL 555513, at *3 (D. Colo. Feb. 21, 2012) (similar).

Cir. 2024). Like the NVRA, HAVA regulates how *states* maintain voter registration lists, requiring that they create a "computerized statewide voter registration list" and "perform list maintenance." 52 U.S.C. § 21083(a)(1)(A), (2)(A). HAVA is abundantly clear that this list is "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A). And more generally, HAVA commands that the "specific choices on the methods of complying with" HAVA "shall be left to the discretion of the State." *Id.* § 21085. Indeed, HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving free and fair elections:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome. This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, at 31–32 (2001). And while HAVA requires states to create their own centralized statewide voter registration lists, nothing in the law obligates them to disclose records in any manner, including to the federal government.

## II.     DOJ embarks on a nationwide campaign to collect voter data held by states.

This spring, DOJ launched an unprecedented campaign to demand broad access to state voter files, which include sensitive and personal information about each registered voter. To date, DOJ has sent demands to at least forty states, with plans to make similar demands on all fifty.[2] It seeks to use the data to create a national voter database that will, in turn, be used to attempt to substantiate President Trump's unfounded accusations that millions of non-citizens have voted

---

[2] *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://perma.cc/8VP4-WRXD; Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Oct. 28, 2025), https://perma.cc/CZ8S-JRRK.

illegally in recent elections.[3] The vast majority of states that have received such demands—including those led by Republican officeholders—have refused to comply, declining to turn over sensitive information that is typically protected by state law.[4]

DOJ sent Oregon a letter on July 16, 2025, demanding, among other things, Oregon's "statewide voter registration list." Compl. ¶ 4, ECF No. 1. DOJ also demanded that Oregon produce "*all fields*" from its voter registration database, including "the registrant's full name, date of birth, residential address, [and] his or her state driver's license number or the last four digits of the registrant's social security number." Compl. ¶ 51. DOJ also posed several questions regarding Oregon's responses to Election Administration and Voting Survey ("EAVS") prompts. Compl. ¶¶ 38–45.[5] DOJ reiterated its requests on August 14, explaining that the "purpose of the request is to ascertain Oregon's compliance with the list maintenance requirements of the NVRA and HAVA." Compl. ¶ 51.

Oregon Secretary of State Tobias Read declined to produce a full, unredacted copy of Oregon's voter registration list. Compl. ¶ 55. In an August 21 letter, Secretary Read disputed DOJ's claim that "federal law compels the production of state voter rolls." Compl. ¶ 55. He explained that neither the NVRA nor HAVA require the production of unredacted voter lists and

---

[3] *See* Barrett & Corasaniti, *supra* note 2.

[4] Jonathan Shorman, *Some Republican States Resist DOJ Demand for Private Voter Data*, Stateline (Sept. 18, 2025), https://stateline.org/2025/09/18/some-republican-states-resist-doj-demand-for-private-voter-data/ (reporting only Indiana has given DOJ everything it sought).

[5] EAVS is a biennial survey of state and local election officials administered by the U.S. Election Assistance Commission ("EAC"). *See* 11 C.F.R. § 9428.7. EAVS asks state and local election officials to answer questions concerning the administration of federal elections, including those involving the voter registration process, military and overseas voting, mail voting, in-person polling operations, provisional voting, and election-related technologies. *Id.* at § 9428.7(b)(6)(i)−(vii). Subsequently, EAC reports its findings to Congress and the public after each regular federal election cycle. *See* Karen L. Shanton, Cong. Rsch. Serv., IF13056, *The Election Administration and Voting Survey (EAVS): Overview and 2024 Findings* (2025).

that Title III of the Civil Rights Act applies only to "voter-registration applications" and similar materials—not statewide voter registrations lists. August 21 Letter from Secretary Read, Ex. F, at 1–2, ECF No. 12-6.[6] He further objected to producing records under Title III because DOJ had not provided a "permissible purpose" for seeking the data under the Civil Rights Act, which he explained was meant to "protect access to the ballot," not permit DOJ to "pursue the administration's anti-voter goals under the NVRA and HAVA." *Id.* at 2. He nonetheless offered to produce Oregon's voter list—excluding full dates of birth, social security numbers, and driver's license numbers, which are protected from disclosure under Oregon law—if DOJ complied with the federal Privacy Act and paid the applicable fee required to access the data under state law. Compl. ¶ 56. Secretary Read also declined to answer DOJ's questions about Oregon's responses to EAVS prompts, explaining he was "not aware of anything in the NVRA or HAVA that would require" him to provide narrative responses to DOJ on these topics. August 21 Letter from Secretary Read, Ex. F at 3.

