DAN RAYFIELD
Attorney General
THOMAS H. CASTELLI  #226448
Senior Assistant Attorney General
KATE E. MORROW #215611
Assistant Attorney General
Trial Attorneys
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  thomas.castelli@doj.oregon.gov
        kate.e.morrow@doj.oregon.gov

Attorneys for Defendants


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>      v.<br><br>STATE OF OREGON; and TOBIAS READ,<br>in his official capacity as the Oregon Secretary<br>of State,<br><br>            Defendants. | Case No.  6:25-cv-01666-MTK<br><br>STATE DEFENDANTS' MOTION TO<br>DISMISS |

# TABLE OF CONTENTS

LR 7-1 CERTIFICATION ................................................................................................ 1

MOTION ......................................................................................................................... 1

MEMORANDUM IN SUPPORT ....................................................................................... 1

I.  INTRODUCTION ..................................................................................................... 1

II.  BACKGROUND ...................................................................................................... 3

III.  LEGAL STANDARD ............................................................................................... 5

IV.  ARGUMENT ........................................................................................................... 6

    A.  The Federal Government must comply with the Privacy Act of 1974 and
    other federal privacy laws to collect and maintain a system of records and
    is prohibited from collecting information relating to protected First
    Amendment activity like voting ........................................................................ 7

        1.  Plaintiff's Request for information from Defendants violates the
        Privacy Act of 1974. ............................................................................ 7

            a.  The Privacy Act prohibits Plaintiff from collecting or
            maintaining records of an individual's First Amendment
            activity ...................................................................................... 9

            b.  The Privacy Act requires Plaintiff to issue a System of
            Records Notice for collecting and maintaining information
            on individuals ........................................................................... 10

        2.  Plaintiff's demand for information violates the E-Government Act. ....... 12

    B.  Plaintiff does not assert a cognizable claim for relief under the NVRA
    because the NVRA does not require Oregon to produce the requested
    sensitive and private information ....................................................................... 13

    C.  HAVA does not require Oregon to produce any information beyond that
    required by the NRVA. ..................................................................................... 15

    D.  Plaintiff has not posed a valid request for information under the Civil
    Rights Act. ...................................................................................................... 18

        1.  Plaintiff may not invoke Title III to investigate issues unrelated to
        civil rights. ........................................................................................ 18

        2.  Plaintiff's demand for records fails to satisfy an essential statutory
        requirement. ...................................................................................... 21

        3.  Plaintiff is entitled to only in-person, redacted inspection of
        records covered by Title III .................................................................. 22

V.  CONCLUSION ........................................................................................................ 23

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# TABLE OF AUTHORITIES

## Cases

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961) ........................................... 18

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 778 F. Supp. 3d 685, 763 (D. Md. 2025), *appeal docketed*, No. 25-1411 (4th Cir. Apr. 18, 2025) .................. 11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ........................................................... 6

*Avila v. Spokane Sch. Dist.* 81, 852 F.3d 936, 941 (9th Cir. 2017) ........................................... 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) ........................................................... 5

*Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999) ................................................ 9

*Bufkin v. Collins*, 604 U.S. 369, 379 (2025) ........................................................................... 18

*Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 990 (9th Cir. 2020) ...................................................................................................... 21

*Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 470 F.3d 827, 846 (9th Cir. 2006) ...................................................................................................................... 19

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017) ...................................................................................... 12

*Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284, 1295–96 (9th Cir. 2019) .................... 7, 9

*Greater Birmingham Ministries v. Sec'y of State*, 105 F.4th 1324, 1333 (11th Cir. 2024) .......... 14

*In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ........................................................................ 20

*In re Coleman*, 208 F. Supp. at 199–200 ............................................................................... 21

*In re Saldana*, 122 F.4th 333, 342–43 (9th Cir. 2024) ............................................................ 22

*Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962) ......................................................... 20, 21

*Lonberg v. Freddie Mac*, 776 F. Supp. 2d 1202, 1206 (D. Or. 2011) ...................................... 3, 6

*MacPherson v. I.R.S.*, 803 F.2d 479, 484 (9th Cir. 1986) ......................................................... 9

*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ..................................................... 6

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) .............................................................. 5

*Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) ........................................................... 16

*Pac. Coast Fed'n of Fishermen's Ass'ns, Inc. v. Nickels*, 150 F.4th 1260, 1271, 1273 (9th Cir. 2025) ...................................................................................................... 18

Page ii

*Peters v. United States*, 853 F.2d 692, 696 (9th Cir. 1988) ............................................ 16

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1345 (N.D. Ga. 2016) ................................... 14

*Project Vote/Voting For America, Inc. v. Long*, 752 F. Supp. 2d 697, 712 (E.D. Va. 2010), *aff'd*, 682 F.3d 331 (4th Cir. 2012) ......................................................... 14, 17

*Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 625 (6th Cir. 2025) ....................................... 13

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) .......................... 14, 15, 22

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 267–68 (4th Cir. 2021) ........................................................................................ 14

*Reno v. Condon*, 528 U.S. 141, 143 (2000) ................................................................. 6

*Ritter v. United States*, 177 Fed. Cl. 84, 87 (2025) ........................................................ 7

*Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) ....................................... 12

*Rutan v. Republican Party of Ill.*, 497 U.S. 62, 69, 75–76 (1990) .......................................... 9

*Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) .................................................. 7

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ....................................................... 6

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 734, 739 (S.D. Miss. 2014) ............................... 14

*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) ........................................................................................ 7

*United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962) ................................................ 20

*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ............................................ 3, 6

*United Steelworkers of Am., AFL-CIO-CLC v. Weber*, 443 U.S. 193, 201–02 (1979) .............. 19

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) ...................................... 6

**Statutes**

ORS 192.826(3)(a) ........................................................................................... 4

ORS 247.014 ................................................................................................. 6

ORS 247.017 ................................................................................................. 6

ORS 247.945(1) ........................................................................................ 1, 4, 8

ORS 247.948(1)(a) .................................................................................... 4, 8, 15

ORS 247.948(2) ................................................................................... 1, 4, 8, 15

ORS 247.965(2) ............................................................................................. 4

Page iii

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 1

Rule 12(b)(6) ................................................................................................................. 5

**Regulations**

68 Fed. Reg. 47610-01 ................................................................................................ 11

68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003) ............................................................. 11

68 Fed. Reg. at 47611 ................................................................................................. 11

70 Fed. Reg. 43904-01 ................................................................................................ 11

70 Fed. Reg. 43904-01 (July 29, 2005) ...................................................................... 11

82 Fed. Reg. 24147 ..................................................................................................... 11

82 Fed. Reg. 24147-01 ................................................................................................ 11

