United States of America v. State of Oregon, et al.
USDC NO: 6:25-cv-01666-MTK
State Defendants Motion to Dismiss
Exhibit 3




**Tobias Read**
*Oregon Secretary of State*

August 21, 2025

U.S. Department of Justice
Civil Rights Division
Voting Section
950 Pennsylvania Ave, NW -4CON
Washington, DC 20530

Dear Mr. Gates, Ms. Dhillon, and Ms. Riordan:

I am in receipt of your letters requesting information regarding Oregon's compliance with the list-maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*., and the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901 *et seq*. I understand that the U.S. Department of Justice ("DOJ") has concerns about Oregon's procedures for removing ineligible persons from our voter lists.

As the state's chief elections officer, I take my responsibilities under the NVRA and HAVA seriously. Each of Oregon's 36 counties administers its own voter-registration program and maintains its own voter list. Historically, this created challenges for statewide data reporting and analysis, including in connection with the Election Assistance Commission's Election Administration and Voting Survey ("EAVS"). Since taking office in January, my administration has been working to improve our statewide data-collection practices by developing uniform data-entry standards and reporting procedures across all counties. These changes will improve the quality, consistency, and transparency of the data, allowing Oregon to produce more detailed statewide reports moving forward.

Your requests, however, exceed the scope of both the NVRA and HAVA.

## Voter Registration List

You have requested the current electronic copy of Oregon's computerized statewide voter-registration list, to include each voter's name, birthdate, residential address, and state driver's license number or partial Social Security number. However, no federal law compels the production of state voter rolls. The Attorney General's right to bring enforcement actions under the NVRA and HAVA does not create a corollary right to the personal data of Oregonians.

sos.oregon.gov

255 Capitol St NE, Ste 180
Salem, Oregon 97310

Information (503) 986-1523
oregon.sos@sos.oregon.gov

**Exhibit 3, Page 1 of 4**

Given the limits of the NVRA and HAVA, you also cite to the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. § 20701 *et seq*. While the CRA does require the production of certain voter-registration records upon demand by the Attorney General, your request seeks more and different data than that allowed by 52 U.S.C. § 20703. That section of the CRA requires a state to retain and produce to the Attorney General "any application, registration, payment of poll tax, or other act requisite to voting in such election" dating back 22 months. In other words, the CRA could support a request for voter-registration applications submitted during the statutory period. *See Penn. State Conference v. Sec'y Com. of Penn*., 97 F.4th 120 (3rd Cir. 2024) (interpreting similar phrase in section 10101(a)(2)(B) of the Civil Rights Act of 1964 and concluding that it is "best read to refer to paperwork used in the voter qualification process"). But the statute does not entitle the Attorney General to obtain a state's entire current voter-registration list, especially one that includes sensitive personal data.

And even if it did, the Attorney General is not seeking the data for a permissible purpose. The CRA requires that any demand for records "contain a statement of the basis and the purpose therefor." The federal government's self-identified purpose is to "ascertain Oregon's compliance with the list maintenance requirements of the NVRA and HAVA." But the purpose of the CRA — and its associated record-retention and demand provision — was to protect access to the ballot. *State of Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961), *cert. den.*, 366 U.S. 913, 81 S. Ct. 1085 (1961), *and cert. den.*, 366 U.S. 913, 81 S. Ct. 1086 (1961). The Attorney General cannot exploit the voter-protection provisions of the CRA to pursue the administration's anti-voter goals under the NVRA and HAVA.

In short, I see no federal authority for your request. Nonetheless, if the DOJ complies with the applicable provisions of the Privacy Act of 1974 ("Privacy Act"), 5 U.S.C. § 552a,[1] then my office will produce the voter-registration data required by state law. Oregon allows for public access to certain voter-registration data, including a voter's residence address and birth year, for a fee. There is no exception for the federal government. If the DOJ intends to follow the process outlined in OAR 165-002-0020, and pay the fee mandated by ORS 247.945, then my agency will arrange to securely produce the publicly available portions of its statewide voter-registration list. Please note that ORS 247.948 prohibits the disclosure of, among other things, a voter's birth month, birth day, Social Security number, and driver's license number.

---

[1] While I appreciate your assurances that Oregonians' sensitive personal information will be protected by the Privacy Act, I cannot release the data unless and until the DOJ publishes a System of Records Notice in the Federal Register that explains what data your agency is collecting, why you need it, and how you intend to use and store it.

### Election Officials

You also asked for the names of the election officials that implemented Oregon's program of voter-list maintenance between November 2022 and the present. At this agency, the program is implemented by Oregon's Elections Director and Deputy Elections Director. During the relevant period, the Elections Director position was held by Deborah Scroggin (2022–2023), Molly Woon (2023–2024), and Dena Dawson (2025–present); and the Deputy Elections Director position was held by Luke Belant (2022–2024) and Alma Whalen (2025–present). With respect to local elections officials, the county clerks that have served Oregon from 2022 to present are listed on the attached spreadsheet.

### EAVS Survey and Confirmation Notices

The remainder of your inquiries relate to the most recent EAVS data from Oregon. For your reference, Oregon's "general program for removing ineligible voters from the official lists of eligible voters" is outlined in ORS chapter 247 and, specifically, in ORS 247.555 through ORS 247.580. Those statutes prescribe, among other things, the process by which county election offices send confirmation notices to potentially ineligible voters. Consistent with both ORS 247.580 and section 20507(i) of the NVRA, my office could provide a list of the voters to whom such confirmation notices are sent for a period of two years. As permitted by section 20507(i), this agency charges a fee for copies of that list, which is treated as a "less-than-statewide" voter list for purposes of OAR 165-002-0020. There is no exception for the federal government. Again, if the DOJ intends to comply with the applicable provisions of the Privacy Act and also follow the process outlined in, and pay the fee mandated by, OAR 165-002-0020, then my agency will arrange to securely produce the publicly available portions of this less-than-statewide voter list for the previous two years.

Finally, you asked that my office provide narrative explanations regarding certain aspects of Oregon's EAVS data. I am not aware of anything in the NVRA or HAVA that would require this. And with respect to disclosing the registration information for ineligible voters in particular, that would both exceed my obligations under federal law and almost certainly violate state law.

In short, I am confident that Oregon has complied with its disclosure obligations under the NVRA and HAVA. As my administration works to standardize and improve statewide data collection and reporting, that process will necessarily improve the quality of our EAVS data. I look forward to contributing more thorough and detailed information to future EAVS reports.

Sincerely,

*[signature: Tobias J. Read]*

**Tobias Read**
*Oregon Secretary of State*

Enclosure