MISHA ISAAK, Bar No. 086430
misha.isaak@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

DANIEL J. FREEMAN (*pro hac vice* forthcoming)
freemand@dnc.org
DEMOCRATIC NATIONAL COMMITTEE
430 South Capitol Street SE
Washington, DC 20003
Telephone:  202.863.8000

*Attorneys for Democratic National Committee*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.:  6:25-cv-1666-MTK |
| Plaintiff, | **MEMORANDUM OF AMICUS CURIAE THE DEMOCRATIC NATIONAL COMMITTEE** |
| v. | |
| STATE OF OREGON, and TOBIAS READ, in his official capacity as the Oregon Secretary of State, | [PROPOSED MEMORANDUM SUBJECT TO MOTION FOR LEAVE TO FILE AMICUS BRIEF] |
| Defendants. | |

## I.    INTRODUCTION

Federal law authorizes the Attorney General to demand voter registration records, but she cannot do so based on a misrepresentation.  Rather than disclosing "the basis and the purpose" for its demand for the complete, unredacted Oregon voter file—as Title III of the Civil Rights Act of 1960 requires, 52 U.S.C. § 20703—the Department of Justice suggests it is engaged in routine enforcement of federal civil rights laws.  In fact, the Justice Department intends to transfer the personal identifying information and partisan affiliation of every registered voter in Oregon to the Department of Homeland Security and is reportedly consolidating state databases into a national voter file.  This deception invalidates the Title III demand.  Invocations of a public records law and basic enforcement authority fare no better; neither authorizes demands for unredacted personal information.  A Department of Justice that cannot be honest with state officials cannot be trusted with the personal information of every registered voter in Oregon, including nearly a million voters identified as Democrats on Oregon's voter registration rolls. The Democratic National Committee submits this amicus brief to protect the privacy interests of its members and the interests of its candidates and campaigns in free and fair elections; it respectfully requests that this Court grant Defendants' motion to dismiss.

## II.    INTEREST OF AMICUS CURIAE

The Democratic National Committee (DNC) is the oldest continuing party committee in the United States.  Its purposes and functions are to communicate the Democratic Party's position on issues, protect voters' rights, and aid the election of Democratic candidates nationwide, including by organizing citizens to register as Democrats and vote in favor of Democratic candidates.  The DNC represents millions of voters, including nearly a million registered Democrats in Oregon.

The U.S. Department of Justice (DOJ) has demanded a copy of the State of Oregon's complete, unredacted voter file.  This demand forces registered Democrats and unregistered citizens who favor Democratic candidates to choose between democratic participation and the privacy and security of their personal information.  Conditioning the right to vote on the release of private information "creates an intolerable burden on that right."  *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (citation omitted).  The concerns of ordinary Democrats are amplified by uncertainty as to the intended use of their data and the Trump Administration's extraordinary partisan bias and retributive impulse.  *See, e.g.*, Jess Bidgood and Devlin Barrett, *Trump's Efforts to Punish His Enemies Are Ramping Up*, N.Y. Times, Sept. 22, 2025, https://perma.cc/BTW5-ZMT3; *see also* Ryan Lucas, *As Trump Talks of Designating Antifa a Foreign Terrorist Group, Experts See Danger*, NPR, Oct. 28, 2025, https://perma.cc/CNM6-A5MC ("Deputy White House Chief of Staff Stephen Miller recently said the Democratic party 'is not a political party. It is a domestic extremist organization.'").  In turn, the DNC has a significant protectable interest in the success for Democratic candidates, and pressure on Democrats to avoid registration or even remove themselves from the voter rolls would impose an intolerable burden on that interest.  *See, e.g.*, *Paher v. Cegavske*, No. 3:20-cv-243, 2020 WL 2042365, at \*2 (D. Nev. Apr. 28, 2020).

