**HARRY WILSON**, OSB No. 077214
harrywilson@markowitzherbold.com
**DALLAS DELUCA**, OSB No. 072992
dallasdeluca@markowitzherbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: 503-295-3085

**CHRISTOPHER D. DODGE**
D.C. Bar. No. 90011587
**BRANDEN LEWISTON**
D.C. Bar No. 252550
ELIAS LAW GROUP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
cdodge@elias.law
blewiston@elias.law

**ABHA KHANNA**
WA Bar No. 42612
**WALKER McKUSICK**
WA Bar No. 63205
ELIAS LAW GROUP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
akhanna@elias.law
wmckusick@elias.law

*Attorneys for Proposed Intervenors*
*Our Oregon, Dan DiIulio, Stephen Gomez,*
*and Emma Craddock*

## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

THE STATE OF OREGON; and
TOBIAS READ, in his official capacity as the
Oregon Secretary of State,

        Defendants.

Case No. 6:25-CV-01666-MTK

## **PROPOSED DEFENDANT-INTERVENORS' REPLY IN SUPPORT OF MOTION TO INTERVENE**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 2

I.   Proposed Intervenors are entitled to intervene as a matter of right. ......................................... 2

    A.   Proposed Intervenors' interests are threatened by DOJ's lawsuit. .................................. 2

        1.   Proposed Intervenors do not need (but still have) a right of action to intervene. .... 2

        2.   The threat to Proposed Intervenors' privacy interests is concrete ........................... 4

        3.   Threats to privacy and voting rights are necessarily particularized. ...................... 6

    B.   The State Defendants do not adequately represent Proposed Intervenors. ...................... 7

II.  Proposed Intervenors should, alternatively, be granted permissive intervention. .................. 11

CONCLUSION ................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**                                                                                      **Page(s)**

*1789 Found. Inc. v. Fontes*,
    No. 24-cv-02987, 2025 WL 834919 (D. Ariz. Mar. 17, 2025) ....................................... 10

*Arakaki v. Cayetano*,
    324 F.3d 1078 (9th Cir. 2003) ....................................................................................... 11

*Batts v. Gannett Co.*,
    No. 22-10685, 2023 WL 3143695 (E.D. Mich. Mar. 30, 2023) ........................................ 7

*Bellitto v. Snipes*,
    935 F.3d 1192 (11th Cir. 2019) .................................................................................... 10

*Berger v. N.C. State Conf. of the NAACP*,
    597 U.S. 179 (2022) ............................................................................................... 2, 8, 9

*Callahan v. Brookdale Senior Living Cmtys.*,
    42 F.4th 1013 (9th Cir. 2022) ........................................................................................ 8

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
    647 F.3d 893 (9th Cir. 2011) ..................................................................................... 4, 9

*Donald J. Trump for President, Inc. v. Bullock*,
    491 F. Supp 3d 814 (D. Mont. 2020) ............................................................................. 7

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ..................................................................................... 4, 7

*FEC v. Akins*,
    524 U.S. 11 (1998) ......................................................................................................... 7

*Jones v. Prince George's County*,
    348 F.3d 1014 (D.C. Cir. 2003) ..................................................................................... 3

*Judicial Watch, Inc., v. Ill. State Bd. of Elections*,
    No. 24-cv-1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024) ....................................... 10

*Kalbers v. U.S. Dep't of Just.*,
    22 F.4th 816 (9th Cir. 2021) ...................................................................................... 4, 9

*Mussi v. Fontes*,
    No. 24-cv-0131, 2024 WL 3396109 (D. Ariz. July 12, 2024) .......................................... 8

*Perry v. Proposition 8 Off. Proponents,*
 587 F.3d 947 (9th Cir. 2009) .................................................................... 11

*Providence Baptist Church v. Hillandale Comm., Ltd.,*
 425 F.3d 309 (6th Cir. 2005) ...................................................................... 6

*Providence J. Co. v. FBI,*
 460 F. Supp 762 (D.R.I. 1978) .................................................................... 9

*Pub. Interest Legal Found., Inc. v. Winfrey,*
 463 F. Supp 3d 795 (E.D. Mich. 2020) ...................................................... 10

