**HARMEET K. DHILLON**
Assistant Attorney General
Civil Rights Division

**MAUREEN S. RIORDAN**
Acting Chief, Voting Section
Civil Rights Division
**TIMOTHY F. MELLETT**
**DAVID D. VANDENBERG**
Attorneys, Voting Section
Civil Rights Division
950 Pennsylvania Avenue 4CON
Washington, DC 20530
Maureen.Riordan2@usdoj.gov
Timothy.F.Mellett@usdoj.gov
David.Vandenberg@usdoj.gov
Tel. (202) 307-2767
*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil Case No. 6:25-cv-01666-MTK |
| Plaintiff, | |
| v. | Plaintiff United States of America's MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS |
| STATE OF OREGON; and TOBIAS READ, in his official capacity as the Oregon Secretary of State, | |
| Defendants. | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

BACKGROUND ............................................................................................................ 5

LEGAL STANDARDS ................................................................................................ 5

ARGUMENT ................................................................................................................ 6

   I.      The United States Has a Valid Legal Claim Under the Civil Rights Act of 1960.......... 7

     A.    The language of the Civil Rights Act of 1960 unambiguously permits the requests ..... 7

     B.    The United States has sufficiently pled a claim for relief under Title III of the Civil Rights Act. ..................................................................................................................... 8

     C.    The United States is entitled to unredacted "copying" and "reproduction" of Defendants' federal election records .................................................................................. 11

   II.     The United States Has a Valid Legal Claim Under the NVRA. ................................... 14

   III. The United States Has a Valid Legal Claim Under HAVA ................................................. 15

     A.    Defendants have failed to engage in reasonable list maintenance practices resulting in an inaccurate voter roll........................................................................................................ 15

     B.    HAVA does not have a public disclosure requirement, because, unlike the NVRA, there is no private right of action under the Act ................................................................... 16

   IV.    The United States is Complying with Applicable Privacy Laws ................................. 17

     A.    The United States is Complying with the Privacy Act. ................................................ 18

     B.    The First Amendment does not Prohibit NVRA and HAVA Enforcement................. 19

     C.    The E-Government Act does not bar Claims by the United States.............................. 20

     D.    The Driver's Privacy Protection Act does not Bar Claims by the United States.......... 21

CONCLUSION ............................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) ....................................... 7

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ................................................ 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 6, 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 6, 8

*Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008) ................................................................. 16

*Coal. for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937 (D.N.H. May 27, 2025) ........................................................................................................................................ 13

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ......................................................... 7, 11, 13

*Colón-Marrero v. Vélez*, 813 F.3d 1 (1st Cir. 2016) ..................................................................... 15

*Connell v. Lima Corp.*, 988 F.3d 1089 (9th Cir. 2021) ................................................................... 8

*Ebert v. Poston*, 266 U.S. 548 (1925) ........................................................................................... 8

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297 (D.D.C. 2017), *aff'd.*, 878 F.3d 371(D.C. Cir. 2017) ............................................................ 21

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Commerce*, 356 F. Supp 85 (D.D.C. 2019) ...................... 20

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Commerce*, 928 F.3d 95 (D.C. Cir. 2019) ................... 11, 20

*Haas Mgmt. Co. v. Hiscox, Inc.*, 23 F.4th 1195 (9th Cir. 2022) ..................................................... 6

*In re Dumont*, 581 F.3d 1104 (9th Cir. 2009) ................................................................................ 8

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ......................................................................... 11

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ..................................................................... passim

*Landers v. Quality Commc'ns., Inc.*, 771 F.3d 638 (9th Cir. 2015) .............................................. 6

*Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580 (9th Cir. 2008) ....................................................... 5

*Mi Familia Vota v. Fontes,* 129 F.4th 691 (9th Cir. 2025) ......................................................... 19

*Peters v. United States*, 853 F.2d 692 (9th Cir. 1988) ................................................................. 15

*Reno v. Condon*, 528 U.S. 141 (2000) ....................................................................................... 22

*Sanders v. Kennedy*, 794 F.2d 478 (9th Cir. 1986) ................................................................... 5, 16

*United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846 (W.D. La. 1960) .............. 17

*United States v. Missouri Pac. R.R. Co.*, 278 U.S. 269, 278 (1929) .............................................. 8

*Voter Reference Found., LLC v. Torrez*, No. 24-2133, 2025 WL 3280300 (10th Cir. Nov. 25, 2025) ................................................................................................................................ 12, 14

*Voting Rts. Coal. v. Wilson,* 60 F.3d 1411 (9th Cir. 1995) ........................................................... 19

**Statutes**

18 U.S.C. § 2721 ................................................................................................................ 21, 22

18 U.S.C. § 2725 ...................................................................................................................... 21

28 C.F.R § 0.51 ......................................................................................................................... 18

28 C.F.R. § 0.50 ........................................................................................................................ 18

44 U.S.C. § 3101 ....................................................................................................................... 18

5 U.S.C. § 552 ........................................................................................................................... 19

5 U.S.C. § 552a .................................................................................................................... 18, 19

52 U.S.C. § 20507 ........................................................................................................... 13, 14, 19

52 U.S.C. § 20701 ................................................................................................................... 7, 12

52 U.S.C. § 20703 ............................................................................................................... passim

52 U.S.C. § 21083 ........................................................................................................ 13, 15, 17, 19

52 U.S.C. § 21111 ...................................................................................................................... 16

