**HARRY WILSON**, OSB No. 077214
harrywilson@markowitzherbold.com
**DALLAS DELUCA**, OSB No. 072992
dallasdeluca@markowitzherbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: 503-295-3085

**CHRISTOPHER D. DODGE**
D.C. Bar. No. 90011587
**BRANDEN LEWISTON**
D.C. Bar No. 252550
ELIAS LAW GROUP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
cdodge@elias.law
blewiston@elias.law

**ABHA KHANNA**
WA Bar No. 42612
**WALKER McKUSICK**
WA Bar No. 63205
ELIAS LAW GROUP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
akhanna@elias.law
wmckusick@elias.law

*Attorneys for Intervenors
Our Oregon, Dan DiIulio, Stephen Gomez,
and Emma Craddock*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### EUGENE DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

v.

THE STATE OF OREGON; and
TOBIAS READ, in his official capacity as the
Oregon Secretary of State,

               Defendants.

Case No. 6:25-CV-01666-MTK

**<u>INTERVENORS' REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

I.   DOJ fails to state a claim under the Civil Rights Act of 1960.............................. 3

   A.   DOJ's demand failed to state a proper basis and purpose. ................................. 3

   B.   Title III permits redacting sensitive voter information. ..................................... 7

   C.   The voter list DOJ seeks is not a record or paper that came into Oregon election officials' possession. ....................................................................................... 8

II.  DOJ fails to state a claim under the NVRA. ....................................................... 9

III. DOJ fails to state a claim under HAVA............................................................ 10

CONCLUSION.................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases:**

*Alabama ex rel. Gallion v. Rogers*,
  187 F Supp 848 (M.D. Ala. 1960) ................................................................. 4

*Am. C.R. Union v. Phila. City Comm'rs*,
  872 F3d 175 (3d Cir. 2017) ......................................................................... 12

*Arizona v. Inter Tribal Council of Ariz.*,
  570 US 1 (2013) ......................................................................................... 12

*Bellitto v. Snipes*,
  935 F3d 1192 (11th Cir. 2019) ....................................................................... 8

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
  854 F3d 683 (D.C. Cir. 2017) ......................................................................... 5

*CFPB v. Source for Pub. Data, L.P.*,
  903 F3d 456 (5th Cir. 2018) ........................................................................... 5

*Coleman v. Kennedy*,
  313 F2d 867 (5th Cir. 1963) ....................................................................... 3, 4

*Connell v. Lima Corp.*,
  988 F3d 1089 (9th Cir. 2021) .................................................................... 9, 10

*Davis v. Mich. Dep't of Treasury*,
  489 US 803 (1989) ......................................................................................... 6

*Deal v. United States*,
  508 US 129 (1993) ......................................................................................... 6

*Gonzalez v. Arizona*,
  677 F3d 383 (9th Cir. 2012) ......................................................................... 12

*Home Depot U.S.A., Inc. v. Jackson*,
  587 US 435 (2019) ......................................................................................... 6

*In re Admin. Subpoena No. 25-1431-019*,
  No. 1:25-MC-91324-MJJ, 2025 WL 2607784 (D. Mass. Sep. 9, 2025) ........... 5

*In re Coleman*,
  208 F Supp 199 (S.D. Miss. 1962) ................................................................. 3

*In re Subpoena No. 25-1431-014*,
　No. MC 25-39, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025) ........................................... 5

*Just. v. Rockwell Collins, Inc.*,
　117 F Supp 3d 1119 (D. Or. 2015) ................................................................................. 8

*Kennedy v. Bruce*,
　298 F2d 860 (5th Cir. 1962) ..................................................................................... 3, 4

*Kennedy v. Lynd*,
　306 F2d 222 (5th Cir. 1962) ................................................................................. 3, 4, 7

*Khoja v. Orexigen Therapeutics, Inc.*,
　899 F3d 988 (9th Cir. 2018) ...................................................................................... 1

