DAN RAYFIELD
Attorney General
THOMAS H. CASTELLI  #226448
Senior Assistant Attorney General
KATE E. MORROW #215611
Assistant Attorney General
Trial Attorneys
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  thomas.castelli@doj.oregon.gov
            kate.e.morrow@doj.oregon.gov

Attorneys for Defendants


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  6:25-cv-01666-MTK |
| Plaintiff, | DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS |
| v. | |
| STATE OF OREGON; and TOBIAS READ, in his official capacity as the Oregon Secretary of State, | |
| Defendants. | |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 1

    A.   The United States has not complied with the applicable privacy laws. ........................... 2

        1.   The Privacy Act prevents Plaintiff's indiscriminate data collection. ........................... 2

        2.   The E-Government Act's procedural safeguards apply. ................................................ 4

        3.   The Driver's Privacy Protection Act bars Plaintiff's collection of driver's license numbers. .......................................................................................................................... 5

    B.   The Court should dismiss Plaintiff's NVRA claim. .......................................................... 6

    C.   The Court should dismiss Plaintiff's HAVA claim. .......................................................... 8

    D.   The Court should dismiss Plaintiff's claim under Title III of the CRA. ......................... 10

        1.   The United States has not pled a Title III claim because its asserted purpose falls outside the scope of Title III, which is limited to investigations of civil rights violations. ............................................................................................................... 11

        2.   The United States has not pled a Title III claim because it has not provided a statement of basis and purpose for its demand. .............................................................................. 12

        3.   Even if the United States had a valid Title III demand for records, it would not be entitled to receive an unredacted voter list. ................................................................... 15

III.   CONCLUSION ............................................................................................... 16

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# TABLE OF AUTHORITIES

**Cases**

*Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175 (3d Cir. 2017) ........................................ 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 6, 8

*Becker v. United States*, 451 U.S. 1306 (1981) ......................................................................... 10

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) ................................................................. 13

*Coal. for Open Democracy v. Scanlan*, No. 24-cv-312-SE, 2025 WL 1503937 (D.N.H. May 27, 2025) ............................................................................................................................................ 15

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ................................................................ 11

*Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982 (9th Cir. 2020) ............................................................................................................................................ 12

*Garris v. F.B.I.*, 937 F.3d 1284 (9th Cir. 2019) ........................................................................ 2

*Judicial Watch, Inc. v. Adams*, 485 F. Supp. 3d 831 (E.D. Ky. 2020) .................................... 13

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ........................................................... 10, 11, 14

*MacPherson v. I.R.S.*, 803 F.2d 479 (9th Cir. 1986) ................................................................. 2

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021) .......................................................................... 12

*Peters v. United States*, 853 F.2d 692 (9th Cir. 1988) ............................................................. 3

*Pub. Int. Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025) .......................................... 13

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) ...................................... 7

*Ruell v. McDonough*, No. 2:23-cv-03513-JDW, 2024 WL 4771390 (E.D. Pa. Nov. 13, 2024) .... 3

*Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597 (7th Cir. 2012) ................................................. 6

*United States v. Kentucky*, No. 3:17-cv-00094 (E.D. Ky. June 21, 2018) ................................. 13

*United States v. Lynd*, 301 F.2d 818 (5th Cir. 1962) ............................................................... 11

*United States v. Powell*, 379 U.S. 48 (1964) .......................................................................... 10

*United States v. Torrey*, 523 F. App'x 467 (9th Cir. 2013) ...................................................... 5

*Voter Reference Found., LLC v. Torrez*, No. 24-2133, 2025 WL 3280300 (10th Cir. Nov 25, 2025) ...................................................................................................................................... 7, 8, 15

**Statutes**

Or. Rev. Stat. § 247.945 ............................................................................................................ 14

**Rules**

68 Fed. Reg. 47,610 ................................................................................................................... 3

70 Fed. Reg. 43,904 ................................................................................................................... 3

82 Fed. Reg. 24,147 ................................................................................................................... 3

82 Fed. Reg. 24,151 ................................................................................................................... 3

Fed. R. Civ. P. 81(a)(5) ............................................................................................................ 10

**United States Code**

5 U.S.C. § 552a .................................................................................................................... 2, 4

26 U.S.C. § 7604 ...................................................................................................................... 10

52 U.S.C. § 20507 ...................................................................................................................... 7

52 U.S.C. § 20703 .............................................................................................................. 12, 15

52 U.S.C. § 20705 .................................................................................................................... 10

52 U.S.C. § 21083 ...................................................................................................................... 9

52 U.S.C. § 21111 ...................................................................................................................... 9

E-Government Act, Pub. L. No. 107-347 § 208, 116 Stat. 2899 (2002) .................................. 4, 5

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## I.    INTRODUCTION

Through this lawsuit, the United States ("Plaintiff") attempts to require the Oregon Secretary of State and the State of Oregon ("Defendants") to turn over voter registration records that include Oregonian's sensitive data and protected First Amendment activity. Plaintiff, however, is prohibited from collecting or maintaining the requested information by federal privacy laws. Even if Plaintiff satisfied the requirements of the privacy laws, the three laws the United States relies on, the National Voter Registration Act ("NVRA"), the Help America Vote Act ("HAVA"), and Title III of the Civil Rights Act ("CRA" or "Title III"), do not allow Plaintiff to obtain that private and sensitive information about Oregon voters. Plaintiff misunderstands the purpose, application, and scope of those laws, and it has not stated a claim for relief under any of them. This Court should grant Defendants' Motion to Dismiss.