As far as Proposed Intervenors are aware, DOJ never responded to the concerns Secretary Read raised in his August 21 letter. Instead, DOJ sued.

## III.    DOJ sues Oregon as part of its effort to create a national voter list.

DOJ filed this suit on September 16, 2025, primarily seeking to compel Oregon to produce its full, unredacted statewide voter registration list. Compl. at 21, Prayer for Relief, ¶ D.

DOJ claims that it is entitled to relief under the NVRA, HAVA, and the Civil Rights Act

---

[6] The Court may properly consider this letter at the motion-to-dismiss stage because it was referenced throughout the Complaint. *See Found. Fitness Prods., LLC v. Free Motion Fitness*, 121 F. Supp. 3d 1038, 1041 n.1 (D. Or. 2015) ("In deciding a motion to dismiss, the Court may consider documents attached to the pleadings or referenced therein without converting the motion into one for summary judgment" (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002))); *see also* Compl. ¶¶ 52–56, 59–60, 63–64.

of 1960. DOJ seeks an order requiring Oregon to produce its unredacted statewide voter registration list. *See* Compl. at 21, Prayer for Relief, ¶ D. DOJ also alleges that Oregon failed to "answer the Department's specific inquiries regarding Oregon's list maintenance procedures," Compl. ¶ 66—seemingly referencing its written questions to Secretary Read regarding Oregon's EAVS responses, not its request for Oregon's statewide voter registration list, but the Complaint does not request relief on the EAVS issue, Compl. at 21, Prayer for Relief, ¶ D.

On the same day that DOJ sued Oregon, it also sued Maine, asserting the same claims under the NVRA, HAVA, and Civil Rights Act. Compl., *United States v. Bellows*, No. 1:25-cv-468 (D. Me. Sept. 16, 2025). Days later, it filed largely identical suits against California, Minnesota, New York, New Hampshire, Pennsylvania, and Michigan. Compl*., United States v. Weber*, No. 2:25-cv-9149 (C.D. Cal. Sept. 25, 2025); Compl., *United States v. Simon*, No. 0:25-cv-3761 (D. Minn. Sept. 25, 2025); Compl*., United States v. Bd. of Elections of the State of N.Y.*, No. 1:25-cv-1338 (N.D.N.Y. Sept. 25, 2025); Compl., *United States v. Scanlan*, No. 1:25-cv-371 (D.N.H. Sept. 25, 2025); Compl., *United States v. Commonwealth of Pennsylvania.*, No. 2:25-cv-1481 (W.D. Pa.); *United States v. Benson*, No. 1:25-cv-1148 (W.D. Mich. Sept. 25, 2025).

Proposed Intervenors comprise an Oregon-based civic organization and three Oregon voters. To assert and protect their interests, they moved to intervene as defendants on September 26, 2025, the week after DOJ sued. *See* Mot. Intervene, ECF No. 12. That motion remains pending. They file this proposed motion to dismiss according to the schedule the Court set for the existing parties.

## LEGAL STANDARD

A complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the Court "must accept as true

all of the allegations contained in a complaint" but need not accept the complaint's "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Dismissal is required when a complaint fails to allege "sufficient facts" "to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

## ARGUMENT

## I.    DOJ has not stated any claim entitling it to Oregon's statewide voter registration list.

DOJ cites three statutes to justify its unprecedented demand for the disclosure of Oregon's entire, unredacted statewide voter list—the NVRA, HAVA, and the Civil Rights Act of 1960—none of which supplies any "cognizable legal theory" for the relief DOJ seeks. *Id.*

### A.    The NVRA does not entitle DOJ to Oregon's full unredacted voter list.

DOJ points to the NVRA to support its demand for Oregon's unredacted voter list, Compl. ¶¶ 65–68, but that law cannot sustain the weight DOJ puts on it. What the NVRA requires is that each state "maintain for at least 2 years and . . . make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). This "public inspection" requirement is the sole disclosure provision in the NVRA, and by its terms, it does not grant the federal government special inspection rights beyond those available to the public. Moreover, courts across the country have squarely rejected the notion that the public inspection provision obligates states to provide *every* piece of information contained in covered records—up to and including highly sensitive personal information contained within those files. Instead, courts

have recognized that nothing in the NVRA's text prohibits states from redacting sensitive voter information before disclosure and that doing so does not violate that federal law.