82 Fed. Reg. 24147-01 (May 25, 2017) ...................................................................... 11

OAR 165-002-0020 ...................................................................................................... 4

**Constitutional Provisions**

Oregon Const. art. II ................................................................................................... 3

**United States Code**

18 U.S.C. §§ 2721(a), 2725(1), (3), & (4) ................................................................... 6

5 U.S.C. § 552a ............................................................................................................ 7

5 U.S.C. § 552a(a)(3) ................................................................................................... 8

5 U.S.C. § 552a(a)(4) ................................................................................................... 8

5 U.S.C. § 552a(e)(4)(D) ............................................................................................. 11

5 U.S.C. § 552a(e)(7) ............................................................................................... 9, 12

5 U.S.C. §§ 552a(a)(3), (a)(5), (e)(4), (e)(7), (f) ......................................................... 8

52 U.S.C. § 20501(b) ................................................................................................... 13

52 U.S.C. § 20507(a)(4) ...................................................................................... 10, 13, 21

52 U.S.C. § 20507(a)–(f) ............................................................................................. 13

52 U.S.C. § 20507(b) ................................................................................................... 13

52 U.S.C. § 20507(i) .................................................................................................... 13

Page iv

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

52 U.S.C. § 20507(i)(1) ........................................................................................... 13

52 U.S.C. § 20507(i)(2) ........................................................................................... 13

52 U.S.C. § 20701 ............................................................................................. 18, 19

52 U.S.C. § 20703 ............................................................................................. 21, 23

52 U.S.C. § 20706 ................................................................................................... 18

52 U.S.C. § 20901–21145 ....................................................................................... 16

52 U.S.C. § 21083(a)(1)(A) .................................................................................... 16

52 U.S.C. § 21083(a)(2), (a)(4) .............................................................................. 10

52 U.S.C. § 21111 ............................................................................................. 16, 17

52 U.S.C. § 21145(a)(4) .......................................................................................... 17

52 U.S.C. § 552a(a)(5) ............................................................................................ 10

52 U.S.C. § 552a(a)(5), (e) ..................................................................................... 10

52 U.S.C. §§ 20701, 20703 ..................................................................................... 22

52 U.S.C. §§ 20901–21145 ..................................................................................... 16

52 U.S.C. §§ 21081–21085 ..................................................................................... 16

52 U.S.C. §§ 21083(a)(2), (4) ................................................................................. 16

52 U.S.C.§ 20507(i)(1) ............................................................................................ 15

E-Government Act, Pub. L. No. 107–347, § 208, 116 Stat. 2899 (2002).................... 12

National Voter Registration Act, 52 U.S.C. § 20501 *et seq.* ......................................... 3

Pub. L. No. 107–347, § 208(b)(1)(A)(ii)(II) ............................................................... 12

Pub. L. No. 93–579, § 2(b), 88 Stat. 1896 (1974) ...................................................... 11

Title III of the Civil Rights Act of 1960, 52 U.S.C. § 20701, *et seq* ("CRA")............... 4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## LR 7-1 CERTIFICATION

In compliance with LR 7-1(a), undersigned counsel for Oregon have conferred in good faith with all counsel regarding the issues presented by this Motion to Dismiss. Plaintiff opposes the motion.

## MOTION

Defendants State of Oregon and Tobias Read in his official capacity as Secretary of State for the State of Oregon (together, Defendants or Oregon) move the Court for an order dismissing Plaintiff United States of America's Complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). The grounds for this Motion to Dismiss are set forth in the accompanying Memorandum.

## MEMORANDUM IN SUPPORT

## I.        INTRODUCTION

Plaintiff United States of America, through the Department of Justice, seeks an order directing the Defendants Secretary of State and the State of Oregon to turn over a copy of Oregon's computerized voter registration list of its nearly 3.8 million registered voters. *See* Compl. ¶ 35. It demands Oregon do so "with all fields" of information associated with each individual voter's registration record. *Id*. ¶ 51. Plaintiff also demanded that Defendants answer several narrative questions about data provided to the Election Assistance Commission and generally about Oregon's practices related to unauthorized registrants. *Id*. ¶¶ 38, 45.[1] Oregon law provides that any person may request a list of voters; however, that list cannot contain a voter's birth month, birthday, social security number, or driver's license number. ORS 247.945(1); ORS 247.948(2). Defendants offered to provide the publicly available list under its normal procedures,

---

[1] While the Complaint alleges that Defendants did not adequately respond to these narrative questions, Plaintiff's Prayer for Relief asks only that the Court order Defendants to provide the unredacted voter list and does not ask the Court to compel Defendants to provide answers. Nevertheless, for the reasons set forth in this brief, the statutes cited by Plaintiff contain no such authority.

Page 1 -    STATE DEFENDANTS' MOTION TO DISMISS
            TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

if Plaintiff met certain requirements of federal law. Plaintiff responded by filing this lawsuit. *See* Declaration of Thomas H. Castelli at Ex. 3.

Plaintiff is not legally entitled to the sensitive voter information it demands. Plaintiff fails to adequately allege compliance with federal laws protecting citizens' personal information: the Privacy Act and the E-Government Act. Without compliance with these acts, Plaintiff is prohibited from collecting the information in the voter list. Each of Plaintiff's three claims fail.

In its first count, DOJ claims it is entitled to the protected voter information under the National Voter Registration Act's ("NVRA") public inspection provision. However, nothing in NVRA's disclosure provision requires the production of highly sensitive information, and numerous courts have found that the NVRA permits redactions of sensitive voter information. In its second count, Plaintiff claims its generic enforcement authority under the Help America Vote Act ("HAVA") empowers it to demand and receive the sensitive data requested. No legal authority supports that proposition. In its third count, DOJ attempts to invoke Title III of the Civil Rights Act of 1960 ("CRA"), a civil rights era tool that allows the Attorney General to make demands to inspect elections records to enforce voting rights laws related to discrimination in voter registration based on race. Plaintiff fundamentally misunderstands the CRA's purpose and operation. Plaintiff cannot provide a statement of the basis and the purpose for its records demand for a purpose consistent Title III's narrow scope. Additionally, like the NVRA and HAVA, nothing in the CRA requires the production of sensitive information or prevents its redaction.