## III.    BACKGROUND

In June 2025, DOJ began sending letters to state officials demanding complete, unredacted copies of state voter files, and a senior official eventually acknowledged that DOJ intends to send demands to all 50 states.  *See* Jonathan Shorman, *DOJ Plans to Ask All States for Detailed Voting Info*, Stateline, Aug. 1, 2025, https://perma.cc/526V-97C3.  Early letters indicated that the files would be used to oversee "HAVA compliance" or "full compliance with

the NVRA." *E.g.*, Letter from Maureen Riordan, U.S. Dep't of Just., to Steve Simon, Minn. Sec'y of State (June 25, 2025), https://perma.cc/NZ9N-FCDC; Letter from Michael E. Gates, U.S. Dep't of Just., to Deirdre Henderson, Lt. Gov. of Utah (July 15, 2025), https://perma.cc/FV8G-W965. However, DOJ has publicly confirmed that it is sharing lists it receives with the Department of Homeland Security (DHS), and reporting indicates that DOJ is developing a national voter file. *See* Jonathan Shorman, *DOJ Is Sharing State Voter Roll Lists with Homeland Security*, Stateline, Sept. 12, 2025, https://perma.cc/C6RQ-6ATP (quoting DOJ and DHS statements); Devlin Barrett and Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025, https://perma.cc/9PM4-2A6R.

On July 16, DOJ sent a letter to Oregon Secretary of State Tobias Read demanding an unredacted copy of Oregon's statewide voter registration list, pursuant to Section 8(i) of the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. § 20507(i). *See* Letter from Michael E. Gates, U.S. Dep't of Just., to Tobias Read, Or. Sec'y of State (July 16, 2025), https://perma.cc/Q2DH-AMWS. On August 14, DOJ sent a second letter to Secretary Read clarifying that it sought "all fields" in the state voter file—which includes driver's license number, partial Social Security number, date of birth, and party affiliation—within seven days. *See* Letter from Harmeet K. Dhillon, U.S. Dep't of Just., to Tobias Read, Or. Sec'y of State (Aug. 14, 2025) ("Aug. 14 Let."), https://perma.cc/3JGD-GEB9. The second DOJ letter invoked Title III of the Civil Rights Act of 1960 (Title III), 52 U.S.C. §§ 20701-06, as authority for the demand and stated, "The purpose of the request is to ascertain Oregon's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* at 2. The second DOJ letter also asserted that Section 401 of the Help America Vote Act of 2002 (HAVA), 52 U.S.C. § 21111, provides authority to demand unredacted voter files. *See id.* On August 21, Secretary Read sent

a letter to DOJ declining to provide the unredacted Oregon voter file.  *See* Letter from Tobias

Read, Or. Sec'y of State, to U.S. Dep't of Just. (Aug. 21, 2025), https://perma.cc/J7LQ-7H43.

On September 16, the United States filed suit against the State of Oregon and Secretary

Read, demanding production of the unredacted statewide voter registration database.  *See*

Compl., ECF No. 1.  Following a stay in light of the lapse in federal funding, Defendants moved

to dismiss on November 17.  State Defendants' Motion to Dismiss ("Or. Mot."), ECF No. 32.[1]

## IV.  LEGAL STANDARD

Title III of the Civil Rights Act of 1960 (Title III), 52 U.S.C. §§ 20701-06, dictates that

"every officer of election shall retain and preserve, for a period of twenty-two months from the

date of any [federal election], all records and papers which come into his possession relating to

any application, registration, payment of poll tax, or other act requisite to voting in such

election" or transfer such materials to another officer of election or designated custodian.  52

U.S.C. § 20701.  In turn, "[a]ny record or paper required by [Title III] to be retained and

preserved shall, upon demand in writing by the Attorney General or his representative directed to

the person having custody, possession, or control of such record or paper, be made available for

inspection, reproduction, and copying at the principal office of such custodian by the Attorney

General or his representative."  *Id.* § 20703.  "This demand shall contain a statement of the basis

and the purpose therefor."  *Id.*  "The United States district court for the district in which a

demand is made pursuant to [Title III], or in which a record or paper so demanded is located,

---

[1] DOJ has thus far sued Oregon and seven additional states to seek complete, unredacted voter files.  *See* Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/8URN-US8S; Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/6Q23-2X8Y.

shall have jurisdiction by appropriate process to compel the production of such record or paper." *Id.* § 20705.

The National Voter Registration Act of 1993 (NVRA), 52 U.S.C. §§ 20501-20511, aims to improve both voter registration access and accuracy. *See* 52 U.S.C. § 20501(b)(1)-(4). To facilitate public oversight, Section 8(i) requires each covered state to "maintain for at least 2 years and . . . make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," subject to specified exceptions. *Id.* § 20507(i)(1).