*Republican Nat'l Comm. v. Aguilar,*
 No. 2:24-cv-00518, 2024 WL 3409860 (D. Nev. July 12, 2024) .................... 10

*Sw. Ctr. for Biological Diversity v. Berg,*
 268 F.3d 810 (9th Cir. 2001) ...................................................................... 5

*Trbovich v. United Mine Workers of Am.,*
 404 U.S. 528 (1972) ............................................................................. 3, 8, 9

*W. Watersheds Project v. Haaland,*
 22 F.4th 828 (9th Cir. 2022) ..................................................................... 9, 11

*Wilderness Soc'y v. U.S. Forest Serv.,*
 630 F.3d 1173 (9th Cir. 2011) (en banc) ..................................................... 3

*Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula,*
 41 F.4th 767 (6th Cir. 2022) ...................................................................... 10

*Yniguez v. Arizona,*
 939 F.2d 727 (9th Cir. 1991) ..................................................................... 5, 6

**FEDERAL STATUTES**

31 U.S.C. § 3730(b)(5) ..................................................................................... 4

52 U.S.C. § 20510(b) ....................................................................................... 4

**STATE STATUTES**

Or. Rev. Stat. § 247.948(2) .............................................................................. 4

**FEDERAL RULES**

Fed. R. Civ. P. 24(a)(2) ................................................................................. 2, 4

Fed. R. Civ. P. 24(b)(3) .................................................................................................. 11

**OTHER AUTHORITIES**

Abby Vesoulis & Ari Berman, *New Docs Show DHS Gathering Drivers' License
        Data in Voter Fraud Crusade*, Mother Jones (Nov. 14, 2025),
        https://www.motherjones.com/politics/2025/11/dhs-gathering-drivers-license-
        save-voter-fraud-crusade/ ................................................................................................ 6

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y.
        Times (Nov. 16, 2025),
        https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-
        department-staff-attorneys.html ........................................................................................ 5

Exec. Order No. 14248, Fed. Reg. 14005 (Mar. 25, 2025) ........................................ 10

Jen Fifield, *Details of DHS Agreement Reveal Risks of Trump Administration's Use
        of Social Security Data for Voter Citizenship Checks*, ProPublica (Oct. 30,
        2025), https://www.propublica.org/article/dhs-social-security-data-voter-
        citizenship-trump ............................................................................................................ 6

Nick Corasaniti, *Election Officials Press Trump Administration Over Voter Data*,
        N.Y. Times (Nov. 18, 2025),
        https://www.nytimes.com/2025/11/18/us/politics/election-officials-trump-
        voter-data.html ................................................................................................................ 6

## INTRODUCTION

Proposed Intervenors are entitled to intervene as of right. They have direct, significant, and protectable interests in the privacy of their personal information and, in the case of Our Oregon, in its ability to engage voters in the political process. No existing party shares these interests, which will be directly impaired if DOJ succeeds in obtaining an unredacted copy of Oregon's voter file.

Nothing in DOJ's opposition justifies finding otherwise. Instead, DOJ's arguments miss the point entirely, run contrary to binding precedent, or both. For example, DOJ argues that two of the three statutes under which it sues do not include a private right of action—but that would only be relevant if Proposed Intervenors sought to *initiate* a suit as *plaintiffs*. Here, Proposed Intervenors seek to *intervene* as *defendants*—just as Rule 24 contemplates. Whether Purported Intervenors have private rights of action is thus irrelevant.

DOJ next argues that the harms that Proposed Intervenors fear are hypothetical, but it does not dispute that its requested relief entails disclosures of Proposed Intervenors' sensitive personal information in violation of Oregon law, and it leaves unrebutted detailed evidence establishing harms to Proposed Intervenors' privacy and, in the case of Our Oregon, mission-critical voting programs—harms that are more than sufficient to meet Rule 24(a)'s interest requirements. DOJ also argues that Proposed Intervenors' interests are not particularized, but it gets the law wrong again: Longstanding precedent in the Ninth Circuit and elsewhere establishes that the feared harms are sufficient to satisfy even Article III's more rigorous injury-in-fact requirement, never mind the more modest requirements of Rule 24.