Civil Rights Act of 1960, Pub. L. No. 86-449, 74 Stat. 86 (1960) ............................................. 7

E-Government Act of 2002, Pub. L. No. 107–347, § 208 ..................................................... 20, 21

The Privacy Act of 1974, Pub. L. No. 93–579, § 2, 88 Stat. 1896 (1974).................................... 19

**Regulations**

64 Fed. Reg. 73585-02 (Dec. 30, 1999).................................................................................... 18

66 Fed. Reg. 8425-02 (Jan. 31, 2001) ....................................................................................... 18

68 Fed. Reg. 47610-01 (Aug. 11, 2003) .................................................................................... 18

70 Fed. Reg. 43904-01 (July 29, 2005) ..................................................................................... 18

74 Fed. Reg. 57194 (Nov. 4, 2009)............................................................................................ 18

82 Fed. Reg. 24147-01 (May 25, 2017)..................................................................................... 18

82 Fed. Reg. 24151 (May 25, 2017) .......................................................................................... 18

**Legislative Materials**

106 Cong. Rec. 7767................................................................................................................... 7

148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002) ..................................................................... 16

H.R. Rep. 107-329(I) (2001)....................................................................................................... 15

## BACKGROUND

The Attorney General of the United States brought this straightforward case to enforce the requirements of three complimentary federal statutes. Those laws, the Civil Rights Act of 1960 ("CRA"), the Help America Vote Act ("HAVA"), and the National Voter Registration Act ("NVRA"), govern voter registration and voting records pertaining to federal elections.[1] Oregon reported voter registration data to the U.S. Election Assistance Commission in the Commission's 2024 Election Administration and Voting Survey ("EAVS"), released in late June 2025. *See* Compl., ECF No. 1, at 11-12. Some of Oregon's significant data was missing. *Id.* at 12-14. The data Oregon did report to the Commission exhibited significant deficiencies on several metrics and is inconsistent with reasonable list maintenance efforts under federal law. *See id.* The United States engaged in repeated correspondence with Defendants, requesting Defendants' cooperation to address the U.S. Department of Justice's ("Department") data requests in a manner consistent with federal privacy law. Those efforts were met by delay, obfuscation, and, finally, a refusal by Defendants to produce records mandated by federal law and necessary to assess Oregon's compliance with federal civil rights laws. *See id.* at 15-19. This litigation followed.

Defendants now move to dismiss the United States' Complaint on several grounds, none of which have merit. *See* Defs.' Mot. to Dismiss & Decl. in Support, ECF Nos. 32, 33. Defendants begin with a thread-bare recitation of what they describe as the "legal standard." Defendants then ask the Court to decide this case on the merits at the pleading stage after rewriting the statute to encompass requirements omitted by Congress. This Court should decline Defendants' invitation and deny their motion to dismiss.

## LEGAL STANDARDS

When considering a motion to dismiss, a court must read the complaint in the light most favorable to the non-moving party and accept all material allegations in the complaint as true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). The court's inquiry is confined to the allegations in the complaint. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). A

---

[1] The United States has set out a detailed background of this litigation previously. *See* Mem. of Law in Opp. to Mot. To Intervene by Our Oregon, Dan DiIulo, Stephen Gomez and Emma Craddock ("Pl.'s Opp. Br."), ECF 30 at 6-11.

motion to dismiss must be denied, if the plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, dismissal under Rule 12(b)(6) is proper only when the complaint either: (1) lacks a cognizable legal theory; or (2) fails to allege sufficient facts to support a cognizable legal theory. *Iqbal*, 556 U.S. at 678. In evaluating whether a complaint states a plausible claim for relief, a court relies on its "judicial experience and common sense." *Landers v. Quality Commc'ns., Inc.*, 771 F.3d 638, 639 (9th Cir. 2015). A motion to dismiss is viewed with disfavor and is rarely granted. *Ernst & Haas Mgmt. Co. v. Hiscox, Inc.*, 23 F.4th 1195, 1196 (9th Cir. 2022).

## ARGUMENT

The three claims brought by the United States each offer overlapping and complimentary statutory authority for obtaining records from Defendants to enforce federal voter list maintenance requirements. Defendants seek dismissal of these claims ostensibly because, they argue, none of them have a plausible basis. To arrive at that conclusion, Defendants ask the Court to: (1) disregard the plain language of the statutes by injecting ambiguities that do not exist and thereby allow the Court to legislate from the bench to rewrite the provisions in a manner that suits them; (2) selectively ignore relief specified in the statutes that foreclose their defenses; and (3) make merits findings that are not only inappropriate at the motion-to-dismiss stage, but are barred altogether by one of the statutes. The clear text of the CRA, HAVA, and NVRA, and interpretative case law require that, accepting all the allegations in the Complaint as true, the United States asserts both a cognizable legal theory and has pled sufficient facts to support that theory. Finally, the privacy arguments are also not grounds on which to dismiss the Complaint. Accordingly, Defendants' Motion to Dismiss should be denied.

## I.     THE UNITED STATES HAS A VALID LEGAL CLAIM UNDER THE CIVIL RIGHTS ACT OF 1960.

### A.     The language of the Civil Rights Act of 1960 unambiguously permits the requests.

Title III of the Civil Rights Act of 1960 is entitled "Federal Election Records." CRA § 301, Pub. L. No. 86-449, 74 Stat. 86 (1960). It imposes a "sweeping" obligation on election officials to preserve and, on request, to produce registration records pertaining to federal elections. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). Section 301 provides, in pertinent part, "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701 (emphasis added). Section 303 authorizes the Attorney General of the United States to compel any person "having custody, possession, or control of such record or paper" to make "available for inspection, reproduction, and copying…by the Attorney General or [her] representative." 52 U.S.C. § 20703.