*Leupold & Stevens, Inc. v. Lightforce USA, Inc.*,
　501 F Supp 3d 987 (D. Or. 2020) ................................................................................. 8

*McCloskey v. Mueller*,
　446 F3d 262 (1st Cir. 2006) ...................................................................................... 13

*Navarro v. Block*,
　250 F3d 729 (9th Cir. 2001) ...................................................................................... 13

*Pub. Int. Legal Found., Inc. v. Bellows*,
　92 F4th 36 (1st Cir. 2024) ......................................................................................... 7

*RNC v. Benson*,
　754 F Supp 3d 773 (W.D. Mich. 2024) ....................................................................... 12

*Robinson v. Shell Oil Co.*,
　519 US 337 (1997) ................................................................................................... 6

*Schneider v. Cal. Dep't of Corrs.*,
　151 F3d 1194 (9th Cir. 1998) .................................................................................... 11

*United States v. Ass'n of Citizens Councils of La.*,
　187 F Supp 846 (W.D. La. 1960) ................................................................................. 4

*United States v. Baldon*,
　956 F3d 1115 (9th Cir. 2020) ..................................................................................... 8

*United States v. Evans*,
　2025 No. 1:25-cv-4403 (D.D.C. 2025) .......................................................................... 1

*United States v. Galvin,*
2025 No. 1:25-cv-13816 (D. Mass. 2025) ........................................................ 1

*United States v. Matthews,*
2025 No. 3:25-cv-3398 (C.D. Ill. 2025) ........................................................... 1

*United States v. Powell,*
379 US 48 (1964).............................................................................................. 4

*United States v. Raffensperger,*
2025 No. 5:25-cv-0548 (M.D. Ga. 2025) ......................................................... 1

*United States v. Wis. Elections Comm'n,*
2025 No. 3:25-cv-1036 (W.D. Wis. 2025) ........................................................ 1

*Util. Air Regul. Grp. v. EPA,*
573 US 302 (2014)............................................................................................ 6

*Voter Reference Found., LLC v. Torrez,*
Nos. 24-2133, 24-2141, 2025 WL 3280300 (10th Cir. Nov. 25, 2025) ............ 7

*Webb v. Trader Joe's Co.,*
999 F3d 1196 (9th Cir. 2021) ......................................................................... 13

*West Virginia v. EPA,*
597 US 697 (2022)............................................................................................ 6

*Yates v. United States,*
574 US 528 (2015)............................................................................................ 6

**Statutes:**

52 U.S.C. § 20501 ............................................................................................ 3

52 U.S.C. § 20507 ..................................................................................... 10, 12

52 U.S.C. § 20701 ............................................................................................ 8

52 U.S.C. § 20703 ............................................................................................ 3

52 U.S.C. § 21083 ............................................................................................ 8

N.M. Stat. Ann. 1.5.5 ....................................................................................... 7

Or. Rev. Stat. § 247.948(2) .......................................................................... 7, 10

**Federal Rules:**

Fed. R. Civ. P. 12 ................................................................................................................. 13

**Other Authorities:**

Liz Landers & Doug Adams, *How the Trump Administration Is Trying to Change the Way People Vote*, PBS News Hour, Sep. 26, 2025, https://perma.cc/7V2J-QY9V ................................................................................................................. 10

## INTRODUCTION

DOJ has yet to identify a single instance in the history of the NVRA, HAVA, or the Civil Rights Act of 1960 in which a court read those statutes to compel a state to turn over its full, *unredacted* voter list—notwithstanding state laws protecting that underlying data—in response to demands from the federal government. This is unsurprising—not only is DOJ's demand unprecedented, those statutes simply do not authorize the relief DOJ seeks.