## II.    ARGUMENT

Plaintiff does not state a claim for relief. First, it has not complied with the applicable privacy laws, and that alone is grounds for dismissal.[1] Second, it has not alleged a claim under the NVRA because the NVRA does not require Defendants to disclose an unredacted copy of the electronic statewide voter list. Third, it has not stated a claim under HAVA because it, like the NVRA, does not require disclosure of sensitive information and because Plaintiff has not alleged a plausible violation of HAVA. Finally, Plaintiff has not stated a claim under the CRA because Title III applies only to investigations about discrimination in voting under the civil rights laws, because Plaintiff has not alleged the basis and the purpose for its records demand, and because,

---

[1] Plaintiff, without factual support, claims that their initial demand for the unredacted voter list was "met by delay, obfuscation, and finally a refusal by Defendants to produce records." Pl.'s Resp., ECF 57, at 5. This statement is both unfair and untrue. In Plaintiff's August 14, 2025 letter, it acknowledged that the Defendant's response has "not reached it deadline." Castelli Decl. at Ex. 2, ECF 32-2. That letter asked for a response by August 21, 2025. *Id.* Defendants responded on August 21 with some of the information requested and offered to provide the redacted voter list and other protected data if Plaintiff complied with the applicable privacy laws. *See* Castelli Decl. Ex. 3, ECF 32-3. Plaintiff responded with this lawsuit.

Page 1 -    DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

even if it had, Title III does not entitle Plaintiff to the records that it seeks in the form it seeks them. Therefore, Plaintiff has not stated a claim for relief and this Court should dismiss its claims.

**A.    The United States has not complied with the applicable privacy laws.**

The Court should dismiss this case because Plaintiff has failed to plead that it is in compliance with federal privacy laws.

### 1.    The Privacy Act prevents Plaintiff's indiscriminate data collection.

Plaintiff fails to rebut Defendants Privacy Act arguments. The Privacy Act prohibits Plaintiff from seeking "record[s] describing how any individual exercises rights guaranteed by the First Amendment." 5 U.S.C. § 552a(e)(7). Plaintiff does not dispute the records it seeks fall within that description. Rather, it asserts that it can nonetheless obtain the protected records because "[l]ist maintenance is an authorized enforcement activity." Pl.'s Resp. at 20, ECF 57.

Plaintiff cites no authority to support its assertion. The Ninth Circuit takes "a *narrow* reading of 'law enforcement activities' [to] better serve[] the goal of privacy and avoid[] infringing on the overall First Amendment concerns of section (e)(7)." *MacPherson v. I.R.S.*, 803 F.2d 479, 482 (9th Cir. 1986). Accordingly, courts review "on an individual, case-by-case basis," *id.* at 484, and courts require the government to show "good reason to believe" the records are "relevant" to the claimed law enforcement basis, *Garris v. F.B.I.*, 937 F.3d 1284, 1299 (9th Cir. 2019) (citation omitted). By contrast, Plaintiff seeks to collect individualized data from *all* Oregon voters, supposedly to enforce (1) HAVA's requirement that states collect driver's license numbers or social security numbers, and (2) the NVRA's requirement that states conduct a general voter list maintenance program. Pl.'s Resp. at 19–20, ECF 57. The full, unredacted voter registration list is neither "pertinent to" nor "within the scope" of either enforcement purpose. Plaintiff does not plead a "good reason to believe" otherwise. *Garris*, 937 F.3d at 1299 (explaining that the government's burden is not met by a "remote possibility" that records would provide a "minuscule" "potential advantage" in an investigation); *see* 5 U.S.C. § 552a(e)(1).