For instance, in *PILF*, the First Circuit held that while Maine's voter registration list was a "record" covered by Section 20507(i) and therefore subject to public inspection, *see* 92 F.4th at 45–49, "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in" such voter files. *Id.* at 56; *see also id.* (citing with approval decisions recognizing that states could redact information such as birthdates and social security numbers). Accordingly, the First Circuit concluded that the "proper redaction of certain personal information" in statewide voter registration lists could "assuage the potential privacy risks implicated by the public release of the [v]oter [f]ile." *Id.* In so holding, the First Circuit effectively recognized that the NVRA's public inspection provisions did not preempt or circumvent the Maine legislature's lawfully enacted privacy requirements, which largely parallel Oregon's state law protection for sensitive voter information and prohibit disclosure of the highly sensitive personal information DOJ seeks. *See* Or. Rev. Stat. § 247.948(2).

That conclusion should come as no surprise to DOJ—it filed an amicus brief in *PILF* urging the First Circuit to reach that result. *See* Br. for the United States as Amicus Curiae in Support of Plaintiff-Appellee at 27–30, *PILF*, 92 F.4th 36 (No. 23-1361), 2023 WL 4882397, at *27–30. While DOJ opposed Maine's argument that it could place limitations on a requester's ability to use and publish the voter registration list, it recognized that the state's "privacy concerns" were "substantial." *Id.* at *27. To that end, its brief "emphasize[d] the limits on [section 20507(i)'s] preemptive scope." *Id.* Most notably, it conceded that "*the NVRA does not prohibit States from redacting 'uniquely sensitive information' like voters' Social Security Numbers before disclosing records.*" *Id.* (citing *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012))

(emphasis added). And it further conceded that the NVRA does not "prohibit [states from] redacting an even broader set of personal information in certain sensitive circumstances." *Id.* at *27–28 (citing *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 267 (4th Cir. 2021)). DOJ made similar arguments previously. *See* Br. for the United States as Amicus Curiae in Support of Plaintiff-Appellee at 11, 25–26, *Project Vote/Voting for Am.*, 682 F.3d 331 (No. 11-1809), 2011 WL 4947283, at *11, 25–26. Its current demand that Oregon produce an entirely unredacted voter registration list reflects an unexplained reversal of its longstanding (and correct) view of federal law.

The First Circuit's holding in *PILF* is no outlier—many other courts have reached the same conclusion. *See Project Vote/Voting for Am., Inc.*, 682 F.3d at 339 (affirming district court order to redact social security numbers before disclosure under NVRA); *N.C. State Bd. of Elections*, 996 F.3d at 268 (recognizing that the NVRA permits redactions to "protect sensitive information"); *Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F. Supp. 3d 1004, 1016 (D. Alaska 2023) (holding the NVRA permits "the exclusion of sensitive personal information" from disclosure*); Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) (holding the NVRA permits "proper redaction of highly sensitive information"); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) (holding the NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns," including telephone numbers, partial social security numbers, partial email addresses, and birth dates); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 739 (S.D. Miss. 2014) (holding the NVRA "does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates"); *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010) (holding that the NVRA permits redacting social security numbers). Indeed, DOJ cannot point to

a single case interpreting the NVRA to override similar state privacy laws at the behest of the federal government or anyone else. Although the Ninth Circuit has yet to address the question, this broad and uniform precedent from multiple courts across the country reaffirms that the NVRA does not grant the invasive authority that DOJ claims here. This Court should follow suit.

To hold otherwise would have striking privacy implications. As noted, the NVRA's public inspection provision provides no special inspection privilege to the federal government. 52 U.S.C. § 20507. Thus, any right that DOJ may have to request inspection of records under Section 20507(i) is a right that is equally shared by the general public. Consequently, if it were the case (as DOJ implies) that it has the right under Section 20507(i) to demand the complete, unredacted voter registration list, then any member of the public can do the same. Not only would that conclusion be contrary to the many decisions holding precisely the opposite, it also would work a radical and unexpected harm to voter privacy, allowing any person to demand the driver's license numbers, dates of birth, and partial social security numbers of every registered voter, in every state. That radical outcome could not have been Congress's intent when enacting the NVRA. DOJ's suit here provides no reason for the Court to depart from the judicial consensus about the scope of the NVRA and jeopardize the privacy rights of hundreds of millions of registered voters.