For the reasons set forth below, the Court should therefore grant Oregon's Motion to Dismiss the Complaint

Page 2 -   STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## II.     BACKGROUND

The Plaintiff United States of America asks the Court to order the Defendants to provide confidential, sensitive information regarding Oregon voters.[2] On July 16, 2025, Plaintiff sent Oregon Secretary of State Tobias Read a letter requesting "[t]he current electronic copy of Oregon's computerized statewide voter registration list." Castelli Decl., Ex. 1 (July 16, 2025 Letter)[3]; Compl. ¶ 34–35, ECF 1. The July letter also asked Defendants to provide narrative answers to broad, often vague, questions "in electronic form." Compl. ¶¶ 36–45; Castelli Decl., Ex. 1 at 2–3. Six numbered questions asked the Secretary to "explain" or "describe" certain information that Oregon provided to Election Assistance Commission's (EAC) Election Administration and Voting Survey (EAVS). *See* Compl. ¶¶ 36–44; Castelli Decl., Ex. 1 at 2–3. A seventh, unnumbered question asked the Secretary to "provide a description of the steps that Oregon has taken" to remove ineligible voters from its voting rolls and identify registered voters deemed ineligible because they were non-citizens, adjudicated incompetent, or had felony convictions. *See* Compl. ¶ 45; Castelli Decl., Ex. 1 at 3. Plaintiff claimed that it is entitled to this information under the NVRA, 52 U.S.C. § 20501 *et seq.* Castelli Decl., Ex. 1 at 1.

By letter dated August 14, 2025, Plaintiff stated that it requires the voter list "to assess your state's compliance with the statewide VRL maintenance provisions of the [NVRA]." Castelli Decl., Ex. 2 at 1 (August 14, 2025 Letter)[4]; Compl. ¶¶ 47–51. The letter expanded Plaintiff's request, specifying that the voter list must contain "*all fields*, which includes either the

---

[2] Oregon's Constitution and laws refer to voters as "electors." *See e.g.*, Oregon Const. art. II. For clarity, Defendants will use the term voters in this motion.

[3] Plaintiff refences and quotes from the July 16, 2025 letter in its Complaint and its contents form the basis of Plaintiff's factual allegations. *See* Compl. ¶¶ 34–35. Because the letter is incorporated by reference into the Complaint, it is properly considered on a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Lonberg v. Freddie Mac*, 776 F. Supp. 2d 1202, 1206 (D. Or. 2011).

[4] Plaintiff also refences and quotes from the August 14, 2025 letter in its Complaint and its contents form the basis of Plaintiff's factual allegations. *See* Compl. ¶¶ 34–35. Because the letter is incorporated by reference into the Complaint, it is properly considered on a motion to dismiss. *Ritchie*, 342 F.3d at 908; *Lonberg*, 776 F. Supp. 2d at 1206.

Page 3 -    STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number." Compl. ¶ 51 (quoting the August 14, 2025 letter, Castelli Decl., Ex. 2 at 1) (emphasis in original). For the first time in this second letter, Plaintiff invoked HAVA, 52 U.S.C. § 20501 *et seq*., and the CRA, 52 U.S.C. § 20701, *et seq*., as a basis for its demand.

Oregon law provides that any person may request a list of voters. ORS 247.945(1). The publicly available information of a voter is limited to the name, address, phone number, year of birth, party affiliation, if any, whether the person voted in previous elections, the voter's precinct, and the administrative number for the voter that is used by the Secretary of State's office. ORS 247.948(1)(a). The publicly available list may not include a voter's birth month, birthday, social security number, or driver's license number. ORS 247.948(2). The list must also exclude information about participants in the Address Confidentiality Program[5] or is otherwise deemed confidential.[6] ORS 247.945(1). The procedures to request a copy of the statewide voters list, or a less than statewide list are set forth in OAR 165-002-0020.

On August 21, 2025, Secretary of State Read sent a letter responding to Plaintiff's July 16 and August 14 demands for information. Compl. ¶ 52; Castelli Decl., Ex. 3 (August 21, 20225 Letter).[7] The Secretary's letter responded to the requests to explain Oregon's voter maintenance program by providing references to Oregon's statutes governing its general program for list maintenance, including the removal of ineligible voters. Defendants also responded to Plaintiff's request that they list current and prior election officials responsible for

---

[5] The Address Confidentiality Program applies to a "victim of domestic violence, a sexual offense, stalking, bias or human trafficking and that the applicant fears for the applicant's safety or the safety of the applicant's child or ward." ORS 192.826(3)(a).

[6] ORS 247.965 allows a voter to request their address be confidential for personal safety reasons or if the voter has been identified as an election worker. ORS 247.965(2).

[7] Plaintiff refences and quotes from the Secretary's August 21, 2025 letter responding to Plaintiff in its Complaint and its contents form the basis of Plaintiff's factual allegations. *See* Compl. ¶¶ 52–56, 59–60. Because the letter is incorporated by reference into the Complaint, it is properly considered on a motion to dismiss. *Ritchie*, 342 F.3d at 908; *Lonberg*, 776 F. Supp. 2d at 1206.

Page 4 -   STATE DEFENDANTS' MOTION TO DISMISS

implementing that Program. Castelli Decl. at Ex. 3 at 3. Defendants also stated that Plaintiff

lacked federal authority for its request for the voter list or to require Defendants to provide

narrative responses to Plaintiff's questions. Compl. ¶ 56; Castelli Decl., Ex. 3 at 2. Defendants

noted that, as a condition to Plaintiff's demand for sensitive information related to Oregon

voters, Plaintiff must comply with the Privacy Act of 1974 ("Privacy Act"), U.S.C. § 552a.

Compl. ¶ 56; Castelli Decl., Ex. 3 at 2. Once Plaintiff issued the required System of Records

Notice (SORN) in the Federal Register, Defendants offered to provide the publicly available

voter list pursuant to the requirements of applicable state laws and rules. Compl. ¶ 56; Castelli

Decl., Ex. 3 at 2. Although not specifically requested, and on the same conditions, Defendants

also offered to provide a list of registered voters to whom a confirmation notice was sent in

response to some of Plaintiff's narrative questions. Castelli Decl., Ex. 3 at 3.

     Plaintiff has not issued a SORN related to its request for Oregon's voter list. Nor did

plaintiff respond to Secretary Read's August 21, 2025 letter. Instead, it filed the Complaint

asking the Court find that Oregon has violated the NVRA, HAVA, and Title III of the CRA, and

order that Defendants provide "a current electronic copy of Oregon's computerized, statewide

voter registration list, with all fields, including each registrant's full name, date of birth,

residential address, and either their state driver's license number or the last four digits of their

Social Security number." Compl. at 21 (Prayer for Relief).