The Help America Vote Act of 2002 (HAVA), 52 U.S.C. §§ 20901-21145, imposes additional requirements on the administration of federal elections. The Attorney General may enforce only "the uniform and nondiscriminatory election technology and administration requirements" in Sections 301 to 304 of the Act. 52 U.S.C. § 21111. HAVA does not contain express subpoena authority or public disclosure requirements.

## V.    ARGUMENT

DOJ has no legal basis to obtain the complete, unredacted Oregon voter file. By refusing to offer an honest statement of "the basis and the purpose" for the demand, the Attorney General has forfeited Title III authority. 52 U.S.C. § 20703. The NVRA's public records provision does not authorize disclosure of sensitive personal information. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024). And HAVA contains no subpoena authority at all. *See* 52 U.S.C. § 21111; *see also, e.g.*, *Peters v. United States*, 853 F.2d 692, 696 (9th Cir. 1988) (rejecting claim of implied subpoena authority). Because the United States' complaint does not

state a claim upon which relief can be granted, this Court should grant Defendants' motion to dismiss.

### A.     DOJ Has Obscured the True Basis and Purpose for Its Title III Demand.

DOJ's Title III demand for Oregon's complete, unredacted voter file should be denied because the demand did not state "the basis and the purpose therefor."  52 U.S.C. § 20703; *see also* Or. Mot. 18-23.  Title III requires candor between federal officials and state and local election administrators who safeguard voters' sensitive personal information.  *See* 52 U.S.C. § 20703; *see also Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colleges & Schs.* (*ACICS*), 854 F.3d 683, 690 (D.C. Cir. 2017) (emphasizing that the validity of a civil investigative demand "is measured by the purpose[] stated," making notification of purpose "an important statutory requirement").  Yet DOJ has provided Oregon and its citizens less than a half-truth.  DOJ told Secretary Read that the "purpose of the request is to ascertain Oregon's compliance with the list maintenance requirements of the NVRA and HAVA."  Aug. 14 Let. at 2.  However, DOJ has publicly confirmed that it is sharing voter files it obtains with DHS, and reporting indicates that DOJ is compiling a national voter file for its own use.  *See* Shorman, *DOJ Is Sharing State Voter Roll Lists with Homeland Security*, *supra*; Barrett and Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Rolls*, *supra*.  As explained below, neither action is related to NVRA and HAVA enforcement.[2]

Title III demands a statement of "*the* basis and *the* purpose" for the demand, not merely *a* basis and *a* purpose.  52 U.S.C. § 20703 (emphasis added).  By twice using the definite article,

---

[2] DOJ similarly invoked the NVRA and HAVA when requesting records from Fulton County, Georgia related to the 2020 Presidential election, even while claiming its actual interest was "transparency."  Letter from Harmeet K. Dhillon, U.S. Dep't of Just., to Fulton Cnty. Bd. of Registration & Elections (Oct. 30, 2025), https://perma.cc/WCM3-FVTW.  Repeat demands for records based on pretextual invocation of the NVRA and HAVA further undercut purported reliance on those statutes here.

Title III requires the Attorney General to offer "a discrete thing": the complete basis and purpose of the request and not merely one basis and purpose among many. *Niz-Chavez v. Garland*, 593 U.S. 155, 166 (2021); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024) (emphasizing distinction between definite and indefinite article). Without a complete statement of the basis and the purpose of the demand, state officials and reviewing courts "cannot accurately determine whether the inquiry is within the authority of the [Justice Department] and whether the information sought is reasonably relevant." *ACICS*, 854 F.3d at 691. Ultimately, "half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations." *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 188 (2016); *cf. Dep't of Com. v. New York*, 588 U.S. 752, 781-85 (2019) (setting aside agency action due to pretextual invocation of the Voting Rights Act). Thus, DOJ's refusal to be forthright with state officials and registered voters about the intended use of sensitive personal information is fatal to the demand.