DOJ is also wrong that State Defendants adequately represent Proposed Intervenors' interests. The State Defendants will not be the victims of any privacy violation if DOJ prevails, and they are not charged with achieving the mission of Our Oregon. The State Defendants instead are charged with balancing competing interests—including maintaining the state voter list,

conserving state resources, and avoiding confrontation with the federal government—that diverge from Proposed Intervenors' interests. Because State Defendants' interests are far from *identical* to Proposed Intervenors' interests, *see Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 197 (2022), this prong of Rule 24(a) is satisfied as well.

Finally, there is no basis to deny Proposed Intervenors' alternative request that they be granted permissive intervention. Indeed, less than two weeks ago, a federal court granted permissive intervention to civic organizations challenging DOJ's near-identical request for California's unredacted voter list. Minutes of Motion Hearing, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 24, 2025), ECF No. 70 (granting motions to intervene). The Court should grant the motion to intervene.

## <u>ARGUMENT</u>

**I.     Proposed Intervenors are entitled to intervene as a matter of right.**

    **A.     Proposed Intervenors' interests are threatened by DOJ's lawsuit.**

DOJ makes three arguments that Proposed Intervenors lack the requisite interest in this case to be entitled to intervene as of right, none of which has merit. Proposed Intervenors satisfy this requirement under Rule 24(a).

        **1.     Proposed Intervenors do not need (but still have) a right of action to intervene.**

DOJ's lead theory—that the absence of an express statutory right for private parties under the Help America Vote Act ("HAVA") and the Civil Rights Act precludes intervention here—fundamentally misunderstands intervention. *See* Opp. Mot. Intervene at 14–19 (hereinafter "Opp."). The test for intervention is governed by Rule 24, which states that a court "must permit" (upon a timely motion) "anyone" to intervene as of right, so long as they have an "interest" that "may" be impaired and they are not adequately represented. Fed. R. Civ. P. 24(a)(2). "As the

Rule's plain text indicates, intervenors of right need only an 'interest' in the litigation–not a 'cause of action' or 'permission to sue.'" *Jones v. Prince George's County*, 348 F.3d 1014, 1018 (D.C. Cir. 2003); *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 531 (1972) (finding intervention proper by union member even when the relevant statute prohibited union members from "initiating a private suit" because as intervenors they sought "only to participate in a pending suit"). Whether or not a prospective intervenor has a right to bring a claim in the first instance is thus irrelevant.

Recognizing this, the Ninth Circuit has already rejected DOJ's theory. Until 2011, the Ninth Circuit did not permit private parties to intervene as of right as defendants in actions brought under the National Environmental Policy Act ("NEPA"), reasoning (in an echo of DOJ here) that "such parties lack a 'significantly protectable' interest . . . under Rule 24(a)(2) because NEPA is a procedural statute that binds only the federal government." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc). In *Wilderness Society*, however, the *en banc* Court unanimously reversed that prohibition, holding that it "run[s] counter to the standards we apply in all other intervention of right cases." *Id.* at 1179. The Court emphasized that Rule 24(a)(2)'s "'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process," and that the "asserted interest need not be protected by the statute under which the litigation is brought." *Id.*; *see also id.* at 1178–79 ("No part of Rule 24(a)(2)'s prescription engrafts a limitation on intervention of right to parties liable to the plaintiffs on the same grounds as the defendants."). DOJ's theory is thus squarely foreclosed by binding precedent, and the Court need not consider DOJ's citations to out-of-circuit and inapposite authorities, none of which addresses whether intervenors require a right of action in any event.

DOJ's argument that HAVA and the Civil Rights Act do not contemplate private parties as defendants similarly fails. While Congress has in some instances limited the types of entities that may intervene in particular actions, *see, e.g.*, 31 U.S.C. § 3730(b)(5) (Civil Actions for False Claims) ("When a person brings an action under this subsection [concerning civil actions for false claims], *no person other than the Government may intervene*.") (emphasis added), neither HAVA nor the Civil Rights Act contain such a provision. Rule 24(a) thus governs, and "anyone" who meets its listed requirements may intervene.[1] Fed. R. Civ. P. 24(a)(2).