Notwithstanding the CRA's plain language, Defendants argue that the Court must go outside the text of the statute to the legislative history and find that Title III is limited "to investigations of civil rights violations, namely, efforts to prevent eligible voters from voting or registering to vote for illegal reasons like racial discrimination." Defs.' Mot. to Dismiss, ECF No. 32, at 24. No such language appears anywhere in the statutory text. *See* 52 U.S.C. §§ 20701-20706. Moreover, in a decision cited by Defendants, *see* Defs.' Mot. to Dismiss, ECF No. 32, at 6, 9, the court concluded "that the prescribed standard of Section 301 is *clear and unambiguous*…." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855 (M.D. Ala. 1960) (emphasis added). Specifically, Title III functions as "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Lynd*, 306 F.2d at 225. The only language that is required in the Attorney General's demand is that it "was made for the purpose of investigating possible violations of a Federal statute." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (quoting "Senator Keating, one of the principal spokesmen for the bill in the Senate," at 106 Cong. Rec. 7767).

Requiring more by engrafting a requirement of racial discrimination that does not exist in the statute would violate the clear congressional mandate. Where, like here, "the language of an enactment is clear…the words employed are to be taken as the final expression of the meaning intended." *In re Dumont*, 581 F.3d 1104, 1111 (9th Cir. 2009) (quoting *United States v. Missouri Pac. R.R. Co.*, 278 U.S. 269, 278 (1929)). Well established principles of statutory construction foreclose federal courts from rewriting a statute in a manner that better suits a litigant. As the Supreme Court explained, "[t]he judicial function to be exercised in construing a statute is limited to ascertaining the intention of the Legislature therein expressed. A *casus omissus* does not justify judicial legislation." *Ebert v. Poston*, 266 U.S. 548, 554-55 (1925). "[W]here the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended. And in such cases legislative history may not be used to support a construction that adds to or takes from the significance of the words employed." *Missouri Pac.*, 278 U.S. at 278-79 (citations omitted). In that manner, the "judicial function [is] to apply statutes on the basis of what Congress has written, not what Congress might have written." *Connell v. Lima Corp.*, 988 F.3d 1089, 1108 (9th Cir. 2021).

As a result, the United States respectfully submits that the Court must decline Defendants' invitation to rewrite the statute to add a requirement of racial discrimination. *See Ebert*, 266 U.S. at 554 ("It is our judicial function to apply statutes on the basis of what Congress has written, not what Congress might have written.").[2]

**B.    The United States has sufficiently pled a claim for relief under Title III of the Civil Rights Act.**

The filing of a request for federal election records under Title III by the Attorney General "is not the commencement of an ordinary, traditional civil action with all of its trappings." *Lynd*, 306 F.2d at 225. Instead, "it is … comparable to the form of a traditional order to show cause, or

---

[2] Defendants' recitation of what they describe as legislative history for which they seek judicial notice is, therefore, not helpful to the Court in its consideration of Defendants' Motion to Dismiss.

to produce in aid of an order of an administrative agency." *Id.* The Fifth Circuit has described in detail what the Attorney General must allege to satisfy the statute:

> Since it is a special statutory proceeding, it does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure. All that is required is a simple statement by the Attorney General that after a [Section 303] written demand for inspection of records and papers covered in [Section 301], the person against whom an order for production is sought under [Section 305] has failed or refused to make such papers 'available for inspection, reproduction, and copying….

*Id*. at 225-26 (quoting 52 U.S.C. § 20703).

Under the plain language of the statute, "[t]here is no place for any other procedural device or maneuver – either before or during any hearing of the application – to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Id.* at 226. Likewise, there is no basis in the proceedings to challenge "the reasons why the Attorney General considers the records essential…." *Id.* Rather, if the Attorney General has stated in writing the basis and the purpose of the demand, Title III is satisfied, and the records must be produced. 52 U.S.C. § 20703.

The United States has met those requirements. On July 16, 2025, the Attorney General requested that Oregon, through its Secretary of State, fill in the wide gaps of data that the state had not disclosed to the EAC, and to produce its complete voter registration list to include the HAVA identifying numbers. Compl. ¶ 34. On August 14, 2025, the Attorney General made a written demand pursuant to Title III for a current copy of Oregon's computerized Statewide Voter Registration List ("SVRL"), including each registrant's full name, date of birth, residential address, and the HAVA identifying numbers. The demand explained that the purpose was to evaluate the state's compliance with its list-maintenance requirements under federal law and described how the privacy of data would be protected and could be transmitted securely. *Id.* ¶¶ 47-51. Defendants tacitly acknowledge that DOJ provided the "statement of its purpose," required by Section 303. Defs.' Mot. to Dismiss, ECF No. 32, at 21. In a letter dated August 21, 2025, the Secretary refused to cooperate and declined to produce the requested voter records. *Id.* ¶ 55.