Indeed, since filing this suit, DOJ appears to have realized the NVRA and HAVA offer it no support. In its most recent lawsuits to obtain other states' unredacted voter lists, DOJ has jettisoned its NVRA and HAVA claims and pinned its hopes solely on the Civil Rights Act.[1] But DOJ's claim under Title III of the Civil Rights Act fails as a matter of law. Even if Title III did extend to Oregon's internally generated voter list (and DOJ makes no effort to respond to the argument that it does not—or to any arguments made uniquely in Intervenors' motion to dismiss

---

[1] DOJ has now sued 20 states plus D.C., including Oregon. In its first seven suits, DOJ alleged claims under the NVRA, HAVA, and the Civil Rights Act. In the most recent fourteen suits, it proceeds under the Civil Rights Act only. *See* Compl., *United States v. Albence*, No. 1:25-cv-01453 (D. Del. Dec. 2, 2025); Compl., *United States v. DeMarinis*, No. 1:25-cv-03934 (D. Md. Dec. 1, 2025); Compl., *United States v. Oliver*, No. 1:25-cv-01193 (D.N.M. Dec. 2, 2025); Compl., *United States v. Amore*, No. 1:25-cv-00639 (D.R.I. Dec. 2, 2025); Compl., *United States v. Hanzas*, No. 2:25-cv-00903 (D. Vt. Dec. 1, 2025); Compl., *United States v. Hobbs*, No. 3:25-cv-06078 (W.D. Wash. Dec. 2, 2025); Compl., *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo. Dec. 11, 2025); Compl., *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Dec. 11, 2025); Compl., *United States v. Aguilar*, No. 3:25-cv-00728 (D. Nev. Dec. 11, 2025); Compl., *United States v. Galvin*, No. 1:25-cv-13816 (D. Mass. Dec. 11, 2025); Compl., *United States v. Raffensperger*, No. 5:25-cv-0548 (M.D. Ga. Dec. 18, 2025); Compl., *United States v. Wis. Elections Comm'n*, No. 3:25-cv-1036 (W.D. Wis. Dec. 18, 2025); Compl., *United States v. Matthews*, No. 3:25-cv-3398 (C.D. Ill. Dec. 18, 2025); Compl., *United States v. Evans*, No. 1:25-cv-4403 (D.D.C. Dec. 18, 2025); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." (internal quotations marks and citation omitted)).

at all, thereby conceding them), DOJ's claim still fails.[2] Its demand for Oregon's voter list lacked a valid statement of basis and purpose, as the statute requires, and nothing in Title III prohibits states from redacting sensitive, personal voter information that is nearly universally protected by state law, including in Oregon.

DOJ's NVRA and HAVA claims fare no better. DOJ is wrong to suggest it has special inspection rights under the NVRA—the statute has a single disclosure provision, which grants DOJ and the general public the exact same inspection rights. And because states may redact sensitive personal information before exposing registration records to public inspection, it follows that states may redact the same personal information before inspection by DOJ. No statutory basis exists for aggrandizing DOJ's NVRA inspection rights over the general public's. As to HAVA, DOJ has no choice but to admit that the law does not contain *any* disclosure provision whatsoever. Nonetheless, DOJ tries to resurrect its HAVA claim by arguing that Oregon has violated the NVRA's *substantive* list-maintenance requirements. But that is simply not the claim DOJ pleaded. DOJ cannot recast its claim in its opposition brief. In any event, nothing in DOJ's complaint or papers offers any plausible allegations that Oregon has violated any list maintenance obligation.

At bottom, no federal law authorizes DOJ's demand to intrude on the privacy rights of Oregon voters. The Court should thus dismiss DOJ's complaint for failure to state a claim.

---

[2] DOJ absolutely was required to respond to Intervenors' motion to dismiss—if it had any arguments to make in opposition. That motion was filed (initially as a proposed motion to dismiss) on the same day that the State Defendants moved to dismiss. *See* ECF Nos. 31 & 32. The Court then granted intervention and scheduled a hearing on both motions to dismiss before DOJ filed its opposition. *See* ECF Nos. 52, 54, & 57. And even if DOJ's opposition to Intervenors' motion to dismiss were due 14 days after intervention was granted on December 5, *see* D. Or. L.R. 7(e), DOJ would have been required to respond—at the latest—by December 19.