Page 2 -    DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
TC3/nk1/1006714358

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Even if Plaintiff passes that barrier, it identifies no qualifying System of Records Notice ("SORN"), as the Privacy Act requires. Plaintiff identifies three preexisting SORNs, but it provides no context describing why they apply. Pl.'s Resp. at 18, ECF 57. Even if this Court considers Plaintiff's bare assertion of "routine use" under the NVRA, HAVA, and Title III of the CRA, that assertion does not authorize Plaintiff's broad request for unredacted data. One SORN, concerning records "indicat[ing] a violation or potential violation of law," covers "[s]ubjects of investigations, victims, [and] potential witnesses." 68 Fed. Reg. 47,610, 47, 611 (Aug. 11, 2003). That SORN fails to "put [the] reader on notice" that Plaintiff will seize and maintain all voters' private and sensitive data nationwide. *See Ruell v. McDonough*, No. 2:23-cv-03513-JDW, 2024 WL 4771390, at *8 (E.D. Pa. Nov. 13, 2024). Plaintiff cannot rest a data-grab of this magnitude—encompassing all or nearly all registered voters in Oregon or nationwide—on a SORN limited to discrete investigations. *See Peters v. United States*, 853 F.2d 692, 699–700 (9th Cir. 1988) (blocking federal data-gathering as unreasonably overbroad).

The other SORNs Plaintiff cites fare no better. The second SORN Plaintiff relies on is an update to that first SORN, and it allows public disclosure of information after "the investigation is closed," among other irrelevant conditions. 70 Fed. Reg. 43,904, 43,904 (July 29, 2005). Those circumstances do not apply here, and the citation of that SORN suggests that Plaintiff may eventually seek to disclose registered voters' social security numbers "[t]o the local community or public." *Id.* That would certainly be inappropriate and unlawful under various privacy laws. The third SORN concerns disclosure of information after a data breach. 82 Fed. Reg. 24,147, 24,147 (May 25, 2017); *see also* 82 Fed. Reg. 24,151, 24,151 (May 25, 2017). Again, that is an irrelevant provision on which to base Plaintiff's collection of private and sensitive information related to voting.

Plaintiff next argues that because Oregon is a member of the Electronic Registration Information Center ("ERIC") and provides voter information to that organization, this somehow assuages the Privacy Act concerns. Pl.'s Resp. at 20, ECF 57. Oregon's participation is irrelevant

Page 3 -    DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
TC3/nk1/1006714358

to whether Plaintiff can receive the unredacted voter list under the Privacy Act. As Plaintiff points out, the Privacy Act is a limitation placed on the federal government by the federal government. *Id*. at 18 ("The Privacy Act regulates federal agencies collection, maintenance, and disclosure of information[.]"); 5 U.S.C. § 552a. Whether Oregon provides the information requested does not alleviate the restrictions the Privacy Act places on Plaintiff. Moreover, the data is provided to ERIC "after applying a cryptographic one-way hash to these data points." Compl. ¶ 57, ECF 1 (quoting https://ericstates.org/security/). Plaintiff alleges in its Complaint that ERIC is "an organization comprised of states whose stated mission 'is to assist states in improving the accuracy of America's voter rolls and increasing access to voter registration for all eligible citizens.'" *Id*. (quoting https://ericstates.org/faq/). The ERIC website, cited and quoted in the Complaint, explains further that "[t]he hashing application converts these data into what appears to be a string of random characters, making the data significantly more difficult for a potential hacker to utilize." *See https://ericstates.org/security/* (last visited December 17, 2025). If Oregon provides Plaintiff, or anyone else, the encrypted and hashed information it provided ERIC, they would not be able to read or understand it. The information Plaintiff seeks is not encrypted or "hashed."

Finally, Plaintiff's argument that the Privacy Act does not apply to states misses the point. *See* Pl.'s Resp. at 18–19, ECF 57. The Privacy Act governs Plaintiff's collection of records. 5 U.S.C. § 552a. If a federal agency has not satisfied the Privacy Act's requirements, it cannot lawfully receive the records. The Court should not make the State complicit in Plaintiff's unlawful collection of sensitive data.

### 2.    The E-Government Act's procedural safeguards apply.

Plaintiff claims that the E-Government Act, Pub. L. No. 107-347 § 208, 116 Stat. 2899 (2002), is inapplicable because Plaintiff is "not initiating a new process" of "contacting individuals for information." Pl.'s Resp. at 20–21, ECF 57. Plaintiff argues that it is seeking voter information that Defendants already maintain. *Id.* But that argument misreads the statute,

Page 4 -    DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
TC3/nk1/1006714358

which requires federal agencies to conduct a privacy impact assessment before *the federal government* "initiat[es] a new collection of information" permitting "the contacting of a specific individual." Pub. L. No. 107-437 § 208(b). Plaintiff's request for private and sensitive voter information fits squarely in that description and it is thus governed by the E-Government Act. OMB Guidance also makes clear that privacy impact assessments must be "updated" when agencies obtain qualifying information "from public sources" and incorporate it "into existing information systems." OMB Guidance, M-03-22 (Sept. 26, 2003).[2] The only privacy impact assessment that Plaintiff cites is related to software it uses, not to its current effort to collect massive amounts of sensitive data related to Oregon voters. Pl.'s Resp. at 21 n.11, ECF 57. Thus, that privacy impact assessment does not satisfy the E-Government Act's requirement for Plaintiff's information collection in this case.