**B.      HAVA does not entitle DOJ to Oregon's full unredacted voter registration list.**

DOJ points to HAVA as another basis for relief, but that statute also does not support its demand. Compl. ¶¶ 69–72. In fact, HAVA contains no disclosure requirements *at all*. DOJ's Complaint and correspondence cite no authority to the contrary, relying instead upon a provision permitting the Attorney General to file suit "as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements" of HAVA. 52 U.S.C. § 21111. But the underlying statutory provisions DOJ may enforce through Section 21111 say

nothing about permitting DOJ to demand state voter registration lists at will. To the contrary, the sole underlying provision concerning voter registration affirms that voter registration lists must be "maintained" and "administered at the State level"—not by the federal government. 52 U.S.C. § 21083(a)(1)(A); *see also* H.R. Rep. No. 107-329, at 32, 36 (2001) (emphasizing that "local control must be preserved" under HAVA and voter registration databases should be "administered at the state level"). Nothing in HAVA provides any basis for DOJ to compel the disclosure of information that the Constitution and federal law both instruct to be administered at the state level.

Further, it would defy logic to conclude that HAVA implicitly authorizes, let alone *requires*, states to disclose all voter information, including sensitive and personal information protected by state law. Since the NVRA—which has an actual public disclosure provision—permits states to redact sensitive and personal voter information, HAVA—which does not contain *any* disclosure requirement—cannot somehow be read to have broader preemptive effect on state privacy laws than the NVRA. And the mere fact that HAVA grants the Attorney General a cause of action to enforce HAVA's substantive requirements changes nothing because those substantive requirements impose no obligation on states to disclose records to the federal government. *Cf. Peters v. United States*, 853 F.2d 692, 696 (9th Cir. 1988) (explaining authority to issue document requests "is created solely by statute"); *Bobreski v. U.S. EPA*, 284 F. Supp. 2d 67, 76 (D.D.C. 2003) (rejecting argument that statutes created "implied subpoena authority").

Meanwhile, DOJ does not allege that Oregon has violated HAVA's substantive requirements. The federal government, as much as any litigant, cannot use litigation as a "fishing expedition" with "no basis other than gross speculation." *Webb v. Trader Joe's Co*., 999 F.3d 1196, 1204 (9th Cir. 2021); *see also McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006) (holding litigants may not "conduct fishing expeditions in hopes of discovering claims that they do not

know they have.").

### C.    The Civil Rights Act of 1960 does not entitle DOJ to Oregon's voter registration list.

In its final effort to justify its disclosure demand, DOJ dusts off Title III of the Civil Rights Act of 1960, a long dormant law passed in the civil rights era to combat racial discrimination in voting in Jim Crow states. *See* 52 U.S.C. § 20701. As with the NVRA and HAVA, Title III does not support DOJ's demands.

### 1.    Title III was designed to combat the denial of voting rights based on race.

Congress enacted Title III to buttress protections against racial discrimination in voting contained in the Civil Rights Act of 1957. *See* H.R. Rep. No. 86-956, at 3 (1959) (finding that while "some progress" has been made since the Civil Rights Act of 1957 toward the "elimination of discrimination because of race," there was a "need for additional legislation to implement the enforcement of civil rights"); *Ala. ex rel. Gallion v. Rogers,* 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("The legislative history leaves no doubt but that [Title III] is designed to secure a more effective protection of the right to vote"), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). In the Civil Rights Act of 1957, Congress tasked DOJ with protecting the "right of all qualified citizens to vote without discrimination on account of race." H.R. Rep. No. 86-956, at 7 (1959). Despite this charge, DOJ's efforts were stymied by "the refusal of some state and local authority to permit" inspection of voter registration records. *Id.* DOJ had "no existing power in civil proceedings to require the production of [voter registration] records during any investigation" concerning "complaints of a denial to vote because of race." *Id.* Congress found that without granting DOJ a "suitable provision for access to voting records during the course of an investigation," its ability to combat racial discrimination in voting was "rendered relatively ineffective." *Id.* Congress thus enacted Title III to assist DOJ "during any investigation it may

conduct on complaints of a denial to vote because of race." *Id.* (explaining Title III is "an essential step in the process of enforcing and protecting the right to vote regardless of color, race, religion, or national origin" (quoting *In re Wallace*, 170 F. Supp. 63, 67 (M.D. Ala. 1959))).