## III.    LEGAL STANDARD

     To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that, if

accepted as true, are sufficient to "raise a right to relief above the speculative level" and to state a

"claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570

(2007). Courts should grant Rule 12(b)(6) motions when there is no cognizable legal theory to

support the claim. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). At the motion to

dismiss stage, courts must accept all material facts alleged in the complaint as true and construe

them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668

Page 5 -   STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

F.3d 1136, 1140 (9th Cir. 2012). A court may consider documents not physically attached to a complaint where they are incorporated by reference and the complaint relies on them. *See Lonberg v. Freddie Mac*, 776 F. Supp. 2d 1202, 1206 (D. Or. 2011); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). To be entitled to a presumption of truth, however, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Courts need not credit a plaintiff's legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## IV.    ARGUMENT

This Court should dismiss Plaintiff's claims. First, Plaintiff has not complied with the Privacy Act of 1974 or the E-Government Act,[8] which are a prerequisite for Plaintiff—the federal government—to collect the requested information. Second, Plaintiff's claims under the NVRA and HAVA fail because neither statute requires Defendants to produce unredacted copies of the voter file, nor do they authorize Plaintiff to demand the sensitive information it seeks. Finally, Plaintiff's CRA claim fails because Plaintiff has not validly requested information

---

[8] Plaintiff's demand also likely violates the Driver's Privacy Protection Act ("DPPA"). In Oregon, the Driver and Motor Vehicle Services Division ("DMV") electronically provides to the Secretary certain information associated with each person who applies for, renews, or replaces a driver's license, permit, or identification card and who is qualified to register to vote**.** ORS 247.014;247.017. The DPPA prohibits disclosing "personal information" that is obtained by the DMV in connection with a "motor vehicle record." 18 U.S.C. §§ 2721(a), 2725(1), (3), & (4); *Reno v. Condon*, 528 U.S. 141, 143 (2000). Plaintiff alleges no reason why driver's license numbers for millions of registered voters would be necessary to determine whether Oregon's general program of list maintenance is adequate. Plaintiff certainly has not alleged how it would use those driver's license numbers.

Page 6 -    STATE DEFENDANTS' MOTION TO DISMISS
        TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

relating to a civil rights investigation under the CRA. None of the statutes cited authorize Plaintiff to require defendant to answer narrative questions.

**A.    The Federal Government must comply with the Privacy Act of 1974 and other federal privacy laws to collect and maintain a system of records and is prohibited from collecting information relating to protected First Amendment activity like voting.**

Plaintiff demands that Defendants produce an unredacted voter list with sensitive personal identifying information as well as information related to Oregon voters' First Amendment activity. Congress, however, has limited federal agencies on when and what information it may request and store. Compliance with Plaintiff's request violates federal law. The Court should not order Defendants to be complicit in that violation. If the Court determines that the Privacy Act or other privacy issues raised should be treated as an affirmative defense, it may consider them at the motion to dismiss phase. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). Specifically, if the Court finds an "obvious bar to securing relief on the face of the complaint," it can dismiss based on an affirmative defense. *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) (quotation omitted). The Complaint shows three such obvious bars to relief: failure to comply with the Privacy Act, the E-Government Act, and the Driver's Privacy Protection Act.

**1.    Plaintiff's Request for information from Defendants violates the Privacy Act of 1974.**

The Privacy Act of 1974, as codified at 5 U.S.C. § 552a, bars DOJ's claim for Oregon voter information. "The Privacy Act exists to protect individuals from disclosure of government-collected information." *Ritter v. United States*, 177 Fed. Cl. 84, 87 (2025). "The passage of the Privacy Act was spurred by congressional concern in response to the explosion of computer technology, which allowed for compilation and storage of data in quantities not seen before, coupled with rightful and broad condemnation of government surveillance programs including Watergate and the FBI's COINTELPRO." *Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284, 1295–96 (9th Cir. 2019) (citing Steven W. Becker, *Maintaining Secret Government*

Page 7 -    STATE DEFENDANTS' MOTION TO DISMISS

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Dossiers on the First Amendment Activities of American Citizens: The Law Enforcement Activity Exception to the Privacy Act,* 50 DePaul L. Rev. 675, 679 (2000)). "[T]he Act was 'designed to set in motion a long-overdue evaluation of the needs of the federal government to acquire and retain personal information on Americans, by requiring stricter review within agencies of criteria for collection and retention' of such information." *Id.* at 1296 (quoting S. Rep. No. 93-1183, at 2 (1974) (Conf. Rep.), as reprinted in 1974 U.S.C.C.A.N. 6916, 6917) (emphasis removed). The law created "certain safeguards for an individual against an invasion of personal privacy." Pub. L. No. 93–579, § 2(b), 88 Stat. 1896 (1974). Federal agencies are prohibited from collecting or maintaining records related to an individual's First Amendment activities (unless narrow exceptions apply), and they must follow specific procedures before they "maintain, collect, use, or disseminate" any group of records searchable by individual. 5 U.S.C. §§ 552a(a)(3), (a)(5), (e)(4), (e)(7), (f).

The Privacy Act applies to the detailed voter data requested by Plaintiff. A "record" includes "any item, collection, or grouping of information about an individual that is maintained by an agency . . . and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(4). The requested voter list meets this definition. The limited voter lists available under ORS 247.945(1) contain personal information like addresses, phone numbers, party registration, voting participation history, and year of birth. ORS 247.948(1)(a). The expanded list demanded by Plaintiff contains even more sensitive personal identifying information protected as confidential under Oregon law, such as drivers' license numbers, social security numbers, and full birth dates. *See* ORS 247.948(2); *see also* Compl. ¶ 51 (requesting the statewide voter registration list with "all fields," including sensitive personal data). If Plaintiff collects these records through this suit, it will result in a covered collection of records under the Privacy Act. *See* 5 U.S.C. § 552a(a)(3) (defining "maintain" to include "maintain, collect, use, or disseminate").

Page 8 -    STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

a.    **The Privacy Act prohibits Plaintiff from collecting or maintaining records of an individual's First Amendment activity.**

The Privacy Act governs Plaintiff's request for records from Oregon and precludes collection of this data. The Privacy Act bars federal agencies from collecting or maintaining records "describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). Plaintiff's demand conflicts with this statutory bar. The voter list contains voter registration information, party affiliation, and a voter's choice to participate or not in an election. This conduct by Oregon voters is a form of political expression protected by the First Amendment. *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999) (choice of whether to register to vote "implicates political thought and expression"); *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 69, 75–76 (1990) (the expression of political beliefs and association through political affiliation is protected by the First Amendment). The Ninth Circuit has "recognize[d] that even 'incidental' surveillance and recording of innocent people exercising their First Amendment rights may have the 'chilling effect' on those rights that section (e)(7) was intended to prohibit. . . . Blanket allowance of such 'incidental' surveillance and recording under the guise of general investigation could permit the exception to swallow the rule." *MacPherson v. I.R.S.*, 803 F.2d 479, 484 (9th Cir. 1986).