DHS has broad authority over counterterrorism, emergency management, immigration, and border protection, but its powers do not extend to NVRA and HAVA enforcement. *See* 6 U.S.C. § 111(b); *cf.* 52 U.S.C. §§ 20510(a), 21111 (DOJ authority). Even if DOJ were only interested in comparing Oregon's voter registration records with DHS data—which would not require transferring Oregon's voter file to DHS custody—such database matching would not advance NVRA and HAVA enforcement. The NVRA's affirmative list maintenance mandate concerns only deceased registrants and those who have moved outside the jurisdiction of a local registrar. *See* 52 U.S.C. § 20507(a)(4). HAVA specifies that appropriate officials must remove voters from statewide voter registration lists using a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible

voters . . . consistent with the [NVRA]," *id.* § 21083(a)(4)(A), and this provision does not

"broaden[] the scope of the NVRA's list-maintenance obligations." *Bellitto v. Snipes*, 935 F.3d

1192, 1202 (11th Cir. 2019); *see also Am. Civ. Rights Union v. Phila. City Comm'rs*, 872 F.3d

175, 184-85 (3d Cir. 2017) (rejecting contention that HAVA "augment[s]" NVRA list

maintenance requirements); 52 U.S.C. § 21083(a)(2)(B) (guidelines for list maintenance); 52

U.S.C. § 21145(a)(4) (directing that nothing in HAVA supersedes the NVRA). Federal data

concerning deaths and changes of address are held by the Social Security Administration and the

U.S. Postal Service respectively, not DHS. *See* 42 U.S.C. § 1306c(d) (defining the Social

Security Death Master File); 52 U.S.C. § 20507(c)(1) (describing use of Postal Service address

information by election officials); *see also* 39 C.F.R. § 122.2(b) (providing for prompt

transmission of change-of-address information to election officials); Exec. Order. No. 14,248,

§ 3(a), 90 Fed. Reg. 14005, 14007 (Mar. 25, 2025) (ensuring that the Social Security

Administration allows election officials to access the Death Master File). Thus, DHS data is not

relevant to NVRA and HAVA enforcement.

     Adding the complete, unredacted Oregon voter file to a DOJ national voter database also

does not advance the stated purpose of investigating Oregon's NVRA and HAVA compliance.

The NVRA requires that states conduct only a "reasonable effort to remove the names of

ineligible voters . . . by reason of . . . the death of the registrant" or "a change in the residence of

the registrant." 52 U.S.C. § 20507(a)(4). With respect to movers, the "reasonable effort"

requirement can be met using Postal Service data alone. *See id.* § 20507(c)(1). In any case,

joining the Oregon voter file to another state's voter file—a file Oregon does not possess and is

not legally required to obtain—does not help DOJ determine whether Oregon has met the

"reasonable effort" requirement. *Cf. id.* § 21083(a)(2)(A)(ii) (requiring voter file coordination

with in-state databases on felony status and records of death).[3]  HAVA merely reiterates the

NVRA's list maintenance requirements, *see supra*, and comparison to another state's database

has no bearing on database design mandates, such as consolidation of duplicate registration

records, *see id.* § 21083(a)(2)(B)(iii).

DOJ cannot avoid scrutiny of the basis and purpose for its Title III demand by claiming

that the Civil Rights Act of 1960 authorizes a "special statutory proceeding," as it recently has in

other voter file litigation.  *See* DOJ Mot. 8; *United States v. Bellows*, No. 1:25-cv-468 (D. Me.

Sept. 18, 2025), ECF No. 5-1 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962)).  In

the six decades since DOJ last litigated a contested Title III action, the Supreme Court has

confirmed that "the Federal Rules apply to proceedings to compel the giving of testimony or

production of documents in accordance with a subpoena issued by an officer or agency of the

United States under any statute of the United States except as otherwise provided by statute or by

rules of the district court or by order of the court in the proceedings."  *Becker v. United States*,

451 U.S. 1306, 1308 (1981) (internal quotation marks and citation omitted); *see also* Fed. R. Civ.

P. 81(a)(5) (contemporary restatement).  Indeed, just two years after *Kennedy v. Lynd*, on which

DOJ recently relied, the Supreme Court held that the IRS Commissioner bears the burden to

establish statutory requirements before a tax subpoena may be enforced.  *See United States v.*

*Powell*, 379 U.S. 48, 57-58 (1964); *see also, e.g.*, *Sugarloaf Funding, LLC v. U.S. Dep't of*