Finally, even if DOJ's theory that a private right of action is required to intervene were correct, it would still go nowhere: DOJ conspicuously fails to even acknowledge that the statute they rely upon for their lead claim, the National Voter Registration Act, provides an express right of action for private litigants. *See* 52 U.S.C. § 20510(b).

### 2.    The threat to Proposed Intervenors' privacy interests is concrete.

DOJ's next argument—that Proposed Intervenors' interests are "hypothetical" or "speculative"—likewise misses the mark. Opp. at 19–21. Proposed Intervenors need only show the "disposition of the action 'may' practically impair" their interests, not that impairment is a "certainty." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011) (quoting Fed. R. Civ. P. 24(a)(2)). DOJ does not dispute that the relief it seeks would expose to DOJ sensitive personal information protected by state law. *See* Or. Rev. Stat. § 247.948(2). The unlawful disclosure of confidential information to another party is itself a sufficiently concrete and particularized harm to satisfy even the stricter requirements of Article III standing. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020). So it follows that the

---

[1] Moreover, private parties often intervene to protect their interests in cases in which the government is the only party that could be directly sued. *See, e.g.*, *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 828 (9th Cir. 2021) (granting private party intervention in Freedom of Information Act case to support government's decision to withhold documents).

prospect of such harm establishes a sufficient interest among Proposed Intervenors' members under Rule 24(a)(2), *see* Mot. Intervene at 13–14 (citing cases); *see also Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991) (observing that Article III standing requirements "are more stringent than those for intervention under rule 24(a)," so satisfying Article III "compels the conclusion" that a party also satisfies Rule 24).

DOJ is also wrong in claiming that a North Carolina court recently found similar privacy concerns were "objectively . . . unfounded." Opp. at 20. The *consent judgment* between DOJ and the North Carolina State Board of Elections is neither a court finding nor evidence that voters do not have privacy interests in their sensitive personal information. Consent J. at 3, ECF No. 30-1 (noting parties "waive[d] a hearing and the entry of findings of fact and conclusions of law"). In entering the consent judgment, the court denied pending motions to intervene *as moot* given the settlement, without any analysis of the intervenors' privacy concerns. Consent J. at 12. In any event, the consent judgment expressly reserved the state's right to seek a protective order "if" DOJ seeks "confidential records or data." Consent J. at 12.

DOJ further fails to rebut declarations establishing that Proposed Intervenor Our Oregon has an interest in preserving its ability to accomplish its mission of engaging voters, and that voter registration and participation will be stifled among its key constituencies—particularly agricultural workers, who are often naturalized citizens or first-generation Americans—should DOJ succeed. *See* Mot. Intervene 14–15 (citing Ruffin Decl. ¶¶ 7–10, 13–14). These facts must be accepted as true, *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001), and they are further validated by widespread public reporting that DOJ intends to share voter lists with "DOGE" and DHS for immigration enforcement, and that it has been "dishonest" in its stated reasons for seeking voter data. Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*,

N.Y. Times (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html (quoting an attorney tasked to work on DOJ's requests for state voter data); *see also* Nick Corasaniti, *Election Officials Press Trump Administration Over Voter Data*, N.Y. Times (Nov. 18, 2025), https://www.nytimes.com/2025/11/18/us/politics/election-officials-trump-voter-data.html (quoting letter from ten secretaries of state expressing "immense concern" that DOJ is sharing voter data with DHS and has "actively misled election officials regarding the uses of voter data").[2]

### 3.    Threats to privacy and voting rights are necessarily particularized.

DOJ again gets the law wrong in asserting that Proposed Intervenors' interests are not sufficiently "particularized" because their interests are purportedly shared by all Oregon voters. Opp. at 21–23. The "particularized" injury requirement comes from Article III standing jurisprudence, and the Ninth Circuit has been clear that "Article III standing requirements are *more stringent* than those for intervention under rule 24(a)." *Yniguez*, 939 F.2d at 735 (emphasis added). Accordingly, "[i]t is possible to have standing to intervene in a lawsuit, but not have Article III standing." *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 318 (6th Cir. 2005). DOJ fails to cite any in-circuit authority applying the "particularized" injury requirement to intervention.