Conversely, Defendants argue that the United States failed to describe the basis for its request. Defs.' Mot. to Dismiss, ECF No. 32, at 21. To arrive at that conclusion, Defendants erroneously employ a hyper-technical reading of Section 303. In doing so, they deliberately ignore the detailed basis the United States provided in writing to them in its July 16, 2025, letter. That basis will be restated briefly here.

As the United States explained to Defendants in that letter, the 2024 EAVS Report revealed several anomalies in Oregon's voter registration data inconsistent with reasonable list maintenance efforts. The letter described how Oregon reported nearly as many registered voters as the entire citizen-voting-age population in Oregon, with a registration rate in 2024 of 95.3 percent of the citizen-voting-age population. Compl. ¶ 39. Further, the letter noted that the ratio of active registered voters to the citizen-voting-age population has been unusually high for several years, with Oregon reporting a registration rate of 93.3 percent of citizen voting age population in 2022 and 93.1 percent in 2020. *Id*. Oregon reported that it had removed 111,621 voters, or 3.6% of registered voters, from the list of eligible voters, which is well below the national average of 9.1%. *Id*. ¶ 41. Even more notable, Oregon reported that it removed only 4,417 voters out of a total of 3,060,374 registered voters for failure to respond to a confirmation notice and not voting in the two consecutive federal elections following the notice. *Id*. ¶ 42. Oregon had the lowest number of removals in this category, compared to the total number of registered voters of all states in the survey. *Id*. In Oregon's second letter to the Department, the State still had not explained what its current data-collection, data-entry, and reporting procedures were across all Oregon's counties and what changes were being implemented, how, or when. *Id*. at ¶¶ 38-45. Taken together, the data that Oregon reported to the EAC raised several red flags that necessitated further investigation. Therefore, the Attorney General requested that Oregon, through its Secretary of State, fill in the wide gaps of data that the state had not disclosed to the EAC, and produce its complete voter registration list to include the HAVA identifying numbers. *Id.* ¶ 51.

Defendants deride the serious gaps and red flags in their own voter registration data as being somehow insufficient to "fall within Title III's scope." Defs.' Mot. to Dismiss, at 21. As support for their contention, they take out of context a quote from a Fifth Circuit decision that

statistical evidence "was 'a matter which does not bear any particular importance to the present inquiry.'" *Id.* (quoting *Kennedy v. Bruce*, 298 F.2d 860, 863 & n.2 (5th Cir. 1962)). What Defendants leave out is the reason why evidence bearing on the Attorney General's purpose and basis is immaterial. In *Lynd,* the Fifth Circuit explained, "On the filing of this simple statement by the Attorney General, the Court is required to treat it as a summary proceeding." 306 F.2d at 226. By doing so, the statistics included in the Department's July 10, 2025, letter became immaterial beyond satisfying Section 303's requirement for a basis for the request. Under the language of the statute, "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand, [Section 303], *is not open to judicial review or ascertainment*." *Id.* (emphasis added). [3]

To summarize, the United States identified the basis for its request for federal election records by identifying, in its July 16, 2025, letter to Defendants, voter registration metrics reported by Oregon that raise serious concerns regarding the state of its SVRL. When Defendants failed to produce those records, the United States followed up with a written statement of its purpose: to evaluate Oregon's compliance with list-maintenance requirements under federal law in its August 14, 2025, letter. That correspondence satisfies the plain language in Section 303 of the CRA for a "demand in writing by the Attorney General or [her] representative" including "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. *See generally Coleman*, 313 F.2d at 868 (a written demand "made for the purpose of investigating possible violations of a Federal statute," such as HAVA and the NVRA, is sufficient to comply with Section 303).

### C.    The United States is entitled to unredacted "copying" and "reproduction" of Defendants' federal election records.

Section 303's language provides that "[a]ny record or paper required by [Section 301] of this title to be retained and preserved shall" upon written demand by the Attorney General or her

---

[3] Amici also speculate that the Department is collecting the SVRL for nefarious purposes. As explained in Section IV of this brief, the United States is complying with the Privacy Act, and the use of the data is limited to the enforcement of the list maintenance requirements in HAVA and the NVRA. "[I]t is pure speculation to suggest that the Census Bureau will not comply with its legal obligations to ensure the privacy of respondents' data…." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Commerce*, 928 F.3d 95, 102 (D.C. Cir. 2019) (citation omitted).

representative, stating the basis and purpose, "be made available for inspection, *reproduction, and copying*…" 52 U.S.C. § 20703 (emphasis added). Records that must be produced to the United States pursuant to this demand cannot be contested as long as the records fall within Section 301's broad definition: "all records and papers which come into [the officer of election's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting" in a federal election "for a period of twenty-two months from the date of any general, special or primary election" for federal office. 52 U.S.C. § 20701. As the Fifth Circuit explained in *Lynd*, "the scope of the order to produce" is "not open to judicial review or ascertainment." 306 F.2d at 226. "This is so because the papers and records subject to inspection and demand have been specifically identified by Congress," as set out in Section 301. *Id.* "The incorporated standard of [Section 301] is *sweeping*." *Id.* (emphasis added). The question is only "open for determination" by the Court, if "a genuine dispute … arises as to whether or not any specified particular paper or record comes within this broad statutory classification of 'all records and papers … relating to any … act requisite to voting….'" *Id.*