## ARGUMENT

**I.**     **DOJ fails to state a claim under the Civil Rights Act of 1960.**

**A.**     **DOJ's demand failed to state a proper basis and purpose.**

Title III imposes a key limitation that DOJ gives short shrift—it requires DOJ to provide "the basis and the purpose" of its demand to election officials. 52 U.S.C. § 20703. DOJ's demand to Oregon fails on both fronts.

DOJ's demand to Oregon did not provide *any* basis for believing Oregon violated any federal voting rights law—or any federal law, for that matter. *See* Mot. at 18–19; *see also* Compl. ¶ 51 (alleging DOJ stated the purpose for its demand was to "ascertain Oregon's compliance" with the NVRA and HAVA, but failing to allege DOJ stated any basis for its demand). That immediately distinguishes this case from the authorities DOJ cites—in each, DOJ provided an explicit statement of "basis" *and* "purpose" as required by Title III. In *Kennedy v. Lynd*, for instance, DOJ's demand letter to election officials said:

> This demand is based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction. The purpose of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

306 F.2d 222, 229 n.6 (5th Cir. 1962) (internal quotation marks omitted); *see also Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962) (same); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962) (same), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963). That demand clearly stated a basis for believing the recipient counties had infringed on the right to vote *and* a purpose for the demand for records. DOJ's failure here to plead that it stated any comparable basis for its demand to Oregon election officials is fatal to its claim.[3]

---

[3] DOJ attempts to manufacture an after-the-fact—and highly implausible—basis for its request.

DOJ's opposition also confirms it lacks a proper "purpose" for its demand. It acknowledges that the alleged purpose of its demand is to assess Oregon's voter list maintenance under the NVRA and HAVA, *see* Opp. at 9—statutes passed decades after the Civil Rights Act of 1960 that have nothing to do with the denial of the right to vote and, in the case of the NVRA, have distinct and carefully calibrated disclosure requirements designed by Congress. That dooms DOJ's Title III claim. As DOJ's cited cases show, Title III authorizes investigations into *the denial of the right to vote*. *See* *Lynd*, 306 F.2d at 228; *Bruce*, 298 F.2d at 861; *Coleman*, 313 F.2d at 868; *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 851 (M.D. Ala. 1960), *aff'd sub nom.* *Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960) (per curiam). DOJ does not cite any authority supporting its attempt to use Title III for different purposes entirely.

DOJ's only response is to seize on an out-of-circuit opinion arising out of Mississippi and Louisiana in 1962 to claim that DOJ's asserted purpose in making a Title III demand is "not open to judicial review," no matter how implausible or how disconnected it may be from the statute it claims to seek to enforce. Opp. 11–12 (quoting *Lynd*, 306 F.2d at 226). That bold assertion flies in the face of decades of precedent. Just two years after *Lynd*, the Supreme Court squarely rejected the Fifth Circuit's reasoning in *United States v. Powell*, 379 U.S. 48, 57–58 (1964), which concerned a government request for a district court to enforce a tax subpoena. *See id.* The Supreme Court held that to invoke the powers of a federal court to enforce the subpoena, the government

---

Opp. at 10–11 (suggesting Oregon's voter registration levels are too high). This is insufficient for numerous reasons, including because high levels of voter registration alone do not suggest a violation of federal law—particularly since one of the NVRA's purposes is to *encourage* voter registration, *see* 52 U.S.C. § 20501—and because Title III requires DOJ's initial "demand" to contain the statement of basis and purpose and so does not permit DOJ to concoct a basis in response to a motion to dismiss. *Id.* § 20703.

must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose," notwithstanding broad statutory language underlying the subpoena in that case. *See id.* As *Powell* explained, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* at 58 (noting "an abuse would take place if the summons had been issued for an improper purpose"). *Lynd*'s refusal to engage in judicial review of government document requests is thus simply not the law.