Plaintiff also appears to suggest that Defendants lack standing to raise the E-Government Act as an affirmative defense. Pl.'s Resp. at 21, ECF 57. But "Article III standing is a requirement that applies 'almost invariably' to plaintiffs and [Defendants] [are] in a purely defensive posture." *United States v. Torrey*, 523 F. App'x 467, 468 n.1 (9th Cir. 2013) (citation omitted). Additionally, Plaintiff claims, without supporting authority, that the E-Government Act is inapplicable to HAVA and NVRA enforcement. Pl.'s Resp. at 21, ECF 57. The E-Government Act does not exempt voter data from the privacy impact assessment requirement. It protects personal information "as agencies implement citizen-centered electronic Government." Pub. L. No. 107-437 § 208(a).

### 3. The Driver's Privacy Protection Act bars Plaintiff's collection of driver's license numbers.

Plaintiff asserts that its collection of private and sensitive voter data is permissible under the governmental-function exception to the Driver's Privacy Protection Act. Pl.'s Resp. at 21–22,

---

[2] Available at https://perma.cc/E6PW-YQTP (last visited, December 18, 2025).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ECF 57 (DPPA).[3] Plaintiff alleges no plausible governmental use for full driver's license numbers under Plaintiff's stated purpose to use the requested voter data to evaluate compliance with the NVRA and HAVA. *See* Compl. ¶ 51, ECF 1. Plaintiff asserts only that a "government agency performing a statutorily mandated function" constitutes a governmental function for purposes of the exception. But that assertion does not address how driver's license numbers will be "*used* for the identified purpose." *See Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 606 (7th Cir. 2012) (en banc) (describing scope of DPPA's disclosure authorization). Without alleging facts that show what driver's license numbers will be used for, Plaintiff fails to comply with the DPPA.

In short, Plaintiff fails to plead compliance with the Privacy Act and the E-Government Act. On those grounds alone, this Court should dismiss this case for failure to state a claim because Plaintiff would violate federal law by collecting the requested information.

## B.     The Court should dismiss Plaintiff's NVRA claim.

Plaintiff's defense of its NVRA claim fails. It asserts that it "properly alleged in its Complaint that Defendants have failed to engage in reasonable list maintenance efforts and have refused to produce records associated with those efforts." Pl.'s Resp. at 14, ECF 57. First, those assertions are legal conclusions that should not be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Second, nowhere in its Complaint does Plaintiff assert that Defendants have failed to engage in reasonable list maintenance efforts. Plaintiff has not alleged a claim under the list maintenance provision of the NVRA; Plaintiff's only NVRA claim is that Defendants allegedly failed to comply with the public records disclosure requirement set out in 52 U.S.C. § 20507(i). Compl. ¶¶ 65–68, ECF 1. The sole factual basis for Plaintiff's alleged NVRA claim is that Defendants have not produced the records that Plaintiff

---

[3] Defendants noted in their motion that the request for the unredacted voter list, including full driver's license numbers, would likely violate the DPPA. Mot. to Dismiss at 12 n.8, ECF 32. Because Plaintiff responded to that footnoted observation, Defendants respond in kind.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

seeks. But Plaintiff has no right under the NVRA to an unredacted version of all fields of the Oregon voter list, which contains sensitive and private information. *See* Mot. to Dismiss at 13–15, ECF 32. Plaintiff has not stated a claim under the NVRA because nothing in the NVRA requires a state to provide sensitive and private information to the federal government.[4]

This Court should also reject Plaintiff's assertions that the NVRA public records provision somehow applies differently to the federal government than to other litigants. Plaintiff cites no authority to support its premise. The NVRA requires states to make certain records "available for public inspection." 52 U.S.C. § 20507(i). Nothing in the text of the statute suggests that the records available for inspection vary depending on the identity of the requester. *See id.* Anyone can make a request under that provision, and courts have appropriately limited the disclosure of a voter's sensitive and private information under that provision based on a proper interpretation of the NVRA, not a plaintiff-by-plaintiff analysis. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases interpreting the NVRA as not prohibiting states from redacting sensitive data).

Moreover, even if Plaintiff complied with applicable federal privacy laws, the NVRA would still not require Defendants to turn over that information, and Oregon law prohibits Defendants from producing certain sensitive data. In a footnote, Plaintiff asserts that any Oregon law "bar[ring] the United States from obtaining federal election data necessary to enforce the NVRA" is preempted. Pl.'s Resp. at 14 n.6, ECF 57 (citing *Voter Reference Found., LLC v. Torrez*, No. 24-2133, 2025 WL 3280300, at *7–10 (10th Cir. Nov 25, 2025)). Plaintiff's reliance