Title III has two relevant parts. First, Section 301 requires election officials to retain for twenty-two months "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. Second, Section 303 requires election officials to make records covered by Section 301 available for inspection by the Attorney General upon receiving a "demand . . . contain[ing] a statement of the basis and the purpose" for the inspection. *Id.* § 20703.

### 2. By its plain text, Title III does not cover Oregon's internally-created statewide voter registration list.

DOJ's effort to invoke Title III fails from the start because, by its plain terms, it does not require the production of Oregon's voter registration list—or any internal records created by election officials. *See Rainero v. Archon Corp.*, 844 F.3d 832, 837 (9th Cir. 2016) ("If the statutory language is plain, we must enforce the statute according to its terms." (citing *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009)). Title III only permits DOJ to access records that "come into [the] possession" of election officials relating to a voter's "application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C. § 20701. To "come into possession" of something means to receive or acquire it from someone else. *See, e.g.*, *Receive*, Black's Law Dictionary (12th ed. 2024) (defining "receive" as "to come into possession of or get from some outside source"); *Come into possession*, Cambridge Dictionary, https://dictionary.cambridge.org/us/thesaurus/come-into-possession-of (visited Nov. 17, 2025) (listing synonyms of "come into possession" as "obtain," "acquire," and "receive"). Title III's coverage thus extends only to records that election officials *receive* or *acquire* from voters—not those that election officials *generate* or

*create* themselves. Here, DOJ seeks Oregon's "computerized, statewide voter registration list," Compl. at 21, Prayer for Relief ¶ D—an internal database *created* by Oregon election officials. Simply put, DOJ does not seek a record—like a voter registration application—that "c[a]me into [the] possession" of Oregon's election officials. 52 U.S.C. § 20701. It is therefore not a record "required by section 20701 . . . to be retained and preserved," *id.* § 20703, and thus not within the scope of the Attorney General's demand authority under Title III.

The Court should reject DOJ's effort to recast Title III in a broader fashion than its text can support. The "cardinal principle" of statutory interpretation is "that courts 'must give effect, if possible, to every clause and word of a statute.'" *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)). Accordingly, Congress's choice to draft Title III to specifically reach only records and papers that "come into [the] possession" of election officials must be accorded respect and given its plain meaning. That is particularly so since Congress had "obvious alternative" language at its disposal, *Union Pac. R.R. Co. v. United States*, 865 F.3d 1045, 1050 (8th Cir. 2017), namely papers and records "in the possession" of election officials, rather than those that "come into" possession of such officials.

Indeed, Congress frequently employs the phrase "in the possession of" when it means to do so. *See, e.g.*, 30 U.S.C. § 1732(b); 6 U.S.C. § 1502(a); 18 U.S.C. §§ 3500(a)–(b), 1968(f)(3)–(4); 7 U.S.C. § 12(e); 49 U.S.C. § 47124a(b)(1). By contrast, in the comparatively few instances where Congress has employed the phrase "come into his possession," it has done so in contexts where, as here, it was referring to materials that an individual or entity received from an outside source. *See, e.g.*, 18 U.S.C. §§ 1703(a), 1709 (prohibiting a postal employee from stealing or destroying postal material that "comes into his possession"); 50 U.S.C. § 217 (requiring a soldier to turn over captured or abandoned property that "comes into his possession"); 13 U.S.C. § 214

(prohibiting a census worker from publishing or disclosing material that "comes into his possession"). As the Ninth Circuit has noted: "Omitting a phrase from one statute that Congress has used in another statute with a similar purpose virtually commands the . . . inference that the two have different meanings." *Grand Canyon Univ. v. Cardona*, 121 F.4th 717, 725 (9th Cir. 2024) (alteration in original) (quoting *Prewett v. Weems*, 749 F.3d 454, 461 (6th Cir. 2024)) (internal quotation marks omitted). Congress's meticulous choice to adopt the comparatively rare statutory formulation of "come into [the] possession of" in Title III rather than the broader phrase "in the possession of" carries "the natural implication . . . that it did not intend the alternative." *Union Pac. R.R. Co.*, 865 F.3d at 1050 (citing *Advoc. Health Care Network v. Stapleton*, 581 U.S. 468, 477 (2017)). To interpret such phrases identically—which is what DOJ seeks—would strip the Civil Rights Act's text of its intended meaning.