No exception applies. No statute authorizes Plaintiff to maintain Oregonians' full, unredacted voter registration records. Plaintiff does not allege, nor could it, that it has received the express authorization of the millions of voters whose records it seeks. The information must, therefore, be "pertinent to and within the scope of an authorized law enforcement activity" to allow its collection and maintenance. *See* 5 U.S.C. § 552a(e)(7); *Garris*, 937 F.3d at 1295 ("[A]n agency may not 'collect' a record describing any individual's protected First Amendment activity 'unless pertinent to and within the scope of an authorized law enforcement activity.'").

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Any law enforcement activity must be relevant at the time of collection of the records and at the time of maintaining any such record. *Garris*, 937 F.3d at 1295.

Plaintiff alleges that its purpose in demanding the unredacted voter list is to investigate whether Defendants are "complying with the statewide voter registration list maintenance provisions of the NVRA." Compl. ¶ 34; *see also* Castelli Decl., Ex. 1 at 1. The First Amendment protected information in the voter list is not pertinent to or within the scope of Plaintiff's purported investigation of Oregon's list maintenance program and practices under the NVRA and HAVA. *See* 52 U.S.C. § 20507(a)(4) (NVRA provision requiring states to "conduct a general program that makes a reasonable effort" to remove ineligible voters due to death or change in residence), cited in Compl. ¶¶ 10–14; 52 U.S.C. § 21083(a)(2), (a)(4) (similar provision in HAVA), cited in Compl. ¶ 21. Plaintiff does not allege that it is investigating any individual voter for any criminal or civil violation. The complete voter list, with all the sensitive information and information related to protected First Amendment activity are not pertinent or within the scope of an investigation into list maintenance practices. If a record "has at best only speculative relevance to an unstated law enforcement purpose," this exception is not satisfied. *Garris*, 937 F.3d at 1299. Because no exception applies, the statutory bar on maintaining records on First Amendment activities prohibits Plaintiff from collecting the requested records.

> **b.** **The Privacy Act requires Plaintiff to issue a System of Records Notice for collecting and maintaining information on individuals.**

Even if Plaintiff were to meet the standard for collecting information related to First Amendment activity or limit its request to information that does not contain that information, heightened protections apply when an agency establishes or alters a "system of records," or "group of records under the control of any agency from which information is retrieved by the name of the individual" or other individual identifier. 52 U.S.C. § 552a(a)(5), (e). The Privacy Act requires Plaintiff to publish a System of Records Notice (SORN) in the Federal Register before "establish[ing] or revis[ing]" a "system of records." *Id*. § 552a(e)(4).

Page 10 -  STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

The attempt to obtain unredacted voter records from multiple states is an example of a "system of records." *See* 52 U.S.C. § 552a(a)(5). The Complaint identifies no SORN allowing it to collect this data, nor are Defendants aware of any applicable SORN. Plaintiff alleges that the records requested would be collected and maintained under the "SORN titled, JUSTICE/CRT – 001, 'Central Civil Rights Division Index File and Associated Records,' 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003) ; 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017)." Compl. ¶ 62. The SORN found at 68 Fed. Reg. 47610-01 states that it applies to "case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." 68 Fed. Reg. at 47611. The regulation does not cover a voter list complete with names, addresses, party affiliation, and voting history, much less driver's license numbers, social security numbers, and full dates of birth. The other regulations cited by Plaintiff amended certain US DOJ SORNs. 70 Fed. Reg. 43904-01 adds a new routine use of records maintained under the SORN for disclosing information related to closed investigations of public concern. 82 Fed. Reg. 24147-01 modified all US DOJ SORNs related to responses to a breach of personally identifying information. 82 Fed. Reg. 24147.

Plaintiff cannot shoehorn collecting records of Oregon voters, and other state's voter information, under the existing 2023 SORN for maintaining investigatory files. Plaintiff's efforts to collect and maintain this data are barred under the Privacy Act. By requiring a SORN to be filed in the federal register, the Privacy Act requires Plaintiff to put any new system of records up to public notice and comment regarding the nature, scope, and routine uses of the records before the government collects Americans' data. 5 U.S.C. § 552a(e)(4)(D); *see Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 778 F. Supp. 3d 685, 763 (D. Md. 2025), *appeal docketed*, No. 25-1411 (4th Cir. Apr. 18, 2025). The Privacy Act was meant to establish "safeguards for an individual against an invasion of personal privacy." Pub. L. No. 93–579, § 2(b), 88 Stat. 1896 (1974). Allowing Plaintiff to collect and maintain the personal and

Page 11 -  STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

First Amendment protected information in Oregon's voter list without public notice and comment and full disclosure of what use and disclosure the data might be subjected to frustrates the purpose of the Privacy Act.

Because Plaintiff's demand for the unredacted voter list violates the Privacy Act, the Court should address this problem now. The Court may consider this Privacy Act issue on a Motion to Dismiss because the violations "are apparent on the face of the complaint." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013). Plaintiff seeks Privacy Act-protected information but fails to include allegations explaining how this request for massive amounts of information on all voting Oregonians would comply with that law. Nor can this deficiency be cured. Plaintiff is statutorily barred from collecting records, such as these, that describe individuals' protected First Amendment activity. *See* 5 U.S.C. § 552a(e)(7). And even if it could collect such records, no SORN satisfies Plaintiff's rigorous procedural duties under the Act. *Id*. § 552a(e)(4). Plaintiff cannot, therefore, make a cognizable legal claim for the information requested from Defendants and the Court should dismiss the Complaint.

### 2.    Plaintiff's demand for information violates the E-Government Act.

The Court should also dismiss the Complaint for failure to comply with the E-Government Act, Pub. L. No. 107–347, § 208, 116 Stat. 2899 (2002). The E-Government Act requires federal agencies to conduct a "privacy impact assessment" (PIA) prior to "initiating a new collection of information" that "includes any information in an identifiable form permitting the physical or online contacting of a specific individual" if the information encompasses "10 or more persons." *Id*. § 208(b). The PIA and its procedural requirements must be completed "before the agency initiates a new collection of information." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017) (emphasis in original).

Plaintiff is seeking information protected by the E-Government Act. The names, addresses, and sensitive voter information contained in the data and applications constitute

Page 12 -  STATE DEFENDANTS' MOTION TO DISMISS

personal information protected by the Act, triggering the PIA requirement. See Pub. L. No. 107–347, § 208(b)(1)(A)(ii)(II); OMB Guidance, M-03-22 (Sep. 26, 2003) The Complaint does not allege that Plaintiff completed a PIA applicable to this data on individual voters. Because Plaintiff, again, failed to comply with federal laws limiting its collection of sensitive data, the Court should dismiss the Complaint.