*Treasury*, 584 F.3d 340, 347-50 (1st Cir. 2009) (allowing summons recipient opportunity to

---

[3] Through the Electronic Registration Information Center—a membership organization made up of 24 states and the District of Columbia—Oregon obtains cross-state mover reports based on voter registration and motor vehicle data.  *See* Electronic Registration Information Center, *FAQ's*, https://perma.cc/AY53-TF3Z (last accessed Nov. 18, 2025); *see also* Electronic Registration Information Center, *Technology & Security Overview*, https://perma.cc/CY4E-85VL (last accessed Nov. 18, 2025).  However, 25 states that register voters do not participate in this exchange, and federal law does not mandate interstate comparison of voter registration records.

rebut government's prima facie case). Nothing in the text of Title III insulates the sufficiency of

the requisite "statement of the basis and the purpose" of a demand from judicial review. 52

U.S.C. § 20703.[4] Rather, Title III's jurisdictional provision authorizes only "appropriate process

to compel the production" of documents. *Id.* § 20705; *see also Lynd*, 306 F.2d at 230

(anticipating that "'appropriate process' . . . will include the power and duty to issue protective

orders" (quoting former 42 U.S.C. § 1974d)). While DOJ might ordinarily be presumed to be

acting in good faith, "appropriate process" requires an opportunity to prove otherwise. *See In re*

*Coleman*, 208 F. Supp. 199, 201 (S.D. Miss. 1962) (ascribing good faith to Title III request

"unless otherwise shown"); *see also, e.g.*, *League of United Latin Am. Citizens v. Exec. Off. of*

*President*, 780 F. Supp. 3d 135, 187 n.29 (D.D.C. 2025) (describing misrepresentation in recent

election litigation).[5]

      Even if Title III required the Attorney General's representative to provide only "a

purpose" and not "the purpose" of a demand—and it does not—DOJ's demand for Oregon's

complete, unredacted voter file is unrelated to "Oregon's compliance with the list maintenance

---

[4] Facing resistance from district judges in the Jim Crow South, the Fifth Circuit indicated in 1962 that "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand is not open to judicial review or ascertainment." *Lynd*, 306 F.2d at 226 (quoting former 42 U.S.C. § 1974b); *see also, e.g.*, *Kennedy v. Bruce*, 298 F.2d 860, 862 (5th Cir. 1962) (reversing district court dismissal in conflict with controlling precedent). Although racist mass disenfranchisement may have warranted truncating proceedings in the early 1960s, the Supreme Court's 1964 decision in *Powell* makes clear that even in exigency, the government must establish requirements that Congress has set to issue a valid document request. *See* 379 U.S. at 57-58.

[5] The presumption of regularity articulated in *United States v. Chemical Found., Inc.*, 272 U.S. 1, 15 (1926), does not shield official actions "from a thorough, probing, in-depth review." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971); *see also, e.g.*, *McCreary Cnty. v. Am. Civ. Liberties Union of Ky.*, 545 U.S. 844, 862 (2005). In recent months, district courts have repeatedly "identified serious defects in the government's explanations and representations . . . prompting judges to discount government submissions, compel expedited discovery, and withhold the presumption." Ryan Goodman et al., *The "Presumption of Regularity" in Trump Administration Litigation* (Sept. 15, 2025), https://perma.cc/VMA2-YJDQ.

requirements of the NVRA and HAVA." Aug. 14 Let. at 2.[6]  For nearly two decades, DOJ has

neither demanded nor required a complete, unredacted voter file to investigate NVRA violations

or oversee compliance with a remedy.  *See, e.g.*, Press Release, U.S. Dep't of Just., *United States*

*Announces Settlement with Kentucky Ensuring Compliance with Voter Registration List*

*Maintenance Requirements* (July 5, 2018), https://perma.cc/G2EZ-UUA5 (describing 2017

letters to all 44 states covered by the NVRA requesting list maintenance information but not

demanding voter files).  And with good reason.  As noted above, the NVRA's affirmative list

maintenance mandate requires only a "reasonable effort" to remove deceased registrants and

movers.  *See* 52 U.S.C. § 20507(a)(4); *see also id.* § 20507(c)(1) (allowing the requirement

concerning movers to be met as a matter of law using safe harbor procedures).  DOJ has

recognized this flexible standard since the act's passage.  *See, e.g.*, U.S. Dep't of Just., *The*