---

[2] *See also* Abby Vesoulis & Ari Berman, *New Docs Show DHS Gathering Drivers' License Data in Voter Fraud Crusade*, Mother Jones (Nov. 14, 2025), https://www.motherjones.com/politics/2025/11/dhs-gathering-drivers-license-save-voter-fraud-crusade/ (reporting on DHS's efforts to compile sensitive data on all voters to support allegations of widespread voter fraud and DOJ's suits against states for voter data as part of that effort); Jen Fifield, *Details of DHS Agreement Reveal Risks of Trump Administration's Use of Social Security Data for Voter Citizenship Checks*, ProPublica (Oct. 30, 2025), https://www.propublica.org/article/dhs-social-security-data-voter-citizenship-trump (reporting on growing claims that DOJ, DHS, and SSA's attempts to compile state voter data violate privacy laws and risk unlawful disclosures, and that audits confirm that DHS's tactics to identify purported non-citizens are unreliable).

In any event, Proposed Intervenors could satisfy even the more stringent Article III inquiry, so they necessarily also meet Rule 24's interest requirement. A violation of one's privacy is inherently "particularized"—disclosure of private information affects each person in a "personal and individual way," even if many people are similarly affected. *In re Facebook*, 956 F.3d at 598–99 (finding standing based on "historically recognized right to privacy"); *see also Batts v. Gannett Co.*, No. 22-10685, 2023 WL 3143695, at *3 (E.D. Mich. Mar. 30, 2023) (noting "the nonconsensual dissemination of information" in violation of "a statutorily protected right to privacy" "inflicts harm in a concrete and particularized way") (citation omitted). Consequently, the fact that *many* voters will be harmed by DOJ's actions does not make the threatened injuries any less concrete: each voter still stands to have their own, personal information unlawfully disclosed. *See FEC v. Akins*, 524 U.S. 11, 24 (1998) (holding Article III standing requirements are met when "large numbers of voters" suffer a "widely shared" injury); *Donald J. Trump for President, Inc. v. Bullock*, 491 F. Supp. 3d 814, 828 (D. Mont. 2020) ("[T]he Supreme Court has been clear that 'where large numbers of voters suffer interference with voting rights,' the interests related to that are sufficiently" particularized and concrete) (quoting *Akins*, 524 U.S. at 24). Further, Our Oregon's interest in advancing its own mission to promote voter engagement is not shared by all others in Oregon. *See* Mot. Intervene at 14–15.

### B.    The State Defendants do not adequately represent Proposed Intervenors.

DOJ's argument that the Court should presume that the State Defendants adequately represent Proposed Intervenors interest because they "share the same interests in this litigation," Opp. at 26, conflates interests with objectives and is at odds with precedent. While Proposed Intervenors and State Defendants both seek a similar litigation objective—"to reject efforts by the United States to obtain Oregon's SVRL," Opp. at 26—they do so based on distinct interests, as explained above. The Supreme Court has held it "normally is not enough to trigger a presumption

of adequate representation" when an intervenor's "interest is similar to, but not identical with, that of one the parties." *Berger*, 597 U.S. at 197 (quotation marks and citation omitted). Such a presumption thus cannot apply here, where Proposed Intervenors have interests in protecting *their* sensitive personal information and, for Our Oregon, advancing *its* voter engagement efforts, which are "not identical with" Defendants' interests.

This conclusion flows directly from long-standing precedent governing motions to intervene. In *Trbovich*, the Supreme Court reviewed a union member's effort to intervene as plaintiff in a suit that the Secretary of Labor brought against his union. 404 U.S. at 539. As *Berger* summarized, "[a]t a high level of abstraction, the union member's interest and the Secretary's might have seemed closely aligned," but the presumption of adequate representation was not warranted because "the union member sought relief against his union, full stop," while the Secretary also had to "bear in mind broader public-policy implications." 597 U.S. at 196. This distinction between objective and interest is why *Berger* "calls into question whether the application of such a presumption is appropriate." *Callahan v. Brookdale Senior Living Cmtys.*, 42 F.4th 1013, 1021 n.5 (9th Cir. 2022) (explaining that after *Berger*, the only presumption that remains "on firm legal footing" is that "a proposed intervenor must make a compelling showing of inadequate representation when her interest is *identical* to that of an existing party") (emphasis added). DOJ proposes a presumption nonetheless applies *whenever* a "private litigant" seeks to litigate "alongside the government." Opp. at 25 (citing *Mussi v. Fontes*, No. 24-cv-0131, 2024 WL 3396109, at *2 (D. Ariz. July 12, 2024)). But that view cannot be squared with *Trbovich*, which itself involved a private litigant on the same side as "an existing government party," *Berger*, 597 U.S. at 195–96 ("Rather than endorse a presumption of adequacy, the Court held that a movant's