Defendants do not contest that the request by the United States for Oregon's SVRL for the statutory 22-month period comes within Section 301's "sweeping" scope. *Id.* Apparently acknowledging the futility of their position, Defendants again ask the Court to legislate two limitations that are conspicuously absent from Title III: that the Attorney General be restricted to "inspection" that is limited to "a redacted version of Oregon's voter registration list…." Defs.' Mot. to Dismiss, ECF No. 32, at 22. The Tenth Circuit recently ruled against New Mexico's use restrictions on voters' data when disclosure was demanded by a non-profit party. *Voter Reference Found., LLC v. Torrez*, No. 24-2133, 2025 WL 3280300, at *7-10 (10th Cir. Nov. 25, 2025). The court held that New Mexico's use restrictions and data restriction ban were obstacles to the accomplishment and execution of the full purposes and objections of Congress and were preempted by the NVRA. *Id.* at *10, *14.  The weakness of Defendants' position is so transparent that they are not even troubled to explain how the Court can limit the United States to "inspection" in the face of Section 303's references to "reproduction" and "copying." Defs.' Mot. to Dismiss, ECF No. 32, at 22. Were Defendants' position to be adopted, it would eviscerate Title III. The

Attorney General can only meaningfully investigate and enforce the list maintenance requirements of HAVA and the NVRA by having access to the voter identification numbers required by federal law. For each voter, that includes their driver's license number, last four digits of their social security number, or other identifying number. *See* 52 U.S.C. § 21083(a)(5)(A). That information is necessary to identify duplicate registration records, registrants who have moved, ineligible registrants, and registrants who have died or otherwise are no longer eligible to vote in federal elections.[4] There is no question that enforcement of the list maintenance requirements of HAVA and the NVRA are for "the purpose of investigating possible violations of a Federal statute." *Coleman*, 313 F.2d at 868.

Indeed, the data the United States has requested under the CRA is the same that twenty-five states and the District of Columbia routinely share through the Electronic Registration Information Center, ("ERIC"), to facilitate their compliance with federal list-maintenance requirements.[5] Similarly, private parties have been granted access to even more detailed voter data than what the United States has requested where necessary to bring actions to enforce federal rights. *See Coal. for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937, at *2 (D.N.H. May 27, 2025) (ACLU compelled production of "copy of the New Hampshire statewide voter database and all documents concerning the use of the statewide voter database, including instruction manuals or other guides concerning the data fields contained in the database and their correct interpretation."), *appeal docketed*, No. 25-1585 (1st Cir. June 17, 2025).

Consequently, United States is entitled to production of Oregon's unredacted SVRL under the plain language of Section 303 of the CRA. *See* 52 U.S.C. § 20703.

---

[4] *See generally* 52 U.S.C. § 20507(a)(4) ("In the administration of voter registration for elections for federal office, each State shall – (4) conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of – (A) the death of the registrant; or (B) a change in the residence of the registrant…."); 52 U.S.C. § 21083(a)(4) ("The State election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly, including… (A) A system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters….").

[5] *See* ERIC, ERIC Overview, *available at* https://ericstates.org/ (last visited Dec. 3, 2025).

## II.    THE UNITED STATES HAS A VALID LEGAL CLAIM UNDER THE NVRA.

Defendants' motion to dismiss the NVRA claim must be denied. The plain text of Section 8(i) of the NVRA requires states to make available "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters…." 52 U.S.C. § 20507(i)(1). That includes the voter registration list, which necessarily must be used to ensure the accuracy of the official list of eligible voters, and is the some of the best evidence of a state's voter list maintenance efforts. The United States has properly alleged in its Complaint that Defendants have failed to engage in reasonable list maintenance efforts and have refused to produce records associated with those efforts. For the same reasons described in the preceding discussion, all the well-pled allegations in the Complaint must be accepted as true. As stated repeatedly throughout this brief, Oregon's voter registration metrics are strongly suggestive of list maintenance violations. It is wholly improper to determine, based upon the pleadings alone, that Defendants have "complied with the requirements of the NVRA." Defs.' Mot. to Dismiss, ECF No. 32 at 15.

Finally, it is unnecessary to address in any detail the citations of authority that Defendants can deny the United States what they describe as "highly sensitive personal information" of voters. *Id.* at 22. All the decisions that Defendants summarize involved efforts by *private organizations* to obtain that data and accordingly are distinguishable from this action. Here, the United States is seeking certain data in the SVRL in its efforts to enforce the NVRA in Oregon. As discussed in the final section, federal privacy laws that apply to the Attorney General and the Department of Justice ensure that no sensitive voter data or information will be used, disseminated, nor disclosed in a way inconsistent with the law. Private plaintiffs are not subject to those federal privacy laws, which makes the analysis of whether to redact some personally identifiable information different. Consequently, Defendants' motion to dismiss the NVRA claim should be denied.[6]

---

[6] Contrary to what Defendants argue on page 15 of their brief, to the extent Oregon law purports to bar the United States from obtaining federal election data necessary to enforce the NVRA, that conflicting law is preempted. *Voter Reference Found., LLC*, at *7-10.

## III. THE UNITED STATES HAS A VALID LEGAL CLAIM UNDER HAVA.

### A. Defendants have failed to engage in reasonable list maintenance practices resulting in an inaccurate voter roll.

Congress enacted HAVA "to improve our country's election system." H.R. Rep. 107-329(I) at 31 (2001). The Act recognizes that "the federal government can play a valuable [role]" in assisting states modernize their elections systems. *Id.* at 32. HAVA requires states to implement a computerized SVRL that is coordinated with other state agency databases. *See* 52 U.S.C. § 21083(a)(1)(A). It also establishes "[m]inimum standard[s] for accuracy of State voter registration records." 52 U.S.C. § 21083(a)(4). Under HAVA Section 303, a state's "election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" and "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." *Id.* HAVA's list maintenance requirements apply to all states, including Oregon. *See Colón-Marrero v. Vélez*, 813 F.3d 1, 14 (1st Cir. 2016) (collecting citations).