Since *Powell*, courts—including the circuit court that issued *Lynd*—have regularly subjected government document requests to judicial review, including probing the basis and purpose for the requests. *E.g.*, *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into the sufficiency of the basis and purpose of demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689–90 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose for civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing") (internal quotation marks and citation omitted). Just in the past few months, multiple district courts have quashed subpoenas when DOJ sought to assert subpoena authority for investigations "far removed from those claimed purposes granted by Congress." *In re Subpoena No. 25-1431-014*, No. MC 25-39, 2025 WL 3252648, at *12, *17 (E.D. Pa. Nov. 21, 2025) (striking subpoena demands for records relating to gender-affirming care when DOJ "invoke[d] sweeping needs" for the information, which had "no relevance to the investigation Congress permitted or to the investigation the Department of Justice tells the world it is pursuing"); *see also In re Admin. Subpoena No. 25-1431-019*, No. 1:25-MC-91324-MJJ, 2025 WL 2607784, at *5 (D. Mass. Sep. 9, 2025) (quashing subpoena for records relating to gender-affirming care

when DOJ "failed to show proper purpose" and rejecting notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review"). This Court should do the same here.

DOJ's attempt to read "purpose" in a vacuum to mean *any conceivable purpose* also fails as a matter of statutory interpretation. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). Accordingly, "the meaning of a word cannot be determined in isolation." *Yates v. United States*, 574 U.S. 528, 537 (2015) (plurality opinion) (quoting *Deal v. United States*, 508 U.S. 129, 132 (1993)). And even where a statutory term "standing alone[] is broad," it "cannot be construed in a vacuum." *Home Depot U.S.A.*, 587 U.S. at 441 (quoting *Davis*, 489 U.S. at 809). Rather, "reasonable statutory interpretation must account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (alteration in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Statutory context is particularly critical where courts are asked to determine "whether Congress in fact meant to confer the power the agency has asserted." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022).

These principles require reading the term "purpose" in the specific context of the Civil Rights Act of 1960—a law Congress enacted "to secure a more effective protection of the right to vote." *Gallion*, 187 F. Supp. at 853; *see also* H.R. Rep. No. 86-956, at 7 (1960) (explaining Congress enacted Title III to aid DOJ "during any investigation it may conduct on complaints of a denial to vote because of race"). DOJ's reading eschews this essential statutory context, ripping the term "purpose" from its statutory mooring, all in an unfounded effort to claim that Title III

permits blanket inspection of state voter files for any conceivable purpose. This Court should reject such an unprecedented effort.

### B.    Title III permits redacting sensitive voter information.

Just as "nothing in the text of the NVRA prohibits" redacting sensitive voter information before disclosure, *Pub. Int. Legal Found., Inc. v. Bellows* ("*PILF*"), 92 F.4th 36, 56 (1st Cir. 2024), nothing in the text of Title III of the Civil Rights Act prohibits such redactions. DOJ points to nothing in the text of Title III to the contrary.

The two cases DOJ cites to support its claim that Title III compels the production of sensitive voter information each cut against DOJ's demand. It again cites *Lynd*—but that court explained that Title III is intended to reach only "*public* records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers and effects." *Lynd*, 306 F.2d at 231 (emphasis added). DOJ here is unsatisfied with Oregon's *public* voter list and instead seeks confidential, *private* information on all voters in the state, which Oregon—like most states— protects from disclosure. *See* Or. Rev. Stat. § 247.948(2).

DOJ's cite to a recent Tenth Circuit decision is even more confused. *See* Opp. at 12–13. Echoing the First Circuit's decision in *PILF*, the Tenth Circuit in *Voter Reference Found., LLC v. Torrez* held that a New Mexico law restricting the *use* of records subject to disclosure under the NVRA was preempted by federal law. Nos. 24-2133, 24-2141, 2025 WL 3280300, at *9–14 (10th Cir. Nov. 25, 2025). But the court also held that to "extent the State wishes to *redact* appropriate personal information before providing the voter data, *the NVRA does not prohibit that limitation*." *Id.* at *9 n.14 (emphasis added). Citing a New Mexico privacy law that resembles Oregon's here, *Torrez* endorsed the state redacting "sensitive information" such as voters' social security numbers, full birth dates, and telephone numbers before disclosing its voter list. *Id.* (citing N.M.