---

[4] Plaintiff states that "Oregon's voter registration metrics are strongly suggestive of list maintenance violations. It is wholly improper to determine, based upon the pleadings alone, that Defendants have 'complied with the requirements of the NVRA.'" Pl.'s Resp. at 14, ECF 57 (quoting Mot. to Dismiss at 15, ECF 32). But Plaintiff's selective quotation mischaracterizes Defendants' argument, which is that "Defendants have complied with the [public records] requirements of the NVRA by offering voter list information without the sensitive, personal information" that Plaintiff seeks. Mot. to Dismiss at 15, ECF 32. Defendants said nothing about the propriety of determining compliance with list maintenance requirements on the pleadings alone. This Court should reject Plaintiff's attempt at turning this lawsuit about the public records provision into a claim under the list maintenance requirements.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

on *Voter Reference Foundation* is inapposite. In that decision, the Tenth Circuit held that the NVRA preempted state laws prohibiting data sharing and certain uses of the voter list. *Voter Reference Found.*, 2025 WL 3280300 at *8–*9. In reaching that conclusion, the court expressly stated that the NVRA does not prohibit the redaction of sensitive data. *See id.* at n.14 ("To the extent the State wishes to redact appropriate personal information before providing the voter data, the NVRA does not prohibit that limitation."). *Voter Reference Foundation* not only undermines Plaintiff's preemption assertion, but it expressly supports Defendants', and every other court's, interpretation that the NVRA does not prohibit states from redacting private and sensitive voter data before releasing the voter file. This Court should reject Plaintiff's bare assertion that Oregon laws prohibiting Defendants from disclosing certain sensitive voter information are preempted.

Because the NVRA allows sensitive and personal voter information to be redacted from the voter list, Plaintiff has not stated an NVRA claim that entitles it to the requested voter information.

## C.    The Court should dismiss Plaintiff's HAVA claim.

Plaintiff fails to allege a plausible HAVA violation. Plaintiff's HAVA allegations are conclusory and lack factual support. Plaintiff alleges that Defendants "failed to take the actions necessary" to comply with HAVA and "failed to provide sufficient information" in response to Plaintiff's letters requesting information. Compl. ¶ 70, ECF 1. Plaintiff asked questions about alleged issues with Oregon's Election Administration and Voting Survey (EAVS) data in its letters to the Secretary prior to this litigation. *Id.,* ¶¶ 38–44. Plaintiff also claims that Defendants' failure to provide the requested information "prevents the Attorney General from determining Oregon's compliance" with HAVA's list maintenance requirements. *Id.*, ¶ 72. Even accepted as true and taken in the light most favorable to Plaintiff, those allegations do not bring a HAVA claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (citation omitted). At most, they indicate that Plaintiff is skeptical of Defendants' compliance with HAVA's list

Page 8 -    DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

maintenance requirements and is considering investigating. *See* 52 U.S.C. § 21083(a) (describing requirements for maintaining the computerized list). Those facts do not establish a violation of HAVA's requirement that states have a system of list maintenance procedures.

Plaintiff itself characterizes the HAVA claim as "Oregon is failing to provide information that would allow the United States to determine compliance with HAVA." Pl.'s Resp. at 15, ECF 57. Nothing in HAVA requires Defendants to answer Plaintiff's narrative questions or provide the requested information.[5] Nor has Plaintiff identified a HAVA provision that requires disclosure. *See* 52 U.S.C. § 21111 (providing authority to the Attorney General to bring a civil action); Compl. ¶¶ 69–72, ECF 1 (alleging a claim under 52 U.S.C. § 21083). Certainly, if Plaintiff plausibly alleged a violation of a specific provision of HAVA's list maintenance requirements, Plaintiff could seek a copy of the voter list in discovery through the normal course of civil litigation, as Plaintiff admits. *See* Pl.'s Resp. at 17, ECF 57 (describing the HAVA demand for records as within the "conventional realm of discovery"). But Plaintiff does not allege facts constituting a list maintenance claim, nor does Plaintiff seek relief that would redress a list maintenance violation: Plaintiff alleges only that it cannot currently determine Defendants' compliance with HAVA and asks this Court to require Plaintiff to provide the requested records. Compl. ¶¶ 70–72 & Prayer for Relief, ECF 1. Failure to provide records *prior* to litigation is not an independent violation of HAVA actionable in this Court. *See* Mot. to Dismiss at 16–17, ECF 32. Defendants, as co-equal sovereigns, cannot be bullied into providing sensitive voter information to the United States simply because Plaintiff demands it. Because no legal authority requires Plaintiff to provide the requested records, Plaintiff cannot state a claim on which relief may be granted.

---

[5] As explained above regarding the NVRA, Oregon law prohibits the disclosure of certain sensitive voter information. As with the NVRA, HAVA does not preempt those state laws because HAVA imposes no duty to provide an unredacted voter list. *See Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 186 (3d Cir. 2017) (finding information sharing provisions in the NVRA and HAVA did not override state law related to felony disenfranchisement). Thus, HAVA does not conflict with Oregon's laws protecting sensitive voter information.