Once the statute is properly construed, DOJ's claim collapses. A legion of federal courts—many relying on dictionaries published contemporaneously with the Civil Rights Act of 1960—have held that to "come into possession" of something means to receive, acquire, or obtain it from some other source. *E.g.*, *Honeycutt v. United States*, 581 U.S. 443, 449 (2017) (defining "obtain" as "to come into possession of" (quoting *Random House Dictionary of the English Language* 995 (1966))); *Huddleston v. United States*, 415 U.S. 814, 820 (1974) ("The word 'acquire' is defined to mean simply 'to come into possession, control, or power of disposal of.'" (quoting *Webster's New International Dictionary* (3d ed., 1966, unabridged))); *United States v. Prasad*, 18 F.4th 313, 319 (9th Cir. 2021) ("The plain meaning of the term 'obtain' is 'to come into possession of' (quoting *Obtain*, *Oxford English Dictionary* (2d ed. 1989)); *United States v. Mohrbacher*, 182 F.3d 1041, 1048 n.5 (9th Cir. 1999) (defining "receive" as "to come into possession of" or to take "into one's possession (something held out or offered by another)" (first quoting *Oxford English*

*Dictionary* (2d ed. 1989); and then quoting *Webster's New International Dictionary* (3d ed., 186, unabridged))). DOJ has no plausible argument that the Defendants received, obtained, or acquired—*i.e.*, that they "c[a]me into [the] possession of"—the statewide voter registration list. Instead, those officials *created* that voter list themselves.

Further, in striving to give effect to every word and phrase in a statute, a court must consider the "specific context" of the phrase being interpreted and the "broader context of the statute as a whole." *Fischer v. United States*, 603 U.S. 480, 486 (2024) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). The specific context of "come into [the] possession" in Title III is that it covers a voter's "application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C. § 20701. These qualifiers are important—each describes discrete documents *submitted by a voter* and other things done *by a voter*. Those actions by voters stand in stark contrast to a *state election official's conduct of creating* a computerized statewide voter list by compiling data from many underlying documents submitted to it *by voters*. *See Fischer*, 603 U.S. at 487 ("[A] word is given more precise content by the neighboring words with which it is associated." (citation modified)).

The broader context of the Civil Rights Act of 1960 also supports excluding statewide voter registration lists from the reach of Title III in the circumstances specifically at issue here—where DOJ has never alleged that it is in fact investigating a Civil Rights Act violation, but instead has claimed to be enforcing NVRA or HAVA. Congress created Title III as a tool to detect voting-related racial discrimination—*not to ascertain compliance with the NVRA or HAVA. See supra* Argument § I.C.1. In fact, it was not until 2002—decades after Title III's enactment—when Congress enacted HAVA that states were first tasked with creating and maintaining "a single, uniform, official, centralized, interactive computerized statewide voter registration list," 52 U.S.C.

§ 21083(a)(1)(A), yet this is exactly what DOJ now seeks from Oregon under Title III. And even then, Congress made it clear that the list was to be maintained "at the State level." *Id.* Congress simply could not have foreseen in 1960 the modern explosion in computing technology—and all the privacy and data security problems brought with it—and so could not have crafted Title III with the intent to grant DOJ unfettered access to the vast amount of sensitive voter data now contained on states' secure computer databases, which themselves would not even come to exist until decades after Title III was enacted. *Cf. Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 353 n.5 (1999)* (supporting statutory interpretation with observation that "Congress could not have foreseen" technological changes in drafting legislation in the 1940s); *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc., 351 F.3d 1229, 1238 (D.C. Cir. 2003)* (narrowly reading statutory subpoena power with observation that the technology at issue was "not even a glimmer in anyone's eye" when Congress drafted the statute).

### 3.    DOJ lacks a proper basis and purpose to demand records under Title III.

Because its statutory text does not reach Oregon's statewide voter registration list as a covered record or paper, the Court need go no further to deny DOJ's assertion that Title III authorizes its demand for the statewide list. But DOJ's Title III argument fails for an additional and independent reason: the statute requires DOJ to articulate a "basis *and* the purpose" for demanding records. 52 U.S.C. § 20703 (emphasis added). DOJ's demand fails on both counts.