**B.      Plaintiff does not assert a cognizable claim for relief under the NVRA because the NVRA does not require Oregon to produce the requested sensitive and private information.**

The NVRA establishes nationwide standards for enhancing voter participation and protecting the integrity of elections. *See* 52 U.S.C. § 20501(b). One way the NVRA achieves those goals is through requiring states to conduct voter list maintenance. 52 U.S.C. § 20507(a)(4) ("[E]ach State shall . . . conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters."). That list maintenance program must be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965," and it must not result in the removal of a person registered to vote in a federal election for failure to vote except in specific circumstances. 52 U.S.C. § 20507(b). List maintenance activities include removing individuals from the official list of voters upon death or a change of residence, as well as sending confirmation notices to voters upon a change in residence to ensure accurate voter lists. 52 U.S.C. § 20507(a)–(f). A state "need not . . . go to 'extravagant or excessive' lengths in creating and maintaining such a program." *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 625 (6th Cir. 2025).

In addition to requiring list maintenance activities, the NVRA requires states to maintain records relating to each state's list maintenance program and permit public inspection of those records. 52 U.S.C. § 20507(i). The NVRA requires that each state maintains "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). The records that each state maintains pursuant to that provision "shall include lists of the names and

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

addresses of all persons to whom [confirmation notices] are sent, and information concerning whether or not each such person has responded to the notice." 52 U.S.C. § 20507(i)(2). The NVRA requires states to make list maintenance program records available for "public inspection" and "where available, photocopying at a reasonable cost." 52 U.S.C. § 20507(i)(1). The NVRA only requires "inspection." There is no requirement that Oregon provide an electronic version of the records. *Greater Birmingham Ministries v. Sec'y of State*, 105 F.4th 1324, 1333 (11th Cir. 2024) ("'[P]ublic inspection' as used in the . . . [NVRA] does not include electronic disclosure"). This limitation to providing for the inspection of records likewise invalidates any argument by Plaintiffs that Defendants are required to provide narrative answers to its questions.

The public inspection provision of the NVRA does not require states to disclose sensitive information when producing a voter file. States may redact personal or sensitive information from a voter file before producing it, and in fact, should do so. *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) ("[T]he proper redaction of certain personal information in the Voter File can further assuage the potential privacy risks implicated by the public release of the Voter File."). Courts have held that certain categories of information should be redacted prior to publicly releasing the voter file. *See id.* Those categories include social security numbers, full birthdates, personal information of individuals subject to criminal investigations and those who potentially failed to meet citizenship requirements, and other personal information contained in the voter file. *Project Vote/Voting For America, Inc. v. Long*, 752 F. Supp. 2d 697, 712 (E.D. Va. 2010), *aff'd*, 682 F.3d 331 (4th Cir. 2012) ("[A]ny voter registration application containing an applicant's SSN should be redacted before public exposure of the application."); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 734, 739 (S.D. Miss. 2014) ("[T]he NVRA Public Disclosure Provision does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates."); *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 267–68 (4th Cir. 2021) (requiring NVRA records to be redacted "to

Page 14 -  STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

protect exonerated potential noncitizens and their sensitive information" including "the identities and personal information of those subject to criminal investigations"); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1345 (N.D. Ga. 2016) (requiring redaction of all digits but the final four digits of a registrant's phone number and social security number, all characters preceding the "@" symbol in a registrant's email address, and a registrant's birth date). The NVRA does not require the disclosure of sensitive information. No court has held otherwise. *See id.*

This court should reach the same conclusion—that any public disclosure of records under the NVRA does not require disclosure of sensitive information. Oregon law limits the publicly available information on a voter list. ORS 247.948(1)(a). The publicly available list may not include a voter's birth month, birthday, social security number, or driver's license number. ORS 247.948(2). The NVRA does not compel production of such sensitive information. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th at 56; 52 U.S.C.§ 20507(i)(1). Oregon's voter information protections do not frustrate the NVRA's purpose and operate harmoniously with the NVRA's public disclosure requirements.

Defendants offered Plaintiff the opportunity to acquire the list made available to members of the public, subject to Plaintiff's compliance with the Privacy Act. Compl. ¶ 56. Defendants also offered to provide a list of the voters to whom such confirmation notices are sent for a period of two years. *Id.* at ¶ 60; Castelli Decl. Ex. 3 at 3. Again, the provision of the information was a condition on Plaintiff's compliance with federal privacy laws and state procedures. Plaintiff have not responded to these offers to provide information under the NVRA and, instead, filed this lawsuit. Defendants have complied with the requirements of the NVRA by offering voter list information without the sensitive, personal information. The NVRA compels nothing more.

## C.    HAVA does not require Oregon to produce any information beyond that required by the NRVA.

HAVA does not provide an independent authority under which states must provide information about the voter registration list, or the list itself, to Plaintiff. Plaintiff argues that

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

HAVA "also provides authority for the Justice Department to seek the State's VRL," Compl. ¶ 49; that Oregon's failure to comply with the information requests in the July 16 and August 14, 2025 letters "prevents the Attorney General from enforcing the list maintenance procedures required by . . . HAVA," Compl. ¶ 71; and that failure to comply with those letters also "prevents the Attorney General from determining Oregon's compliance with the list maintenance requirements of HAVA," Compl. ¶ 72. Plaintiff incorrectly interprets HAVA. HAVA does not provide Plaintiff with any authority to require states to disclose the voter registration list to Plaintiff.

HAVA establishes requirements for states to follow in running federal elections. It includes voting technology requirements, voter registration requirements, and voter registration management requirements, among others. *See* 52 U.S.C. §§ 20901–21145. It requires states to implement and administer a computerized statewide voter registration list. 52 U.S.C. § 21083(a)(1)(A). HAVA requires states to maintain that list, including removals of ineligible voters, in accordance with the NVRA. 52 U.S.C. §§ 21083(a)(2), (4). HAVA does not include any provisions authorizing public inspection of that voter list or maintenance practices, nor does it include any other standalone public disclosure provision. *See* 52 U.S.C. §§ 21081–21085 (providing the requirements that states must implement).

The provision that authorizes the Attorney General to enforce the requirements of HAVA contains only a cause of action for the Attorney General, and it does not contain any information sharing requirements as part of that provision. *See* 52 U.S.C. § 21111. Nor does any other provision of HAVA require states to share information about the statewide voter registration list with the federal government. *See generally* 52 U.S.C. § 20901–21145. Thus, HAVA is not an independent legal authority under which Plaintiff may compel states to produce records and information pertaining to the statewide voter registration list.