*National Voter Registration Act of 1993* (last updated Nov. 1, 2024), https://perma.cc/D8YZ-

F9AM; U.S. Dep't of Just., *NVRA List Maintenance Guidance* (Sept. 2024),

https://perma.cc/J3C2-WSSE.  Thus, state and local procedures establish compliance; voter files

that result from those procedures do not.  *See Pub. Int. Legal Found. v. Benson*, 136 F.4th 613,

624-26 (6th Cir. 2025) (defining "reasonable effort" as "a serious attempt that is rational and

sensible" and rejecting any "quantifiable, objective standard"), *petition for cert. filed*, No. 24-

---

[6] In other states, DOJ asserted that the purpose of obtaining the unredacted voter file was to ascertain compliance only with the NVRA or only with HAVA.  *See, e.g.*, Letter from Harmeet K. Dhillon, U.S. Dep't of Just., to David Scanlan, N.H. Sec'y of State (Aug. 18, 2025), filed in *United States v. Scanlan*, No. 1:25-cv-371, ECF No. 6-9 (D.N.H. Sept. 30, 2025) (HAVA only); Letter from Shirley N. Weber, Ph.D., Cal. Sec'y of State, to Harmeet K. Dhillon, U.S. Dep't of Just. (Aug. 21, 2025), filed in *United States v. Weber*, No. 2:25-cv-9149, ECF No. 37-2, at 24 (C.D. Cal. Nov. 7, 2025) (NVRA only).  DOJ has also incorporated a demand for the unredacted voter file as a purported oversight measure in a recent consent decree.  *See* Consent Decree ¶ 11, *United States v. N.C. State Bd. of Elections*, No. 5:25-cv-283, ECF No. 72 (E.D.N.C. Sept. 8, 2025).  The Attorney General's assertion of varying purposes for identical voter file demands suggests that the claimed enforcement aim here is mere pretext. *Cf. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977) (deeming departures from substantive and procedural norms to be evidence of pretext).

1255 (U.S. Oct. 9, 2025); *Bellitto*, 935 F.3d at 1205 (finding a "reasonable effort" based on safe

harbor procedures alone). Even if DOJ could identify movers and deceased voters on the

registration rolls, this would not indicate that efforts taken to remove such voters did not meet

the "reasonable effort" requirement. *See Benson*, 136 F.4th at 626-27 (rejecting identification of

"27,000 'potentially deceased' voters on Michigan's registration rolls" as evidence of an NVRA

violation); *Republican Nat'l Comm. v. Benson*, No. 24-1985, 2025 WL 2731704, at *1 (6th Cir.

Sept. 25, 2025) (per curiam) (acknowledging that some movers remain on the rolls temporarily

due to the NVRA's "procedural restraints"); *see also* 52 U.S.C. § 20507(d)(1) (limiting removal

of movers). Ultimately, the NVRA places responsibility for voter registration list maintenance

with the states and does not authorize the Justice Department to search for individual registrants

that federal officials suspect may not meet state eligibility requirements.[7]

HAVA enforcement also does not require or use complete, unredacted voter files.

Although HAVA requires that statewide voter registration databases have specific list

maintenance capabilities, *see* 52 U.S.C. § 21083(a)(2), (a)(4), these requirements are

implemented pursuant to state discretion, *id* § 21085. DOJ previously recognized as much when

it entered a consent decree requiring "reasonable steps" to identify possible duplicate

registrations and movers and "review" of registrants previously identified "as potentially

deceased," not perfect removal of ineligible registrants and consolidation of duplicate records.

Consent Decree ¶¶ 4, 8-9, *United States v. New Jersey*, No. 06-4889 (D.N.J. Oct. 12, 2006)

---

[7] In 2006, DOJ sought and obtained a state voter registration file, including Social Security numbers, for the ostensible purpose of assessing NVRA compliance. *See* Compl. ¶ 9, *United States v. Georgia*, No. 1:06-cv-2442 (N.D. Ga. Oct. 12, 2006); *see also* Consent Decree, *United States v. Georgia*, No. 1:06-cv-2442 (N.D. Ga. Oct. 30, 2006). DOJ did not pursue an enforcement action based on the file, *see* U.S. Dep't of Just., *Cases Raising Claims under the National Voter Registration Act*, https://perma.cc/A3JG-CNZA (last updated Mar. 6, 2025), and for the next 19 years abandoned attempts to use voter files to assess NVRA compliance.