burden in circumstances like these 'should be treated as minimal.'" (quoting *Trbovich*, 404 U.S. at 538 n.10)).

Even if a presumption did apply, the Ninth Circuit has a long-standing practice of interpreting Rule 24 "broadly in favor of intervention." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022). Proposed Intervenors need only showing the "existing parties *may* not represent" their interests adequately. *Kalbers*, 22 F.4th at 828. That is a "minimal challenge," *Berger*, 597 U.S. at 195, which Proposed Intervenors readily meet.

Proposed Intervenors' interests, examined at the appropriate level of abstraction, diverge from the State Defendants' interests several times over. For one, the State Defendants do not share Our Oregon's parochial interests in protecting and mobilizing voters, particularly underrepresented groups such as agricultural workers, who are often naturalized citizens or first-generation Americans and will be deterred from political participation by the relief DOJ seeks. *See Citizens for Balanced Use*, 647 F.3d at 899 ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'") (citation omitted). And crucially, the highly sensitive information at stake in this litigation is *personal data about voters*, including that of Proposed Intervenors Dan DiIulio, Stephen Gomez, and Emma Craddock; State Defendants do not share their interest in protecting the privacy of their data. Put simply, "[n]o one can better assert an interest in personal privacy than the person whose privacy is at stake." *Providence J. Co. v. FBI*, 460 F. Supp. 762, 766 (D.R.I. 1978), *overruled on other grounds*, 602 F.2d 1010 (1st Cir. 1979).

The State Defendants' interests reflect their own unique responsibilities. They must reconcile diffuse interests in election administration, budget management, coordination with

federal agencies, and serving the electorate writ large, among others. *See Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019) (recognizing the NVRA requires state officials to "balance competing objectives" of accurate voter rolls and ballot access). Given this divergence in interests between state officials, on the one hand, and individual voters and their advocates, on the other, courts regularly grant intervention to civic groups in litigation over voter rolls. *See, e.g.*, *Judicial Watch, Inc., v. Ill. State Bd. of Elections*, No. 24-cv-1867, 2024 WL 3454706, at *6 (N.D. Ill. July 18, 2024); *1789 Found. Inc. v. Fontes*, No. 24-cv-02987, 2025 WL 834919, at *3 (D. Ariz. Mar. 17, 2025); *Republican Nat'l Comm. v. Aguilar*, No. 2:24-cv-00518, 2024 WL 3409860, at *3–4 (D. Nev. July 12, 2024); *Pub. Interest Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799–800 (E.D. Mich. 2020).

State Defendants and Proposed Intervenors also face different litigation incentives. Indeed, DOJ attaches to its opposition a consent judgment in which state defendants in North Carolina chose to settle with DOJ, over the vociferous objections of the pro-voter groups that sought to intervene there, *see* Consent J., ECF No. 30-1—while Proposed Intervenors seek a merits victory that resoundingly confirms their privacy rights. And given that the President has already threatened to withhold election funding from States that resist complying with his policy preferences, *see* Exec. Order No. 14,248, 90 Fed. Reg. 14005, §§ 5(b), 7(b) (Mar. 25, 2025), it is imperative to include private intervenors who face no such dilemma. *See Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 776 (6th Cir. 2022) (finding inadequate representation when government defendant faced "the stick of damages and the carrot of settlement").