Defendants acknowledge HAVA includes list maintenance requirements that apply to all states, which includes Oregon. *See* Defs.' Mot. to Dismiss, ECF No. 32, at 22. Nevertheless, Defendants assert that the United States "cites no HAVA provision for authority to demand documents." *Id.* at 17. Defendants cite to *Peters v. United States*, 853 F.2d 692, 696 (9th Cir. 1988) to assert that the "authority of government agency to issue document request 'created solely by statute.'" *Id. Peters* is inapposite. *Peters* concerns subpoena authority, not a request for information the United States did here. *Peters*, 853 F.2d at 696 ("authority of an administrative agency to issue *subpoenas for investigatory purposes* is created solely by statute.") (emphasis added).

The balance of Defendants' arguments asks the Court to determine that Defendants comply with HAVA on the face of the incomplete and self-serving responses they provided in their correspondence with the United States. Compl. ¶¶ 52-64. Defendants misunderstand the HAVA count in the Complaint. The allegation is that Oregon is failing to provide information that would allow the United States to determine compliance with HAVA.

The United States has reason to be concerned about whether there may be HAVA violations. The Complaint identified numerous anomalies from voter registration data that Oregon reported in the 2024 EAVS Report, which show that Defendants' list maintenance program may not comply with HAVA. Id. ¶¶ 38-44. The Court must read these allegations in the Complaint in the light most favorable to the United States and accept all those material allegations as true. *Sanders*, 794 F.2d at 481. At this early juncture, the Court can reasonably conclude that the incomplete data provided by Oregon to the EAC makes the request for the SVRL "plausible on its face" to help determine compliance with HAVA. *Iqbal*, 556 U.S. at 678. The United States plainly has stated a cognizable legal theory under HAVA and pled sufficient facts to support that theory. As a result, dismissal is inappropriate. *Id.* Defendants' motion to dismiss the HAVA claim, therefore, must be denied.

### B.     HAVA does not have a public disclosure requirement, because, unlike the NVRA, there is no private right of action under the Act.

Defendants further argue that the HAVA claim must be dismissed because HAVA has no standalone, public disclosure provision. Defs.' Mot. to Dismiss, ECF No. 32, at 16. That is true, and it explains why the United States is entitled to the federal election records it has demanded through its HAVA claim. The only enforcement provision in HAVA authorizing a cause of action in federal court is found at Section 401, which provides that enforcement of the Act is vested solely in the Attorney General. *See* 52 U.S.C. § 21111. Senator Dodd of Connecticut, a HAVA conferee and sponsor, recognized that the Act did not have a private right of action. *See* 148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002). As a result, the Supreme Court has held that private parties may not enforce Section 303, including requests for records under that provision. *See Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (per curiam) ("Respondents, however, are not sufficiently likely to prevail on the question whether Congress has authorized the District Court to enforce § 303 in an action brought by a private litigant to justify the issuance of a TRO."). Congress unsurprisingly did not include a public disclosure requirement, such as the one included in Section 8(i) of the NVRA, because unlike the NVRA, private parties cannot enforce

HAVA.

At the same time, however, that does not leave the United States without recourse to seek list maintenance records under HAVA. Rather, it may do so through the ordinary investigative process necessary to enforce Section 303 of HAVA. The only way to determine compliance with HAVA's requirement to provide the driver's license number or the last four digits of the Social Security Number in Section 303(a)(5)(A) is to review the SVRL to determine whether that information is being collected consistently. *See* 52 U.S.C. § 21083(a)(5)(A). Here, the CRA cases are also instructive. Under the CRA, election officials are required to preserve and produce federal election records "to facilitate the investigation … before suit is filed." *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960) (per curiam). By comparison, the demand for records that the United States has made under HAVA falls into the conventional realm of discovery: "The chief purpose of [Federal] Rule [of Civil Procedure] … is to give a party litigant the right to have records produced after suit has been filed." *Id.* That is all the United States is doing in this case. It seeks the necessary records to establish its claim under HAVA to determine whether Defendants are violating the list maintenance requirements in Section 303 of the Act.

Accordingly, Defendants' motion to dismiss the HAVA claim should be denied.

## IV. THE UNITED STATES IS COMPLYING WITH APPLICABLE PRIVACY LAWS.

Oregon fails to raise legitimate privacy issues to mandate a dismissal. The United States does not dispute that the Privacy Act applies here, and the United States is complying with those requirements.  The First Amendment does not prohibit the Department's collection of voter information to assess compliance with the NVRA and HAVA.  The requirement for a Privacy Impact Assessment under E-Government Act does not apply to the list maintenance activities being conducted by the United States under the NVRA and HAVA. Similarly, the Driver's Privacy Protection Act does not limit the United States' ability to conduct list maintenance activities.

A.       **The United States is Complying with the Privacy Act.**

Defendants argue that the United States must comply with the Privacy Act, in spite of the fact that the United States has been doing just that. However, there is no requirement that the United States needs to plead its compliance with the Privacy Act in every complaint that may contain personally identifiable information.