Stat. Ann. § 1-4-5.5(B)). Just as the NVRA does not prohibit redacting sensitive voter information, neither does the Civil Rights Act of 1960.

### C.    The voter list DOJ seeks is not a record or paper that came into Oregon election officials' possession.

Finally, DOJ offers no response at all to the textual limitation on the scope of Title III. *See generally* Opp'n to Defs.' Mot. Dismiss ("Opp."). Since DOJ "fail[ed] to counter" this point, the Court "may treat that argument as conceded." *Just. v. Rockwell Collins, Inc.*, 117 F. Supp. 3d 1119, 1134 (D. Or. 2015) (citation omitted), *aff'd*, 720 F. App'x 365 (9th Cir. 2017); *see also United States v. Baldon*, 956 F.3d 1115, 1126 (9th Cir. 2020) (government "concedes the point" by "not contest[ing]" argument); *Leupold & Stevens, Inc. v. Lightforce USA, Inc.*, 501 F. Supp. 3d 987, 1007 (D. Or. 2020) ("The Court will not attempt to develop the parties' arguments for them[.]").

DOJ claims Title III of the Civil Rights Act of 1960 authorizes the Attorney General to demand *any* record or paper concerning voter registration in the possession of state election officials. *See, e.g.*, Compl. ¶ 30. But the statute is narrower than DOJ suggests. Congress required state election officials to grant access in certain circumstances to only those "records and papers which *come into* [*their*] *possession* relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701 (emphasis added). As Intervenors explained, dictionaries and courts equate "coming into possession" with receiving or acquiring something from an outside source. *See* Intervenors' Mot. to Dismiss ("Mot.") at 14–17, ECF No. 31. The plain language of the statute thus forecloses DOJ's claim for Oregon's voter list because it is not a record that it *received* or *acquired* from others—it is a record that Oregon election officials *created*.[4] Because an internally generated statewide database like Oregon's voter

---

[4] Though DOJ does not suggest otherwise, HAVA makes clear that state voter lists are created by state election officials. *See* 52 U.S.C. § 21083(a) (directing "each State, acting through the chief

registration list is not the sort of record covered by Title III, DOJ fails to state a viable claim that Oregon violated Title III by declining to provide DOJ its unredacted voter list.

DOJ's concession on this textual limit is particularly ironic given that DOJ repeatedly harps on the importance of obeying "statutory text" in response to *other* arguments. Opp. at 7–8. It insists, for instance, that the "judicial function [is] to apply statutes on the basis of what Congress has written, not what Congress might have written." *Id.* at 8 (quoting *Connell v. Lima Corp.*, 988 F.3d 1089, 1108 (9th Cir. 2021)). Quite so. But as DOJ fails to dispute, applying the plain text of Title III as Congress wrote it requires this Court to conclude that Oregon's voter list is outside the scope of Title III, meaning that DOJ's expansive Title III claim fails as a matter of law and must be dismissed.

## II.     DOJ fails to state a claim under the NVRA.

DOJ's NVRA claim also conflicts with the plain language of the statute and the weight of case law. It should thus come as no surprise that DOJ has abandoned this claim in its recent waves of suits for states' voter lists, *see supra* note 1, and offers only a half-hearted, nearly citation-free defense of its NVRA claim in its opposition here, *see* Opp. at 14.