Page 9 -    DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
TC3/nk1/1006714358

**D.     The Court should dismiss Plaintiff's claim under Title III of the CRA.**

The United States has not stated a claim under Title III because its records request is outside the scope of Title III and it has not provided a statement of basis and purpose. Even if it had complied with Title III, Plaintiff is not entitled to receive an unredacted copy of the voter list. Thus, this Court should grant Defendants' Motion to Dismiss.

As a threshold matter, this Court may review Plaintiff's compliance with Title III. Plaintiff argues that a records demand under Title III "is not the commencement of an ordinary, traditional civil action" and that "it does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure."[6] Pl.'s Resp. at 8–9, ECF 57 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225–226 (5th Cir. 1962)). But Title III's text states only that a district court "shall have jurisdiction *by appropriate process* to compel the production of such record or paper." 52 U.S.C. § 20705 (emphasis added). Title III does not mention any "special statutory proceeding" or other abbreviated procedure that diminishes this Court's role to issuing a rubber-stamp approval of a records request.

In fact, since Title III was enacted in 1960, the Supreme Court confirmed that the Federal Rules of Civil Procedure govern the federal government's document demands even if a summary proceeding is authorized by statute. *See Becker v. United States*, 451 U.S. 1306, 1307–08 (1981); *see also* Fed. R. Civ. P. 81(a)(5). Two years after the Fifth Circuit's decision in *Lynd*, the Supreme Court applied the normal civil process under the federal rules to a similarly worded statute that contained "no provision specifying the procedure to be followed in invoking the court's jurisdiction." *United States v. Powell*, 379 U.S. 48, 57–58 & n.18 (1964) ("Because [§] 7604(a) contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply."). *Compare* 26 U.S.C. § 7604(a) *with* 52 U.S.C. § 20705. Thus, contrary to Plaintiff's assertions, the appropriate process under the

---

[6] Plaintiff did not assert any special procedural limitations in the Complaint in this case.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Federal Rules of Civil Procedure is for this Court to ensure that Plaintiff has satisfied Title III's statutory requirements and that its demand satisfies a baseline level of rationality.

>    **1.    The United States has not pled a Title III claim because its asserted purpose falls outside the scope of Title III, which is limited to investigations of civil rights violations.**

Plaintiff asserts that its purpose in demanding records is to "evaluate the state's compliance with its list maintenance requirements under federal law." Pl.'s Resp. at 9, ECF 57 (citing Compl. ¶¶ 47–51, ECF 1). By confirming that alleged purpose, Plaintiff concedes that it is not conducting an investigation into voting discrimination. As explained in the Motion to Dismiss, nothing in Title III nor the CRA addresses voter list maintenance or removing registered voters from the voter rolls due to death or relocation. Mot. to Dismiss at 19–20, ECF 32 (discussing the text and legislative history of Title III). Title III was enacted as a tool to enforce the voting rights laws that protect against race discrimination in exercising the right to vote. *Id.* No allegations suggest that Plaintiff is concerned about race discrimination in voting in Oregon, nor that it is investigating any discriminatory conduct.

In arguing to the contrary, Plaintiff asserts that, so long as it uses certain words in its demand—that the demand is "made for the purpose of investigating possible violations of a Federal statute"—it can demand records relating to federal elections, without limitation. Pl.'s Resp. at 7, ECF 57 (quoting *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963)). Plaintiff is incorrect. That reading of Title III ignores the case law construing its text, which informs what constitutes a valid statement of the basis and purpose for a Title III demand. As a comprehensive review of that case law and legislative history shows, Title III was enacted to permit review of voting records for "question[s] concerning infringement or denial of [a person's] constitutional voting rights." *Lynd*, 306 F.2d at 228; *see also* Mot. to Dismiss at 20–21, ECF 32 (quoting *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962)); *Lynd*, 301 F.2d at 822 (explaining that, under Title III, the United States is entitled to a court order to inspect voting records upon asserting "reasonable grounds for belief that certain voters are being discriminatorily denied their

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

voting rights in a given county"). Because a fair reading of the statute's text is consistent with the case law and legislative history, this Court should reject Plaintiff's limitless interpretation and find that Plaintiff's demand for records exceeds the scope of Title III.

>    **2.    The United States has not pled a Title III claim because it has not provided a statement of basis and purpose for its demand.**

Even if Plaintiff's request were in the scope of Title III, the statute requires a statement of the basis and the purpose for a records demand. 52 U.S.C. § 20703 ("This demand shall contain a statement of the basis and the purpose therefor."). The statute's use of the definite article "the," followed by a singular noun, together with its use of the conjunctive "and" demonstrates that the Attorney General must offer "a discrete thing" to meet the "basis" requirement and a second "discrete thing" to meet the "purpose" requirement. *Niz-Chavez v. Garland*, 593 U.S. 155, 166 (2021) (describing how to interpret definite articles in a statute); *Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 990 (9th Cir. 2020) (describing how to interpret "and" in a statute); *see also* Mot. to Dismiss at 21, ECF 32. Plaintiff fails to satisfy those statutory requirements.