*First*, DOJ has not even bothered to try to articulate any basis to believe that Oregon has denied the right to vote or otherwise violated federal law. The lack of any stated basis for investigating Oregon is further highlighted by the fact that DOJ has made what appear to be near carbon copy demands to over forty other states and has sued eight states with complaints that contain nearly identical boilerplate claims and allegations. *See supra* Background § II. This

nationwide effort to collect state voter registration lists undermines any notion that DOJ has a cognizable "basis" for investigating Oregon specifically that would be recognized as valid under the Civil Rights Act. "Simply put, [DOJ's demand] does not identify what conduct, it believes, constitutes an alleged violation." *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458 (5th Cir. 2018).

*Second*, DOJ's stated purpose for issuing the demand to Oregon—to "ascertain Oregon's compliance with the list maintenance requirements of the NVRA and HAVA," Compl. ¶ 51—is not sufficient under Title III, which is meant to permit DOJ to review voting records for "question[s] concerning infringement or denial of [people's] constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962); *see CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689–90 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing") (citation modified). That is, Title III's "purpose is to enable the Attorney General to determine whether" a suit to enforce the Civil Rights Acts is appropriate, *Lynd*, 306 F.2d at 228—not to ascertain compliance with distinct laws with their own enforcement mechanisms including—in the NVRA's case—disclosure provisions.[7] Throughout its correspondence and Complaint, DOJ has yet to cite a single instance in the 65 years of Title III's existence in which the agency issued a demand for records under Title III that did not relate to investigating the "infringement or denial of their constitutional voting rights." *Id.* Proposed Intervenors are aware of no such instance.[8]

---

[7] Indeed, in its initial letter to Oregon, DOJ never even mentioned the Civil Rights Act of 1960. *See* Compl. ¶ 50–51 (noting DOJ invoked the Civil Rights Act in its second letter).

[8] While some of the 1960s-era cases that interpreted Title III included language indicating broad deference to the Attorney General's statement of a "basis and . . . purpose" for requesting records,

Further, even if ascertaining Oregon's compliance with the NVRA and HAVA were a proper purpose for invoking Title III, Oregon's full unredacted voter list is unnecessary for DOJ to evaluate Oregon's list maintenance efforts under the NVRA and HAVA. Both statutes grant states wide discretion: State efforts under the NVRA must only be "reasonable," 52 U.S.C. § 20507(a)(4), and HAVA explicitly commits "specific choices . . . to the discretion of the State." *Id.* § 21085. Secretary Read has already offered DOJ a copy of Oregon's voter file without sensitive personal information protected by Oregon law and exempt from disclosure under the NVRA. *See supra* Background § II. Rather than take him up on the offer, DOJ filed this lawsuit. In doing so, DOJ never bothered to explain why it specifically requires Oregon voters' driver's license numbers, full dates of birth, or social security numbers—*in addition* to all the other information on the voter list that Oregon offered to disclose—to ascertain Oregon's compliance with the NVRA and HAVA. Considering all the circumstances of DOJ's demand, the only conclusion that can be drawn is that DOJ can articulate no reasonable basis to justify a fishing expedition regarding Oregon's compliance with the NVRA and HAVA. *See In re Admin. Subpoena No. 25-1431-019*, No. 1:25-MC-91324-MJJ, 2025 WL 2607784, at *5 (D. Mass. Sept. 9, 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme, rejecting notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review").[9]

---

*see Lynd*, 306 F.2d at 226 (quoting 42 U.S.C. § 1974b, recodified at 52 U.S.C. 20703), those cases involved circumstances where Title III was being used for its intended purpose: investigations into the potential denial of voting rights on account of race. Those prior cases are thus fundamentally different than the circumstances here, where DOJ has offered no justifiable basis to support the need for records to evaluate compliance with two *other* statutes.

[9] Indeed, an attorney in DOJ's voting rights section told the New York Times that DOJ was "dishonest" in describing the purpose for its requests for state voter data. Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times (Nov. 16, 2025),

### 4.     Title III does not prohibit redacting sensitive voter information.

Aside from whether DOJ can validly invoke Title III to demand Oregon's unredacted voter list, Title III does not require the production of sensitive and personal voter information. As the Fifth Circuit has explained, Title III is intended to reach only "public records which ought ordinarily to be open to legitimate reasonable inspection," but not "confidential, private papers and effects." *Lynd*, 306 F.2d at 231. The information that DOJ seeks here is not material typically "open to legitimate reasonable inspection." *Id.* To the contrary, it seeks highly sensitive information that is typically safeguarded from prying eyes under both federal and state law. *See, e.g.*, 5 U.S.C. § 552a; 18 U.S.C. § 2721; Or. Rev. Stat. § 247.948(2). And since driver's license numbers and partial social security numbers were not required on voter registration forms until HAVA was enacted in 2002, *see* 52 U.S.C. § 21083(a)(5)(A)(i), the Congress that enacted Title III four decades prior would not have intended the statute's reach to extend to disclosure of such information. That reinforces the fact that, as with the NVRA, states are free to adhere to their own state laws requiring that they redact sensitive, personal information when producing documents under Title III.