HAVA works together with the NVRA, but unlike the NVRA, it does not have a public inspection provision. HAVA's statutory text includes no requirement to produce information

Page 16 -  STATE DEFENDANTS' MOTION TO DISMISS

about specific registered voters, and its text must control. *See Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022). Plaintiff cites no HAVA provision for authority to demand documents. *Peters v. United States*, 853 F.2d 692, 696 (9th Cir. 1988) (authority of government agency to issue document request "created solely by statute"). Instead, Plaintiff makes conclusory allegations that Defendants violate HAVA by failing to provide the unredacted voter lists. Compl. ¶¶ 71–72. HAVA, however, specifically states that "nothing in this [Act] may be construed . . . to supersede, restrict, or limit the application of . . . The [NVRA]." 52 U.S.C. § 21145(a)(4); *see also Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 338 (4th Cir. 2012) ("Thus, by its own terms, HAVA cannot restrict or limit the application of the NVRA's public disclosure requirement.").

Any information required by HAVA may be requested under the NVRA's public inspection provision, subject to the redaction of sensitive information as discussed above. Because nothing in HAVA entitles the federal government, or the public generally, to documents relating to the statewide registration list, HAVA does not provide any standalone authority for Plaintiff to compel Oregon to provide the statewide voter registration list or other information that Plaintiff requested in its letters. Accordingly, this Court should dismiss Count II.

If Plaintiff seeks to "evaluate the State of Oregon's compliance with HAVA pursuant to the Attorney General's statutory enforcement authority under 52 U.S.C. § 21111," Compl. ¶ 70, then it must go through the normal process for requesting records under the NVRA's public inspection provision and comply with the Privacy Act, as described above. As with the NVRA, assessing compliance with HAVA does not require an unredacted copy of the statewide voter list, nor does it require the disclosure of personal and sensitive voter information including full birth dates, driver's license numbers, or social security numbers. Therefore, Plaintiff has no authority under the HAVA enforcement provision to compel Oregon to produce that information, or any other information, under HAVA.

Page 17 -  STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**D.     Plaintiff has not posed a valid request for information under the Civil Rights Act.**

Title III of the Civil Rights Act of 1960 ("CRA" or "Title III") was "designed to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.,* 285 F.2d 430 (5th Cir. 1961). As part of this effort, Title III requires retention of certain documents by elections officials: "[e]very officer of election[9] shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such [federal] election[.]" 52 U.S.C. § 20701 (alteration added). If certain conditions are met, Plaintiff may inspect these records. *Id*. § 20703. The Attorney General must present "a statement of the basis and the purpose therefor." *Id*.

**1.     Plaintiff may not invoke Title III to investigate issues unrelated to civil rights.**

Plaintiff's demand for records also fails to satisfy Title III's requirements because the stated purpose falls outside the scope of the CRA. The CRA's text and history limit Title III to investigations of civil rights violations, namely, efforts to prevent eligible voters from voting or registering to vote for illegal reasons like racial discrimination. As shown below, for the "statement of the basis and the purpose" of a Title III demand to be valid, it must relate to a civil rights investigation.

Title III's text provides that the "statement of the basis and the purpose" "shall" be included in a records demand, demonstrating that it is an explicit requirement and precondition. *See Bufkin v. Collins*, 604 U.S. 369, 379 (2025) ("It is undisputed that the word 'shall' imposes a mandatory command. 'Shall' means 'must.'" (citation omitted)). But a statement of bases or

---

[9] An "officer of election" is "any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting in any general, special, or primary election at which votes are cast for candidates" in federal elections. 52 U.S.C. § 20706.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

purposes unrelated to voting cannot not suffice as it would "sap the interpreted provision of all practical significance." *See Pac. Coast Fed'n of Fishermen's Ass'ns, Inc. v. Nickels*, 150 F.4th 1260, 1271, 1273 (9th Cir. 2025). Indeed, "[i]t is a 'familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers.'" *United Steelworkers of Am., AFL-CIO-CLC v. Weber*, 443 U.S. 193, 201–02 (1979) (concluding that the "prohibition against racial discrimination in . . . Title VII must therefore be read against the background of [its] legislative history . . . and the historical context from which the Act arose"); *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 470 F.3d 827, 846 (9th Cir. 2006) (applying *Weber*).

The Court must read that text alongside Title III's context and history. *See Avila v. Spokane Sch. Dist.* 81, 852 F.3d 936, 941 (9th Cir. 2017). The overwhelming evidence shows that Title III of the CRA was enacted to facilitate investigation into civil rights violations related to discrimination in voting. A valid "statement of the basis and purpose," then, is one that relates to such an investigation.

First, the text of the relevant portions of the CRA reveal that the intent was to force recalcitrant county or state election officials to maintain registration records and records that might pertain to some bar to voting. The CRA requires retention of records "relating to any application, registration, payment of poll tax, or other act requisite to voting in such [federal] election[.]" 52 U.S.C. § 20701. The CRA does not discuss voter list maintenance or removing voters from the rolls due to death or relocation.

Both congressional reports and President Eisenhower's signing statement indicate that the CRA focused on the "key constitutional right of every American, the right to vote without discrimination on account of race or color." Castelli Decl. Ex. 4 at 1; Ex. 5 at 2 (under "Summary"); Ex. 6 at 1–3. Title III was enacted to further that overarching goal of the CRA. The year before the CRA's enactment, the President's recommendations to Congress emphasized the "serious obstacle" that insufficient access to voter registration records posed to safeguarding the

Page 19 -  STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

right to vote under the Civil Rights Act of 1957. Castelli Decl. Ex. 7 at 2. Once enacted, the

President's signing statement recognized that Title III "requires the retention of voting records,

[which] will be of invaluable aid in the successful enforcement of existing voting rights statutes."

*Id*. Ex. 4 at 1–2.

      In fact, all contemporaneous records related to the CRA's enactment strongly indicate

that Title III was enacted to build upon the Civil Rights Act of 1957. As a House committee

report explained, "Title III is a necessary supplement to part IV of the Civil Rights Act of 1957,"

and "would implement Federal enforcement" of this prohibition. *Id*. Ex. 6 at 26; *see also* Ex. 10

at Part IV. And the congressional record repeatedly shows that Title III was meant to facilitate

the enforcement of the voting rights protections codified in the Civil Rights Act of 1957. *Id*. Ex.

8 at 3683, 3692; Ex. 9 at 5193, 5209; *see also Rogers*, 187 F. Supp. at 853 (finding that the

CRA's legislative history "leaves no doubt but that [Title III] is designed to secure a more

effective protection of the right to vote").

      Courts construing Title III shortly after it was enacted confirm that its aim was to

facilitate protection of the right to vote through the Civil Rights Act of 1957 and the CRA itself.

*Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962) (explaining that the Attorney General "is

entitled to inspect and copy all of the voter papers and records as defined" "in fulfillment of the

duties imposed upon him by the Civil Rights Act of 1957 and 1960"). Valid statements of basis

and purpose from the time of enactment were "based upon information in the possession of the

Attorney General tending to show that distinctions on the basis of race or color have been made

with respect to registration and voting within your jurisdiction." *Id*. at 231 n.6; *In re Coleman*,

208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867

(5th Cir. 1963). Repeatedly addressing the issue, the Fifth Circuit "laid down the rule that the

government is entitled to have an order of the trial court authorizing it to inspect the voting

records" based on Plaintiff's "reasonable grounds for belief that certain voters are being

Page 20 -  STATE DEFENDANTS' MOTION TO DISMISS
     TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

discriminatorily denied their voting rights in a given county." *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962).

No valid civil rights purpose is alleged in the Complaint. Plaintiff's alleged purpose concerns assessing compliance with the voter registration list maintenance provisions of the NVRA, which requires each state to "conduct a general program that makes a reasonable effort to remove the names of" voters who are ineligible due to death or a change in residence. 52 U.S.C. § 20507(a)(4); Compl. ¶ 51. Any alleged failure to purge voter registration lists of ineligible voters does not automatically fall within Title III's scope. *See Kennedy v. Bruce*, 298 F.2d 860, 863 & n.2 (5th Cir. 1962) (noting that statistical evidence in a Title III proceeding indicating a failure to remove voters who moved away or died was "a matter which does not bear any particular importance to the present inquiry"). Plaintiff must articulate a purpose and basis that relates to an investigation into civil rights, specifically, discrimination in voting.

Here, Plaintiff has failed to allege any basis for its demand that any discrimination in voting is occurring in Oregon. Plaintiff's alleged purpose is not valid either because it has not articulated how its assessment of Oregon's compliance with 52 U.S.C. § 20507(a)(4) relates to an investigation into civil rights, and more specifically, discrimination in voting. Nothing in Plaintiff's Complaint or letters to the Secretary suggests that any of these kinds of allegations could be made.

### 2. Plaintiff's demand for records fails to satisfy an essential statutory requirement.

Plaintiff failed to provide both "a statement of the basis" for its demand and a statement of "the purpose therefor," as required by 52 U.S.C. § 20703. In the past, Plaintiff has treated "purpose" and "basis" separately. *See Lynd*, 306 F.2d at 231 n.6 (showing a demand by the Attorney General where it stated a basis and a purpose); *In re Coleman*, 208 F. Supp. at 199–200 (same). *See Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 990 (9th Cir. 2020) ("[W]hen 'and' is used to join two concepts, it is usually interpreted to require 'not one or the other, but both.'").

Page 21 -  STATE DEFENDANTS' MOTION TO DISMISS

Plaintiff alleges that "[t]he purpose of the request is to ascertain Oregon's compliance with the list maintenance requirements of the NVRA and HAVA." Compl. ¶ 51 (quoting August 14, 2025 letter); Castelli Decl. Ex. 1. Plaintiff's statement amounts, at best, only to a statement of its purpose, meaning the object of the request. *See Purpose*, Merriam-Webster Dict., https://www.merriam-webster.com/dictionary/purpose (defining "purpose" as "something set up as an object or end to be attained: intention"). In contrast, a "basis" is "something on which something else is established or based." *Basis*, Merriam-Webster Dict., https://www.merriam-webster.com/dictionary/basis. Plaintiff's request fails to provide any statement of its grounds for suspecting that Oregon was violating the NVRA or to explain how the requested records are relevant to its inquiry. Allowing Plaintiff to obtain records without such a showing would ignore the canon against surplusage and ignore Congress's choice in establishing this requirement. *In re Saldana*, 122 F.4th 333, 342–43 (9th Cir. 2024).

### 3. Plaintiff is entitled to only in-person, redacted inspection of records covered by Title III.

Even if the Court concludes that Title III authorizes Plaintiff's demand, Plaintiff may only inspect a redacted version of Oregon's voter registration list at the Secretary's office. Plaintiff is not entitled to inspect an unredacted version of Oregon's voter list, which includes voters' "state driver's license number, or the last four digits of their Social Security number." Compl. at 21 (Prayer for Relief). Title III does not preclude Oregon's confidentiality protections of voter's sensitive information for several reasons. Title III requires, in response to a proper demand, that the recordkeeper make available "all records . . . relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. §§ 20701, 20703. Title III's text does not prohibit the redaction of sensitive voter information. *Cf. Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th at 56 (finding that "the appropriate redaction of uniquely or highly sensitive personal information in the Voter File" was permissible where the NVRA did not prohibit such redactions). Moreover, Title III's purpose is to enable civil rights investigations into discrimination in voting, but there is no articulated connection between the

Page 22 -  STATE DEFENDANTS' MOTION TO DISMISS

sensitive voter information Plaintiff demands and an allegation of or investigation into discrimination in voting. Plaintiff points to no reason why the investigation into voter list maintenance practices requires unredacted information. Because Title III does not require Defendants to violate state law and produce the full voter list, Plaintiff cannot compel them to do so.

Finally, Plaintiff's demand that it be sent an electronic version of Oregon's statewide voter registration database is contrary to Title III's unambiguous text. Compl. ¶ 51 and p. 21 (Prayer for Relief). A valid demand would require only that the records "be made available . . . at the principal office of such custodian." 52 U.S.C. § 20703 (emphasis added). Plaintiff's demand that Defendants produce an electronic copy is, therefore, beyond the scope of relief that the Court may provide.

## V.    CONCLUSION

Because Plaintiff has not complied with the Privacy Act or E-Government Act, it is not entitled to Oregon's voter list, whether redacted or unredacted. This is particularly the case because the voter list contains information on each individual's First Amendment activity. Even if voter information could be lawfully collected under the Privacy Act, Plaintiff is not entitled to the voter list because it has not issued the required SORN. Were Plaintiff to satisfy the Privacy

Page 23 -  STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

and E-Government Acts, its claims under the NVRA, HAVA, and the CRA fail. Plaintiff is, at most, entitled, to inspect only redacted voter data under the NVRA, HAVA, or the CRA. For those reasons, Defendants respectfully request that the Court grant their Motion to Dismiss.

DATED November <u>17</u> , 2025.

Respectfully submitted,

DAN RAYFIELD
Attorney General


_____*s/ Thomas H. Castelli*_____
THOMAS H. CASTELLI #226448
Senior Assistant Attorney General
KATE E. MORROW #215611
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
thomas.castelli@doj.oregon.gov
kate.e.morrow@doj.oregon.gov
Of Attorneys for Defendants

Page 24 -  STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000