("N.J. Consent Decree"), https://perma.cc/TF6V-NUY4; *see also* U.S. Election Assist. Comm'n,

*Voluntary Guidance on Implementation of Statewide Voter Registration Lists* 11-14 (July 2005),

https://perma.cc/KJX9-ZZ3W ("recogniz[ing] the fallibility of databases" and prioritizing

"'[s]afeguards to ensure that eligible voters are not removed in error from the official list of

eligible voters'" (citation omitted)).  And once a HAVA-compliant system was in place, the

decree required reporting of list maintenance statistics but did not demand copies of complete,

unredacted voter files.  *See* N.J. Consent Decree ¶ 11.  Ultimately, HAVA list maintenance

requirements are no more prescriptive than the NVRA, *see Bellitto*, 935 F.3d at 1202; *Am. Civ.

Rights Union*, 872 F.3d at 185, and complete, unredacted voter files do not assist HAVA

enforcement.  Therefore, Title III provides no basis for DOJ's request for the unredacted Oregon

voter file.

### B.    The NVRA Does Not Require Public Disclosure of Unredacted Voter Files.

The United States' request for Oregon's complete unredacted voter file under Section 8(i)

of the NVRA fares no better.  Section 8(i) requires public disclosure of voter registration rolls,

but "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly

sensitive personal information in the Voter File."  *Bellows*, 92 F.4th at 56; *see also* Or. Mot. 13-

15.  Moreover, the NVRA does not "prohibit the redaction of personal information that can be

particularly sensitive in certain circumstances, including those circumstances explicitly

recognized by federal courts."  *Bellows*, 92 F.4th at 56; *see also, e.g.*, *Pub. Interest Legal Found,

Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 268 (4th Cir. 2021) (remanding for redactions).

DOJ has historically agreed, recognizing that "the NVRA does not prohibit States from redacting

'uniquely sensitive information' like voters' Social Security Numbers before disclosing records"

under Section 8(i).  United States Amicus Br. at 27, *Pub. Interest Legal Found. v. Bellows*, No.

23-1361 (1st Cir. July 25, 2023) (quoting *Project Vote*, 682 F.3d at 339), https://perma.cc/ML4S-5V4S; *see also* United States Amicus Br. at 28-29, *Public Interest Legal Found. v. Pennsylvania*, No. 23-1590 (3d Cir. Nov. 6, 2023), https://perma.cc/3BQ9-36UJ ("States may redact certain information before disclosing Section 8(i) records."); United States Amicus Br. at 24-26, *Project Vote/Voting for America, Inc. v. Long*, No. 11-1809 (4th Cir. Oct. 18, 2011), https://perma.cc/HSM3-U964.

Because Section 8(i) is a public records provision, redactions are necessary to avoid widespread risk of identity theft and voter intimidation.  Social Security numbers are "are uniquely sensitive and vulnerable to abuse" and "a statute that conditions voting on public release of a voter's Social Security number creates an intolerable burden on that right as protected by the First and Fourteenth Amendments."  *Project Vote*, 682 F.3d at 339 (internal quotation marks and citations omitted); *see also* Liz Landers and Doug Adams, *How the Trump Administration Is Trying to Change the Way People Vote*, PBS News Hour, Sept. 26, 2025, https://perma.cc/7V2J-QY9V (describing Social Security number, driver's license number, and date of birth as "the holy trinity of identity theft"); *cf.* 5 U.S.C. § 552(b)(6) (allowing redactions from publicly available information if disclosure "would constitute a clearly unwarranted invasion of personal privacy").  Once again, DOJ has historically agreed, arguing under Section 8(i) that a litigant was "wrong to claim that disclosures of personally identifiable information are 'imaginary monsters.'" United States Amicus Br. at 29, *Pub. Interest Legal Found. v. Bellows*, *supra* (internal citation omitted).  And Section 8(i) does not distinguish between categories of requestors when making information available, which might allow election officials to provide unredacted information only to favored individuals, groups, or entities.  *See* 52 U.S.C. § 20507(i); *cf.* 11 C.F.R. § 9428.7 (requiring biennial state production of NVRA-related