DOJ relies heavily on a pre-*Berger* case, *Arakaki v. Cayetano*, 324 F.3d 1078, 1086–87 (9th Cir. 2003), where the Ninth Circuit denied intervention when "the record" showed the existing parties (including already-admitted intervenors) would "make all of [the proposed intervenor's]

arguments." Here, the record shows just the opposite: Proposed Intervenors' proposed motion to dismiss dedicated nearly five pages—almost one-third of its Argument section—to pressing a textual argument that Title III of the Civil Rights Act does not extend to state-generated records such as voter lists, *see* Proposed Mot. Dismiss at 14–18, ECF No. 31, an argument not made by the State Defendants' motion to dismiss, *see* Mot. Dismiss at 18–22, ECF No. 32, or by amici, *see* Mem. of Amicus Curiae Democratic National Committee, ECF No. 35; Amici Curiae Br. of ACLU of Oregon and League of Women Voters of Oregon, ECF No. 39-1. "That [Proposed Intervenors] might raise new, legitimate arguments is a reason to grant intervention," particularly because those "additional arguments could prove persuasive." *W. Watersheds Project*, 22 F.4th at 839.[3]

## II.    Proposed Intervenors should, alternatively, be granted permissive intervention.

DOJ concedes that Proposed Intervenors' motion is timely and that it raises a defense that shares a common question of law or fact with the main action. *See* Opp. at 27. Accordingly, the only element of permissive intervention in dispute is whether Proposed Intervenors' participation will unduly delay the litigation or prejudice the original parties' rights. *See* Fed. R. Civ. P. 24(b)(3). But DOJ has no basis to invoke the prospect of delay when successful intervention would leave existing deadlines unaltered, and Proposed Intervenors have agreed to abide by any future deadlines set by the Court. *See* Mot. Intervene at 18. Indeed, unlike DOJ, which has *twice* sought to delay the proceedings via motions to stay, *see* ECF Nos. 22, 25, Proposed Intervenors have worked promptly to move this litigation along: they moved to intervene just ten days after DOJ sued and have already filed a proposed motion to dismiss. *See* ECF Nos. 12, 31.

---

[3] DOJ's reliance on *Arakaki* is further misplaced because, in that case, other already-admitted intervenors were similarly situated to the proposed intervenor. *See* 324 F.3d at 1087; *see also Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 949–52 (9th Cir. 2009) (denying intervention where two similar organizations had already intervened alongside California government defendants). Here, no other party has moved to intervene.

DOJ admits that it most fears the prospect of "divergences of view." Opp. at 27 (citation omitted). But that is precisely what warrants intervention in the first place—Proposed Intervenors possess interests that diverge from DOJ and State Defendants in a manner that has *already* resulted in Proposed Intervening presenting different arguments to the Court. The Court should permit intervention so that the voices of the voters with the most at stake in this litigation are heard and to ensure this Court receives a full airing of adversarial arguments.

## **CONCLUSION**

Proposed Intervenors request that this Court grant their Motion to Intervene.


December 1, 2025                                    Respectfully submitted,

                                                   */s/ Abha Khanna*
                                                   **ABHA KHANNA***
                                                   WA Bar No. 42612
                                                   **WALKER McKUSICK***
                                                   WA Bar No. 63205
                                                   ELIAS LAW GROUP
                                                   1700 Seventh Avenue, Suite 2100
                                                   Seattle, WA 98101
                                                   akhanna@elias.law
                                                   wmckusick@elias.law

                                                   **CHRISTOPHER D. DODGE***
                                                   D.C Bar. No. 90011587
                                                   **BRANDEN LEWISTON***
                                                   D.C. Bar. No. 252550
                                                   ELIAS LAW GROUP
                                                   250 Massachusetts Ave NW, Suite 400
                                                   Washington, DC 20001
                                                   cdodge@elias.law
                                                   blewiston@elias.law

                                                   **HARRY WILSON**, OSB No. 077214
                                                   harrywilson@markowitzherbold.com
                                                   **DALLAS DELUCA**, OSB No. 072992
                                                   dallasdeluca@markowitzherbold.com
                                                   MARKOWITZ HERBOLD PC
                                                   1455 SW Broadway, Suite 1900

Portland, OR 97201
Telephone: 503-295-3085

*Appearing Pro Hac Vice

*Attorneys for Proposed Intervenors
Our Oregon, Daniel DiIulio, Stephen
Gomez, and Emma Craddock*