The voter information that the Department is collecting is maintained consistent with Privacy Act protections as explained at Civil Rights Division - Department of Justice - Privacy Policy.[7] The full list of routine uses for this collection of information can be found in the systems of records notices ("SORN") titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records", 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017). It should be noted that the statutes cited for routine use include the NVRA, HAVA, and the Civil Rights Act of 1960, and the United States made its requests pursuant to those statutes. The records in the system of records are kept under the authority of 44 U.S.C. § 3101 and in the ordinary course of fulfilling the responsibility assigned to the Civil Rights Division under the provisions of 28 C.F.R. §§ 0.50, 0.51.

Similarly, to the extent that Defendants are concerned about the transport of such data to the United States, the Department uses a secure file-sharing system, Justice Enterprise File Sharing ("JEFS").  That system implements strict access controls to ensure that each user can only access their own files and is also covered by SORNs.[8]

Moreover, the Privacy Act does not bar the disclosure of Oregon's SVRL to the United States. The Privacy Act regulates federal agencies' collection, maintenance, and disclosure of information within their own systems of records—it does not restrict the ability of state actors to share information with federal agencies. The statute's plain language confirms that it applies only to federal "agencies" as defined in 5 U.S.C. § 552a(a)(1), meaning "any executive department,

---

[7] *See* https://civilrights.justice.gov/privacy-policy#:~:text=Our%20Statutes-,Privacy%20Act%20Statement,the%20scope%20of%20our%20jurisdiction.

[8] *See* JUSTICE/DOJ-014, Department of Justice Employee Directory Systems, last published in full at 74 Fed. Reg. 57194 (Nov. 4, 2009), and modified at 82 Fed. Reg. 24151, 24153 (May 25, 2017); JUSTICE/DOJ-002, Department of Justice Computer Systems Activity and Access Records, last published in full at 64 Fed. Reg. 73585-02 (Dec. 30, 1999), and modified at 66 Fed. Reg. 8425-02 (Jan. 31, 2001) and 82 Fed. Reg. 24147-01 (May 25, 2017).

military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government." 5 U.S.C. § 552(f)(1). State and local entities fall outside that definition.  The Privacy Act erects "certain safeguards for an individual against an invasion of personal privacy," Pub. L. No. 93–579, § 2(5)(B), 88 Stat. 1896 (1974), only within the scope of federal agency record systems.  There is no basis for Oregon to fail to disclose information to a federal agency for law enforcement purposes, particularly here, where the United States is complying with the provisions of the Privacy Act.

### B.    The First Amendment does not Prohibit NVRA and HAVA Enforcement.

The United States is not violating 5 U.S.C. § 552a(e)(7) of the Privacy Act by requesting Oregon's SVRL. Defendants contend that the United States violates the First Amendment, because the request for the SVRL is not "pertinent to and within the scope of an authorized law enforcement activity" under 5 U.S.C. § 552a(e)(7).  Defs.' Mot. to Dismiss, ECF No. 32, at 9.

Initially, the United States made it clear that it seeks the SVRL to enforce Section 8 of the NVRA and Section 303 of HAVA regarding list maintenance. Both of those statutes were enacted pursuant to the Elections Clause and have broad mandates. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1,7-9, n.1 (2013) (discussing broad scope of Elections Clause); *Mi Familia Vota v. Fontes*, 129 F.4th 691, 712 (9th Cir. 2025) (citing *Voting Rts. Coal. v. Wilson,* 60 F.3d 1411, 1413-14 (9th Cir. 1995) as rejecting a challenge to the constitutionality of the NVRA in part because "the Supreme Court has read the grant of power to Congress in Article I, section 4 [of the U.S. Constitution] as quite broad"). HAVA requires the driver's license number or the last four digits of the Social Security Number in Section 303(a)(5)(A), and the Attorney General will be assessing Oregon's compliance with that provision. *See* 52 U.S.C. § 21083(a)(5)(A). Section 8(a)(4) of the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of … the death of the registrant," or "a change in the residence of the registrant…" 52 U.S.C. § 20507 (a)(4). A registered voter list that includes all fields will allow for more accurate matching when determining whether a person on the voter registration list is

deceased or in finding duplicate registrations.

The work of ERIC supports this proposition. ERIC is a private organization whose mission includes, among other things, the means "to assist states in improving the accuracy of America's voter rolls," and Oregon is a member of ERIC.[9] According to ERIC's website, "Members submit dates of birth, driver's license/ID card numbers, and Social Security numbers to ERIC…." *Id.* "At least every 60 days, each member submits their voter registration data and licensing and identification data from their MVD [motor vehicle departments] to ERIC. ERIC refers to these data as Member Data. Data fields related to name, address, driver's license or state ID number, last four digits of social security number, date of birth, and activity date are required, if present. Members also submit information on current record status (e.g., is the record "active" or "cancelled"), phone number, and email address when available. These fields improve the quality of the data matching process." *Id.* List maintenance is an authorized enforcement activity, and Oregon's voter registration list is integral to that effort.