As Intervenors explained, courts have consistently read the NVRA's disclosure provision to permit states to redact sensitive voter information protected by state law prior to disclosure. *See* Mot. at 9–10 (citing cases). Rather than addressing that mountain of case law head-on, DOJ tries to wave it all away by asserting that DOJ gets *special* inspection rights beyond what is permitted to public. *See* Opp. at 14. DOJ points to no authority—not in the statute, and not in the case law—

---

State Election official" to "implement . . . a single, uniform, official, centralized interactive computerized statewide voter registration list defined, maintained, and administered at the state level"); *see also* Bellitto v. Snipes, 935 F.3d 1192, 1199 (11th Cir. 2019) (explaining that HAVA "mandated that the states *create* computerized statewide voter registration lists" (emphasis added)).

to support that conclusion. That is because there is none. The NVRA contains but one disclosure provision, which requires states to "make available for public inspection" certain records relating to voter registration. 52 U.S.C. § 20507(i). That is it. There is no special carve-out for DOJ; under the NVRA's plain text, whatever inspection rights DOJ has extends to the public as well, and vice versa. Accordingly, there is no reason to read the NVRA's "public inspection" provision to extend to voters' sensitive personal information, including driver's license numbers, partial social security numbers, and full dates of birth, which together constitute the "holy trinity of identity theft"[5] and should remain private—as Oregon law requires. *See* Or. Rev. Stat. § 247.948(2).

DOJ's request for special inspection rights is particularly bold considering the NVRA's public inspection provision specifies only two pieces of personal information a state must retain for inspection: the "names and addresses" of voters sent cancellation notices. 52 U.S.C. § 20507(i)(2). Congress could have chosen to require more, but it did not—and as DOJ argues, the Court must "apply statutes on the basis of what Congress has written, not what Congress might have written." Opp. at 8 (quoting *Connell*, 988 F.3d at 1108). DOJ also fails to explain why it specifically requires sensitive, private information on voters—*in addition* to their names, addresses, and other information Oregon has already made available—to "ascertain Oregon's compliance" with the NVRA in the first place. Compl. ¶ 51; *see also* Opp. at 14. DOJ thus fails to state a claim under the NVRA.

## III.    DOJ fails to state a claim under HAVA.

DOJ concedes, as it must, that HAVA has no "public disclosure provision." Opp. at 16. That concession dooms its HAVA claim, which alleges Oregon violated the statute by "fail[ing]

---

[5] Liz Landers & Doug Adams, *How the Trump Administration Is Trying to Change the Way People Vote*, PBS News Hour, Sep. 26, 2025, https://perma.cc/7V2J-QY9V.

to provide sufficient information" to DOJ. Compl. ¶ 70; *see also id.* ¶¶ 71–72. DOJ offers no explanation how Oregon could have violated HAVA by failing to provide DOJ information if HAVA does not require Oregon to disclose any information to anyone in the first place. DOJ's HAVA claim should thus be summarily dismissed.

DOJ attempts to resuscitate the claim by alleging in its opposition brief that Oregon violated HAVA's *substantive* list maintenance requirements. *See* Opp. at 16. But that is not what DOJ pleaded in its complaint. Far from alleging Oregon violated any list maintenance requirement, the complaint alleges instead that Oregon's "refusal to provide the requested information ***prevents*** the Attorney General from evaluating Oregon's procedures to ensure that duplicate names are eliminated from the computerized list" and "***prevents*** the Attorney General from determining Oregon's compliance with the list maintenance requirements of HAVA." Compl. ¶¶ 71–72 (emphases added).[6] DOJ cannot now claim the Court should read its allegations to support a claim that Oregon substantively violated HAVA when DOJ's own complaint expressly states that DOJ is unable to reach any determination on that precise issue. Nor should the Court countenance this attempt to rewrite DOJ's HAVA claim in its opposition brief. *See Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (explaining that the Federal Rules do not permit a plaintiff to amend pleadings in a "memorandum . . . in opposition to a defendant's motion to dismiss").