Plaintiff's alleged purpose is implausible because it invokes the NVRA and HAVA list maintenance requirements, and the facts alleged fall short of substantiating Plaintiff's broad request. *E.g.*, Compl. ¶ 51, ECF 1 (alleging that "the purpose of the request is to ascertain Oregon's compliance with the list maintenance requirements of the NVRA and HAVA"). Plaintiff does not need access to the unredacted voter list to assess compliance with NVRA and HAVA list maintenance requirements, as courts have consistently held when addressing NVRA list maintenance issues. *See* Mot. to Dismiss at 13–15, ECF 32; *supra* at Section II.B. For example, voter-specific personal information, such as full birth date, social security number, or driver's license number, is not needed to assess whether Defendants are complying with the NVRA's requirement to remove voters upon death or change in residence. Nor is that line-by-line information needed to assess Defendants' HAVA list maintenance requirements. In fact,

Page 12 -  DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
TC3/nk1/1006714358

compliance with list maintenance requirements is principally assessed by evaluating a state's procedures, not each individual voter's data.[7]

*See Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 618, 624–25 (6th Cir. 2025); *Bellitto v. Snipes*, 935 F.3d 1192, 1205 (11th Cir. 2019). Because unredacted access to the statewide voter list is not necessary to assess compliance with NVRA or HAVA list maintenance requirements, that alleged purpose does not satisfy Title III's purpose requirement for Plaintiff's requested records.

Plaintiff's assertions about the "basis" for its request fare no better. First, Plaintiff concedes that the Complaint contains no basis for its request. Pl.'s Resp. at 10, ECF 57. It relies entirely on its July 16, 2025 letter to the Secretary to support its position that it has sufficiently stated grounds for its request. *Id.* That letter did not mention Title III or the CRA generally. Castelli Decl. Ex. 1, ECF 33-1. It requested the unredacted voter list and asked questions about Oregon's list maintenance processes based on EAVS data, which was a separately numerated list of questions from the request for the unredacted statewide voter list under the NVRA and HAVA. *See id.* A second letter, sent August 14, 2025, invoked Title III but did not mention the EAVS data. Castelli Decl. Ex. 3, ECF 33-3. A demand that does not reference "the basis" for the demand is insufficient under Title III. This Court should reject Plaintiff's post hoc justification of its deficient demand.

Moreover, it is implausible that alleged concerns about Oregon's EAVS data establish a ground for demanding the unredacted voter list. As explained above, the sensitive data of

---

[7] Plaintiff's alleged purpose and request are particularly puzzling because Plaintiff has investigated NVRA and HAVA compliance for decades without requiring states to produce an unredacted statewide voter registration list. *See, e.g.*, *United States v. Kentucky*, No. 3:17-cv-00094 (E.D. Ky. June 21, 2018), ECF 35 (DOJ Complaint in intervention); *Judicial Watch, Inc. v. Adams*, 485 F. Supp. 3d 831, 834 (E.D. Ky. 2020) (describing procedural history and intervention of United States in 3:17-cv-00094). The United States' complaint in that case alleged NVRA violations by describing the state's program, alleging specific programmatic deficiencies, and accurately articulating the NVRA's requirements. The initial information request sent to Kentucky—a letter attached as an exhibit to the complaint (ECF 35-1)—did not demand access to the state's voter registration list.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Oregon's voters is not necessary or relevant to assessing list maintenance compliance under either HAVA or the NVRA. *See supra* Section II.D.2. Questions about list maintenance processes do not establish a ground for a demand for the unredacted voter registration list because the unredacted voter list would not answer those process and systems-based questions. Nor would it provide any information relevant to those alleged list maintenance issues that the publicly available list would not also provide.[8] Because private and sensitive voter data is irrelevant to assessing list maintenance compliance, it does not provide a basis for Plaintiff's request under Title III.[9]

Rather than explain the legitimate purpose and basis for its request, Plaintiff contends that this Court cannot scrutinize the basis of its request. Pl.'s Resp. at 10–11, ECF 57 (citing *Lynd*, 306 F.2d at 226). According to Plaintiff, "the statistics included in [its] July 10, 2025, letter became immaterial beyond satisfying [Title III's] requirement for a basis for the request."[10] *Id.* at 11. But Title III is clear—Plaintiff must provide "*the* basis" in its demand for records, not merely "*a* basis" to satisfy Title III's requirement for a valid demand. Plaintiff's demand is deficient because it does not assert a purpose or basis that supports the breadth of its demand for records. This Court should thus reject Plaintiff's Title III claim.