---

https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html

II.    **DOJ has not stated any other claim for relief.**

The only clear request for relief in the Complaint is DOJ's demand for Oregon's statewide voter registration list. Compl. at 21, Prayer for Relief, ¶ D. But the Complaint also alleges that Oregon "refused to answer the Department's specific inquiries regarding Oregon's list maintenance procedures." *Id.* ¶ 66. This apparently refers to DOJ's questions to Oregon regarding the state's EAVS responses and list maintenance practices. To the extent that these vaguely alleged deficiencies are meant to constitute a claim for relief under the NVRA or HAVA, they fail.

Oregon has no statutory obligation to answer DOJ's questions *at all*. Through the NVRA and HAVA, Congress charged states with making "reasonable efforts" to perform list maintenance, 52 U.S.C. § 20507(a)(4); *see id.* § 21083(a)(4)(A), but Congress never required states to report the results of that maintenance to DOJ or submit to DOJ's inquiries about their list maintenance activities. Regulations instead require states to provide certain information *to the EAC*, not DOJ, *see supra* n.5 (citing 11 C.F.R. 9428.7), and DOJ's NVRA claim does not allege that the information that Oregon provided the EAC was insufficient or otherwise violated this regulation. In fact, DOJ does not cite the regulation, nor claim any authority to enforce it. It certainly does not point to any instance in which it compelled a state to answer its questions about the state's EAVS survey responses. Accordingly, Secretary Read's decision not to answer DOJ's questions does not constitute a violation of the NVRA or HAVA or form a basis for relief.

DOJ attempts to fall back on its general enforcement authority under the NVRA and HAVA, Compl. ¶¶ 7, 66, 70 (citing 52 U.S.C. §§ 20510(a), 21111), but that authority simply permits DOJ to bring suits to address plausibly alleged *violations* of those statutes. *See Harkless v. Brunner, 545 F.3d 445, 450 (6th Cir. 2008)* ("The NVRA authorizes judicial intervention if a state fails to comply with its terms."). Here, DOJ does not allege that Oregon has *violated* any of its obligations under the NVRA or HAVA in connection with its EAVS survey responses; instead,

it claims to seek information to prospectively "*ascertain* Oregon's compliance with the list maintenance requirements of the NVRA and HAVA," Compl. ¶ 51 (emphasis added), as it has done with dozens of other states, *see supra* Background § II. DOJ's argument gets things backwards—DOJ cannot sue Oregon (or any other state) as part of a fishing expedition to seek out noncompliance with federal law; rather, the Attorney General can file suit when she can plausibly allege that the substantive terms of the NVRA or HAVA have been violated. *See Webb*, 999 F.3d at 1204; *McCloskey*, 446 F.3d at 271. She has plainly not done so here.

## CONCLUSION

For the reasons above, Proposed Intervenors respectfully request that the Court dismiss the Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

November 17, 2025

Respectfully submitted,

*/s/ Abha Khanna*
**ABHA KHANNA***
WA Bar No. 42612
**WALKER McKUSICK***
WA Bar No. 63205
ELIAS LAW GROUP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
akhanna@elias.law
wmckusick@elias.law

**CHRISTOPHER D. DODGE***
D.C Bar. No. 90011587
**BRANDEN LEWISTON***
D.C. Bar No. 252550
ELIAS LAW GROUP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
cdodge@elias.law
blewiston@elias.law

**HARRY WILSON**, OSB No. 077214
harrywilson@markowitzherbold.com

**DALLAS DELUCA**, OSB No. 072992
dallasdeluca@markowitzherbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: 503-295-3085

*Appearing Pro Hac Vice

*Attorneys for Proposed Intervenors
Our Oregon, Daniel DiIulio, Stephen
Gomez, and Emma Craddock*