information only to the U.S. Election Assistance Commission).[8]  Perhaps for that reason, DOJ

has not historically invoked the NVRA's public records provision when seeking election records,

relying instead on its Title III authority.  *See, e.g.*, Letter from Michael L. Jones, Off. Ala. Sec'y

of State, to U.S. Dep't of Just., at 1 (Sept. 19, 2024), https://perma.cc/LN4M-HH9E (producing

records "in compliance with Title III of the Civil Rights Act of 1960").  Thus, the NVRA also

provides no basis for DOJ's request for the unredacted Oregon voter file.

### C.    HAVA Does Not Provide DOJ with Subpoena Authority.

The United States' invocation of HAVA as a third basis for its demand is at best

puzzling, as HAVA contains neither subpoena authority nor a public records provision.  *See* 52

U.S.C. §§ 20901-21145; *cf. id* § 21003(b) (requiring states to submit HAVA compliance plans to

the U.S. Election Assistance Commission as a condition for federal funding); *see also* Or. Mot.

15-17.  Although DOJ claims that HAVA "provides authority for the Justice Department to seek

the State's [voter file] via Section 401," Aug. 14 Let. at 1, that provision merely authorizes the

Attorney General to enforce four sections of the Act, *see* 52 U.S.C. § 21111.  The "authority of

an administrative agency to issue subpoenas for investigatory purposes is created solely by

statute."  *Peters*, 853 F.2d at 696; *see also id.* (noting that courts do not "assume the existence of

the power to [subpoena] where Congress has not provided for them specifically, nor provided

procedural safeguards").  Thus, the mere fact that a statute contains enforcement provisions does

not grant subpoena authority to the enforcement agency.  *See, e.g.*, *United States v. Iannone*, 610

F.2d 943, 945-46 (D.C. Cir. 1979); *Bobreski v. EPA*, 284 F. Supp. 2d 67, 75-78 (D.D.C. 2003);

*see also Cudahy Packing Co. of La. v. Holland*, 315 U.S. 357, 364-66 (1942) (rejecting implied

---

[8] In recent months, the federal government has not shown itself to be a uniquely dependable custodian of sensitive data.  *See, e.g.*, Fatima Hussein, *After Trump's DOGE Action, 300 Million People's Social Security Data Is at Risk, Whistleblower Says*, AP, Aug. 26, 2025, https://perma.cc/G77Z-K7Y5.

subpoena delegation authority).  Moreover, enforcement authority does not mandate direct

oversight of state election authorities, which would impose substantial federalism costs.  *See,*

*e.g.*, *Shelby Cnty. v. Holder*, 570 U.S. 529, 549 (2013); *see also* 52 U.S.C. § 21085 (codifying

state discretion).  Ultimately, the United States may demand records relevant to HAVA

compliance under Title III, although it must follow the requirements of that law.

    If enforcement authority were always accompanied by the authority to demand relevant

documents, express subpoena provisions throughout the United States Code would be

meaningless surplusage.  *See, e.g.*, *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 476

(2019) (recognizing that courts "generally presum[e] that statutes do not contain surplusage"

(citation omitted)).  Title III itself would not have been needed to ensure that DOJ could

effectively enforce the Civil Rights Act of 1957.  *See* S. Rep. No. 86-1205 (1960).  These

arguments do not bear scrutiny.  Therefore, HAVA provides no basis for DOJ's request for the

unredacted Oregon voter file.

## VI.    CONCLUSION

    For the reasons set out above, this Court should grant Defendants' motion to dismiss.

Respectfully submitted,

DATED:  November 18, 2025                    STOEL RIVES LLP

                                             *s/ Misha Isaak*
                                             _____
                                             MISHA ISAAK, Bar No. 086430
                                             misha.isaak@stoel.com

                                             DANIEL J. FREEMAN, *pro hac vice* forthcoming
                                             freemand@dnc.org

                                             *Attorneys for Democratic National Committee*