C.    **The E-Government Act does not bar Claims by the United States.**

The E-Government Act neither authorizes dismissal of this case nor limits the United States' ability to bring suit. The E-Government Act is not applicable to the United States' enforcement of NVRA and HAVA. The United States is not initiating a new process whereby it is contacting individuals for information as contemplated by Pub. L. No. 107–347, § 208(b)(1)(A)(ii)(II), which "includes any information in an identifiable form permitting the physical or online contacting of a specific individual, if identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons, other than agencies, instrumentalities, or employees of the Federal Government." [10]  The request is made to the State of Oregon to provide a voter registration list they already maintain, pursuant to federal law to

---

[9] *FAQ's*, ERIC, (Dec. 4, 2025) https://ericstates.org/faq/; *see id.*, "Which States Are Members of ERIC?" https://ericstates.org/about/; "Security" https://ericstates.org/security/

[10] The Census collects information from individuals and therefore, regularly conducts privacy impact assessments. The court found collection did not begin until the Census was mailed out to individuals in *Elec. Priv. Info. Ctr. v. U.S. Dep't of Commerce*, 356 F. Supp 85, 90 (D.D.C. 2019) dismissed on other grounds 928 F.3d 95 (D.C. Cir. 2019).

analyze their federally required list maintenance.[11]

Applying the E-Government Act to the enforcement of voting statutes would lead to an absurd result, whereby the Department of Justice would need to do thousands of Privacy Impact Assessments whenever the Department gathered any voter data to enforce the Voting Rights Act, NVRA, HAVA, or the Uniform and Overseas Citizens Voting Act (UOCAVA).  Nor does the purpose of the privacy provision in the E-Government Act suggest it was meant to encompass the enforcement provisions of all voting laws where voter data is examined.  *See* Pub. L. No. 107–347, § 208(a).

Even if the Court found the E-Government Act applies here—and it should not—Defendants' reliance on *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297 (D.D.C. 2017), *aff'd,* 878 F.3d 371 (D.C. Cir. 2017) ("EPIC"), does not support dismissal of a complaint based on an alleged failure to conduct a PIA. The plaintiff in *EPIC* sought to enjoin a federal commission's collection of state voter information, claiming the commission had failed to prepare a PIA under Section 208 of the E-Government Act. The D.C. Circuit affirmed dismissal of the claim on standing grounds, finding that "As we read it, the provision is intended to protect *individuals*—in the present context, voters—by requiring an agency to fully consider their privacy before collecting their personal information. EPIC is not a voter and is therefore not the type of plaintiff the Congress had in mind." *EPIC*, 878 F.3d at 378 (D.C. Cir. 2017).

**D.    The Driver's Privacy Protection Act does not Bar Claims by the United States.**

The Driver's Privacy Protection Act (DPPA) generally prohibits the disclosure of "personal information" obtained by a state Department of Motor Vehicles in connection with a motor vehicle record. 18 U.S.C. §§ 2721(a), 2725(1), (3), (4). The statute explicitly contains

---

[11] When the Civil Rights Division began use of ServiceNow (SNOW), a FedRAMP High-compliant Software as a Service (SaaS) cloud-hosting provider offering a suite of natively integrated applications designed to support Information Technology Service Management (ITSM), resource management, and shared support services, it conducted a Privacy Act Assessment ("PIA") as required by the E-Government Act. *See* Office of Privacy and Civil Liberties | DOJ Privacy Impact Assessments (visited December 4, 2025).

exceptions that permit certain governmental uses. Under 18 U.S.C. § 2721 (b)(1), disclosure is allowed "for use by any government agency … in carrying out its functions," including law enforcement or other regulatory enforcement purposes. This statutory language demonstrates that the DPPA was not intended to block all government access to DMV records.

The Supreme Court in *Reno v. Condon*, 528 U.S. 141 (2000) confirmed this principle. In that case, the court upheld the DPPA against a Tenth Amendment challenge, emphasizing that the statute regulates the use of DMV information rather than the state itself. *Id*. at 151. The court explicitly recognized that the DPPA does not restrict a state agency's use of personal information for its own functions, including enforcement and other official governmental activities. As the court stated, "The DPPA *permits* DMVs to disclose personal information from motor vehicle records for a number of purposes." *Id*. at 145.

The DPPA's prohibition is clearly not implicated in the present case. The DOJ is a government agency performing a statutorily mandated function —verifying the accuracy of voter registration records maintained by state and local entities. Under the governmental-function exemption in § 2721(b)(1), the DOJ's use of DMV-provided information is permissible, even though the information originates from a motor vehicle record. Transfers of DMV data to government agencies for official functions, including voter registration administration, are therefore consistent with the DPPA and fall squarely within the statute's exceptions.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny the Motion to Dismiss by Defendants.

DATED: December 8, 2025                    Respectfully submitted,

                                           HARMEET K. DHILLON
                                           Assistant Attorney General
                                           Civil Rights Division


                                           /s/ *David D. Vandenberg*
                                           MAUREEN RIORDAN
                                           Senior Counsel, Voting Section

                                           TIMOTHY F. MELLETT
                                           DAVID D. VANDENBERG
                                           Trial Attorneys, Voting Section
                                           Civil Rights Division
                                           U.S. Department of Justice
                                           4 Constitution Square
                                           150 M Street NE, Room 8.143
                                           Washington, D.C. 20002
                                           Telephone: (202) 307-2767
                                           Maureen.Riordan2@usdoj.gov
                                           Timothy.F.Mellett@usdoj.gov
                                           David.Vandenberg@usdoj.gov
                                           *Attorneys for the United States*

### CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ David D. Vandenberg*
David D. Vandenberg