Even if DOJ could morph its HAVA disclosure claim into something else entirely, it still does not come close to plausibly alleging that Oregon violated its obligations under HAVA. DOJ references so-called "anomalies" in Oregon's voter registration data and questions its efforts to

---

[6] Even while trying to argue for a substantive HAVA violation in its opposition, DOJ continues to admit that *it needs additional information* to "allow the United States to determine [Oregon's] compliance with HAVA." Opp. at 15.

remove inactive voters. Opp. at 10, 16. But the NVRA—not HAVA—governs states' responsibility to remove ineligible names from voter rolls. *See* Compl. ¶ 68 (citing 52 U.S.C. § 20507); *see also Gonzalez v. Arizona*, 677 F.3d 383, 402 (9th Cir. 2012) (en banc) (explaining "the NVRA regulates voter registration, whereas HAVA is concerned with updating election technologies and other election-day issues at polling places"), *aff'd sub nom. Arizona v. Inter Tribal Council of Ariz.*, 570 U.S. 1 (2013); *Bellitto*, 935 F.3d at 1202 ("Nothing in HAVA broadens the scope of the NVRA's list-maintenance obligations."). And under the NVRA, Oregon need only make "reasonable efforts" to remove two categories of registrants from its rolls: those who are no longer eligible due to death or change in residence. 52 U.S.C. § 20507(a)(4); *Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 184 (3d Cir. 2017) (holding that only removals under subsection (a)(4) are mandatory and criticizing any suggestion to the contrary as a "blatant misrepresentation of the statute"). DOJ makes no allegation that Oregon failed to make "reasonable efforts" to remove such registrants, and DOJ's questions about Oregon's efforts to remove *other* categories of voters from the rolls—such as inactive voters—are beside the point because the NVRA and HAVA do not obligate Oregon to remove such voters in the first place. *See Bellitto*, 935 F.3d at 1195 ("[T]he statute could not be clearer: the states and their subsidiaries are required to conduct a general program of list maintenance that makes a reasonable effort to remove voters who become ineligible on account of death or change of residence, and only on those two accounts."); *see also RNC v. Benson*, 754 F. Supp. 3d 773, 792 (W.D. Mich. 2024) (dismissing NVRA claim premised solely upon allegedly high registration rates where plaintiff did not allege any "breakdown" in state's removal program), *aff'd*, No. 24-1985, 2025 WL 2731704 (6th Cir. Sep. 25, 2025). DOJ thus fails to state a claim that Oregon violated its list maintenance obligations.

In a last-ditch effort, DOJ asserts "the demand for records that the United States has made under HAVA falls into the conventional realm of discovery." Opp. 17. DOJ suggests it will seek Oregon's voter list in discovery in this case and *then* "determine whether Defendants are violating the list maintenance requirements" of HAVA. *Id.* But that gets things precisely backwards: To get to discovery, DOJ must first allege "sufficient facts" "to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). DOJ does not get to jump to discovery in the hopes of finding facts from which it could then state a claim. *See Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021) (holding litigants may not use litigation as a "fishing expedition" with "no basis other than gross speculation" (citation omitted)); *McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006) (holding litigants may not "conduct fishing expeditions in hopes of discovering claims that they do not know they have"). The Court should thus dismiss DOJ's HAVA claim.

## CONCLUSION

The Court should dismiss DOJ's complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b).

December 22, 2025

Respectfully submitted,

*/s/ Abha Khanna*
**ABHA KHANNA\***
WA Bar No. 42612
**WALKER McKUSICK\***
WA Bar No. 63205
ELIAS LAW GROUP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
akhanna@elias.law
wmckusick@elias.law

**CHRISTOPHER D. DODGE***
D.C Bar. No. 90011587
**BRANDEN LEWISTON***
D.C. Bar No. 252550
ELIAS LAW GROUP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
cdodge@elias.law
blewiston@elias.law

**HARRY WILSON**, OSB No. 077214
harrywilson@markowitzherbold.com
**DALLAS DELUCA**, OSB No. 072992
dallasdeluca@markowitzherbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: 503-295-3085

*Appearing Pro Hac Vice*

*Attorneys for Intervenors*
*Our Oregon, Daniel DiIulio, Stephen*
*Gomez, and Emma Craddock*