---

[8] Plaintiff, like any member of the public, may request a copy of a redacted statewide voter list after complying with applicable privacy laws. *See* Castelli Decl. Ex. 3 at 2, ECF 33-3; Or. Rev. Stat. § 247.945.

[9] The breadth of the request and its lack of a basis or purpose related to the CRA is particularly troubling in light of the Federal Government's efforts to obtain and aggregate similar information for every state. *See* Brief of Amici Curiae Bipartisan Former Secretaries of State at 22, ECF 56; Mem. of Amicus Curiae Democratic National Committee at 7, ECF 35. As discussed in the Brief of Amici Curiae filed by sixteen other States, each state has received a request for their unredacted voter lists. Brief of Amici Curiae Maryland, et al, at 6, 11. ECF 55-1. The Amici Curiae states have also received requests for information from Medicaid and the Supplemental Nutrition Assistance Program, and the March 25, Executive Order charged federal agencies to review voter registration data and compare it to federal immigration databases. *Id.* at 7-11.

[10] Plaintiff refers to the July 10 letter in its response. No letter was sent to Oregon on July 10, 2025. The Secretary received the first letter dated July 16 and the second dated August 14. *See* Castelli Decl., Ex. 1; Ex. 2, ECF 33-1; 33-2.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

3.      **Even if the United States had a valid Title III demand for records, it would
not be entitled to receive an unredacted voter list.**

Even if Plaintiff was entitled to records under Title III, it is not entitled to the entire

unredacted computerized list. Title III requires only that the Secretary make certain records

"available for inspection, reproduction, and copying at the principal office of such custodian[.]"

52 U.S.C. § 20703. By its text, Title III does not require that the Secretary send Plaintiff an

unredacted copy of the electronic voter list. Nothing in Title III requires Defendants to violate

state law by providing the unredacted voter list to Plaintiff, and Plaintiff has not cited any

authority to support its position to the contrary.[11]

The only authority that Plaintiff cites to support its position is a recent NVRA case and a

motion to compel decision, neither of which address Title III. Pl.'s Resp. at 12, ECF 57. Plaintiff

mischaracterizes the privacy implications in both cases. In the NVRA case, the court specifically

explained that the NVRA allowed redaction of private and sensitive information. *Voter

Reference Found., LLC*, 2025 WL 3280300 at *9 n.14 ("To the extent the State wishes to redact

appropriate personal information before providing the voter data, the NVRA does not prohibit

that limitation."). Reliance on the motion to compel case gets Plaintiff no further. That decision

involved a discovery dispute where any sensitive information was subject to a protective order in

a case challenging the constitutionality of changes to state voter registration laws. *See Coal. for

Open Democracy v. Scanlan*, No. 24-cv-312-SE, 2025 WL 1503937, at *5 & n.5 (D.N.H. May

27, 2025) (rejecting the state's argument that concerns about protecting critical infrastructure

warranted withholding the voter list and related documents from discovery "especially" because

"the plaintiffs are willing to enter into a strict protective order"). Those cases, properly

characterized, further support Defendants' position that it must comply with state law to protect

private and sensitive information prior to sharing the voter file with Plaintiff.

---

[11] Plaintiff does not assert that the CRA preempts state laws prohibiting the disclosure of private
information. *See* Pl.'s Resp. at 12, ECF 57. It relies only on its assertion that the NVRA preempts
those state laws, which is incorrect. *See supra* Section II.B.

Page 15 -  DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Plaintiff has not stated a claim under Title III because the records demand falls outside the scope of Title III and it has not alleged a valid statement of either the basis or the purpose of its demand. Even if it had, Title III does not require Defendants to violate state law by disclosing an unredacted version of the electronic voter list. Because Plaintiff is not entitled to the records that it requests under Title III, it has not stated a claim for relief and this Court should dismiss the Title III claim.

### III.    CONCLUSION

Plaintiff has not complied with the Privacy Act, which is a prerequisite for Plaintiff—the federal government—to collect the requested information. Plaintiff attempts to collect and maintain information related to protected First Amendment activity and failed to issue the necessary System of Records Notice. Plaintiff's CRA claim fails because Plaintiff has not validly requested information relating to a civil rights investigation under the CRA. Plaintiff's claims also fail because the NVRA, HAVA and CRA do not require Defendants to produce unredacted copies of the voter file, nor do they authorize Plaintiff to demand the sensitive information it seeks. For the reasons above, and in Defendants' Motion to Dismiss, the Court should dismiss Plaintiff's claims.

DATED December 22, 2025.

Respectfully submitted,

DAN RAYFIELD
Attorney General

*s/ Thomas H. Castelli*
THOMAS H. CASTELLI #226448
Senior Assistant Attorney General
KATE E. MORROW #215611
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
thomas.castelli@doj.oregon.gov
kate.e.morrow@doj.oregon.gov
Of Attorneys for Defendants

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000